1        THE HONORABLE DAVID G. ESTUDILLO

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT
              WESTERN DISTRICT OF WASHINGTON
8                           AT SEATTLE

9   TOMMY BROWN, on his own behalf and          No. 2:20-cv-00680-DGE
    on behalf of other similarly situated
10  persons,                                    U.S. BANK NATIONAL ASSOCIATION'S
                                                MOTION TO DISMISS PLAINTIFF'S
11                    Plaintiff,                COMPLAINT UNDER RULE 12(b)(6)

12      v.                                      NOTED ON MOTION CALENDAR:

13  TRANSWORLD SYSTEMS, INC., *et al.*,         Friday, April 1, 2022

14                    Defendants.               *ORAL ARGUMENT REQUESTED*

15

16

17

18

19

20

21

22

23

24

25

26

U.S. BANK'S MOTION TO DISMISS PLAINTIFF'S
COMPLAINT (No. 2:20-cv-00680-DGE)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ..................................................................................................... 1

II.     FACTUAL BACKGROUND ................................................................................... 2

        A.  The Trusts ...................................................................................................... 2

        B.  The Present Dispute ...................................................................................... 3

III.    STANDARD OF REVIEW ..................................................................................... 5

IV.     LEGAL ARGUMENT ............................................................................................ 6

        A.  Plaintiff's Allegations Are Insufficient to Impose Vicarious Liability on
            U.S. Bank ....................................................................................................... 7

            1.  TSI Acts on Behalf of the Trusts, not U.S. Bank ..................................... 7

            2.  Plaintiff Cannot Plead Mutual Consent ................................................. 9

            3.  Plaintiff's Allegations Fail to Establish that U.S. Bank has the
                Requisite Amount of Control Over TSI ................................................. 10

        B.  Plaintiff's Additional, Throw-Away Theories of Liability Also Fail ............................ 13

        C.  Plaintiff's Claim for a Per Se Violation of the CPA Additionally Fails
            Against U.S. Bank Because U.S. Bank Is Not a Debt Collector Under
            the FDCPA .................................................................................................... 15

        D.  Plaintiff's Claim for Civil Conspiracy To Violate the CPA Also Fails
            Against U.S. Bank ......................................................................................... 16

        E.  Plaintiff's Request for Injunctive Relief Also Fails .................................... 17

V.      CONCLUSION ...................................................................................................... 17

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................5, 6, 11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...................................................................5

*Consumer Financial Protection Bureau v. The National Collegiate Master Student Trust, et al.*,
No. 17-1323 (MN), 2020 WL 2915759 (D. Del. May 31, 2020) ...........................11

*Corbit v. J.I. Case Co.*,
424 P.2d 290 (Wash. 1967)..............................................................16, 17

*Envtl. Transp. of Nevada, LLC v. Modern Mach. Co. Inc.*,
No. C18-5445RBL, 2020 WL 1847747 (W.D. Wash. Apr. 13, 2020) .........................9, 10, 12

*Findley v. Am. Home Mortg. Corp.*,
No. S-10-2885, 2010 WL 5169046 (E.D. Cal. Dec. 14, 2010)...............................5

*Gosse v. Transworld Systems Inc.*,
No. 3:20-CV-1446, 2021 WL 5761733 (M.D. Pa. Jul. 13, 2021) ...........................16

*In re Nat'l Collegiate Student Loan Trs. Litig.*,
251 A.3d 116 (Del. Ch. 2020)...........................................................14

*Jones v. Royal Admin. Svcs., Inc.*,
887 F.3d 443 (9th Cir. 2018)....................................................... *passim*

*Knievel v. ESPN*,
393 F.3d 1068 (9th Cir. 2005)..........................................................5

*Larner v. Torgerson Corp.*,
613 P.2d 780 (Wash. 1980)...........................................................7, 10, 12, 13

*Luken v. Christensen Grp. Inc.*,
247 F. Supp. 3d 1158 (W.D. Wash. 2017)...............................................7, 9

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

**TABLE OF AUTHORITIES (continued)**

1

**Page(s)**

2

*Marder v. Lopez*,

3
　450 F.3d 445 (9th Cir. 2006).................................................................................2, 6

4
*McAdory v. M.N.S. & Assocs., LLC*,

5
　952 F.3d 1089 (9th Cir.), *cert. denied sub nom. DNF Assocs., LLC v. McAdory*,

6
　141 S. Ct. 627 (2020) ............................................................................................15

7
*Merrill v. Transworld Sys., Inc.*,
　No. 1:20-CV-183, 2020 WL 8474736 (W.D. Mich. Dec. 1, 2020),

8
　*R&R adopted*, 2021 WL 210715 (W.D. Mich. Jan. 21, 2021)...............................11, 12, 15, 16

9
*Nemykina v. Old Navy, LLC*,

10
　461 F. Supp. 3d 1054 (W.D. Wash. 2020) ..................................................................5

11
*Nw. Laborers-Employers Health & Sec. Tr. Fund v. Philip Morris, Inc.*,

12
　58 F. Supp. 2d 1211 (W.D. Wash. 1999)...................................................................17

13
*Reisinger v. Deutsche Bank Nat'l Tr. Co.*,

14
　174 Wash. App. 1060 (Wash. Ct. App. 2013) ...........................................................10

15
*Schasa v. AmTrust Bank*,

16
　No. 11-01108-RGK, 2011 WL 13220099 (C.D. Cal. Aug. 2, 2011)......................5, 6

17
*Sprewell v. Golden State Warriors*,
　266 F.3d 979 (9th Cir. 2001)...................................................................................5, 14

18
*Stephens v. Omni Ins. Co.*,

19
　159 P.3d 10 (Wash. Ct. App. 2007), *aff'd sub nom. Panag v. Farmers*

20
　*Ins. Co. of Washington*, 204 P.3d 885 (Wash. 2009)....................................10, 13, 14

21
*Sterling Bus. Forms, Inc. v. Thorpe*,
　918 P.2d 531 (Wash. Ct. App. 1996) .......................................................................17

22
*Univ. of Wash. v. City of Seattle*,

23
　399 P.3d 519 (Wash. 2017).........................................................................................8

24
*Veridian Credit Union v. Eddie Bauer, LLC*,

25
　295 F. Supp. 3d 1140 (W.D. Wash. 2017)................................................................17

26

U.S. BANK'S MOTION TO DISMISS PLAINTIFF'S
COMPLAINT (No. 2:20-cv-00680-DGE) – iii

**TABLE OF AUTHORITIES (continued)**

**Page(s)**

*Wadlington v. Credit Acceptance Corp.*,
  76 F.3d 103 (6th Cir. 1996)...............................................................................15

*Wasco Prods., Inc. v. Southwall Techs., Inc.*,
  435 F.3d 989 (9th Cir. 2006)...........................................................................5, 16

*Wheatley v. W. Cent. Mich. Empl. & Training Consortium, Inc.*,
  341 F. Supp. 3d 753 (W.D. Mich. 2018) .........................................................9, 13

*Wilcox v. Basehore*,
  356 P.3d 736 (Wash. Ct. App. 2015), *aff'd*, 389 P.3d 531 (Wash. 2017)...................7

*Wilson v. JPMorgan Chase, N.A.*,
  No. 2:17-CV-00696-RAJ, 2020 WL 885971 (W.D. Wash. Feb. 24, 2020),
  *reconsideration denied*, 2020 WL 6262016 (W.D. Wash. Oct. 23, 2020) ...............16

**RULES**

Fed. R. Civ. P. 9(b) ...............................................................................5, 11, 15

Fed. R. Civ. P. 12(b)(6)..................................................................................1, 2

**OTHER AUTHORITY**

Restatement (Second) of Agency § 220...............................................................7, 9

Restatement (Third) of Agency § 1.01................................................................8

Restatement (Third) of Agency § 1.04................................................................8, 9

U.S. BANK'S MOTION TO DISMISS PLAINTIFF'S
COMPLAINT (No. 2:20-cv-00680-DGE) – iv

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1    Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant U.S. Bank

2    National Association ("U.S. Bank"), respectfully moves to dismiss Plaintiff's Complaint. U.S.

3    Bank also joins in Section III.F. of the Trusts' Motion to Dismiss (addressing Count VI), submitted

4    concurrently with this Motion.

5                                    **I.    INTRODUCTION**

6    Plaintiff Tommy Brown cosigned ten student loans that defaulted because neither the

7    borrower, Osure Brown, nor Tommy Brown paid the amounts owed. The owners of those loans,

8    several National Collegiate Student Loan Trusts (the "Trusts"), through their Special Subservicer

9    Transworld Systems, Inc. ("TSI") and the law firm Patenaude & Felix ("Patenaude"), attempted to

10   collect on the loans and eventually sued Plaintiff and Osure Brown in state court. Plaintiff now

11   brings claims against the Trusts, TSI, Patenaude, and U.S. Bank—the Successor Special Servicer

12   for the Trusts—alleging that these collection attempts violated various statutes and invaded his

13   privacy. Putting aside that Plaintiff's claims are baseless, Plaintiff has failed to allege that U.S.

14   Bank should be liable for the collection activities purportedly undertaken by the other entities.

15   Plaintiff's vicarious-liability theory is based on the naked assertion that "TSI is U.S. Bank's Agent."

16   But that allegation lacks any factual support in the complaint and is, in any event, foreclosed by the

17   relevant agreements. And Plaintiff's conspiracy and per se Washington Consumer Protection Act

18   claims fail before the Court even needs to reach Plaintiff's insufficient vicarious-liability theories.[1]

19   Thus, Plaintiff has failed to allege that U.S. Bank can be held liable for any supposed violations.

20   And because the substantive claims against U.S. Bank fail, so too does Plaintiff's request for

21   injunctive relief. All claims against U.S. Bank therefore must be dismissed.

22

23

24

25
_____

26        [1] Likewise, Plaintiff's invasion of privacy claim against U.S. Bank fails for the reasons explained in
Section III.F. of the Trusts' Motion to Dismiss, in which U.S. Bank joins.

U.S. BANK'S MOTION TO DISMISS PLAINTIFF'S
COMPLAINT (No. 2:20-cv-00680-DGE) – 1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

## II.    FACTUAL BACKGROUND

### A.    The Trusts

To illustrate why Plaintiff has no claims against U.S. Bank, it is important to examine the contractual relationship between U.S. Bank and the Trusts in this case. Each of the Trusts is a Delaware Statutory Trust formed for the purpose of acquiring student loans and issuing debt securities through Indentures. *See* Dkt. # 1-2 at ¶¶ 9, 34. As Delaware Statutory Trusts, the Trusts have no officers or directors and act exclusively through limited agents, such as an Owner Trustee, or contractors with specific duties, as set forth in a series of agreements. *See id.* ¶¶ 27–30, 35.

Servicers collect amounts due on the loans on behalf of the Trusts. *See id.* ¶¶ 35–36. For delinquent and default loan servicing (*i.e.*, Special Servicing), the Trusts' Owner Trustee, acting on behalf of the Trusts, entered into a Special Servicing Agreement with First Marblehead Education Resources, Inc. ("FMER") to act as Special Servicer. *See* Ex. A, Special Servicing Agreement ("SSA") § 2.A.[2] The Special Servicing Agreement appointed U.S. Bank as the "Back-Up Special Servicer" to automatically assume the role of Successor Special Servicer in the event FMER was unable to perform or resigned. *Id.* § 8.A; *see also* Dkt. # 1-2 at ¶ 12. But unlike FMER, as Successor Special Servicer, U.S. Bank assumed *only* the rights, duties, and obligations of the initial Special Servicer "to the extent expressly required to be assumed and performed by the Back-Up Special Servicer under this Agreement." Ex. A, SSA § 8.A. And under the SSA, U.S. Bank is expressly prohibited from directly undertaking special servicing activities and has no duty to monitor or supervise such activities. *See id.* § 8.A ("[N]othing in this Agreement shall be construed to require *or permit* the Back-Up Special Servicer (in its capacity as Special Servicer or otherwise) to

---

[2] References to "Ex." are to Exhibits attached to the Declaration of Kristine E. Kruger submitted in support of this Motion.  The Court may consider these documents at the pleadings stage.  Plaintiff's claims against U.S. Bank necessarily rely upon the rights and duties imposed by the relevant agreements. *See, e.g.*, Dkt. # 1-2 at ¶¶ 16, 46.  In fact, Plaintiff explicitly refers to the "Special Servicing Agreement." *Id.* ¶ 16. (The TSI Agreement is attached to and incorporated by reference in the Special Servicing Agreement as Exhibit II to that agreement.)  Thus, the Court may "treat [these] document[s] as 'part of the complaint, and thus may assume that [their] contents are true for purposes of a motion to dismiss under Rule 12(b)(6).'" *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); *see also* Section III, *infra*.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax:  206.359.9000

1    undertake direct collection or enforcement activities . . . ." (emphasis added); *id.* § 8.D (U.S. Bank
2    is not required to "supervise or monitor the performance" of Servicers or Subservicers and "shall
3    have no liability for the acts or omissions of any such Servicer or Subservicer"). Because of these
4    provisions, FMER simultaneously retained TSI's predecessor-in-interest, NCO Financial Systems
5    Inc. ("NCO"), as Special Subservicer to manage the delinquent and default loan servicing for the
6    Trusts in the event U.S. Bank became Successor Special Servicer. *See* Ex. B, TSI Agreement. The
7    TSI Agreement was attached as an exhibit and incorporated by reference into the Special Servicing
8    Agreement and consented to by the Trusts through the Owner Trustee. *See* Ex. A, SSA § 8.G
9    (requiring that U.S. Bank, as Backup Special Servicer, "shall at all times maintain in full force (i)
10   the NCO [TSI] Agreement, and the engagement of NCO [TSI] thereafter as Subservicer ...."). The
11   TSI Agreement expressly provides that TSI will act as an "independent contractor[]" for the Trusts.
12   Ex. B, TSI Agreement § 11.4.

13          When FMER resigned in 2012, U.S. Bank automatically became the Successor Special
14   Servicer and NCO's role as Special Subservicer became operative. Dkt. # 1-2 at ¶ 12. Because U.S.
15   Bank is expressly prohibited from undertaking special servicing activities and because it has no
16   duty to monitor or supervise subservicers, Turnstile Capital Management, LLC ("TCM") was
17   engaged as an independent contractor to perform certain special servicing responsibilities on behalf
18   of the Trusts. In 2014, NCO was succeeded by TSI to manage delinquent and default loan servicing
19   for the Trusts. *See id.* ¶ 35 (acknowledging that TSI became the "successor in interest to NCO").

20   **B.     The Present Dispute**

21          Between 2003 and 2007, Osure Brown took out the ten student loans at issue, *id.* ¶¶ 5, 39–
22   43, which were subsequently transferred to the Trusts. Plaintiff Tommy Brown cosigned the loans.
23   *Id.* When Osure Brown later defaulted on his payment obligations, TSI, on behalf of the Trusts and
24   through Patenaude, attempted to collect on the loans and, when that proved unsuccessful, brought
25   claims against Plaintiff for the amounts owed. *Id.* ¶¶ 39–43. Plaintiff now sues the Trusts, U.S.
26   Bank, TSI, and Patenaude, alleging that those collection efforts violated the Washington Consumer

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Protection Act ("CPA") and were an invasion of his privacy. Against U.S. Bank, Plaintiff brings claims for civil conspiracy to violate the CPA (Count I), violation of the CPA (Count III), injunctive relief (Count V), and invasion of privacy (Count VI), where at least Counts III and VI appear premised entirely on a vicarious-liability theory.[3]

Plaintiff acknowledges that the at-issue collection efforts were undertaken by Patenaude and/or TSI on behalf of the Trusts. *See, e.g.*, *id.* ¶ 39 ("In October 2018, Patenaude & Felix sent ten letters, signed by Matthew Cheung.…"); *id.* ¶ 44 ("In each case, the NCSLT Trusts, Transworld, and P&F alleged that Tommy Brown, as cosigner on Osure Brown's loans, had liability .…"). To sue U.S. Bank, then, Plaintiff relies on a vicarious-liability theory. *See, e.g.*, *id.* ¶¶ 13, 19. He does so by baldly alleging that TSI is U.S. Bank's agent, quoting from other conclusory (and unproven) allegations in a separate lawsuit brought by holders of equity interests in the Trusts. *See id.* ¶¶ 14–23, 65–66. Plaintiff also alleges, in passing, that U.S. Bank negligently delegated duties to TCM, without explaining how that is legally relevant. *Id.* ¶ 13. Finally, Plaintiff throws in the factually unsupported assertion that U.S. Bank "aided and abetted" the alleged violations, relying on a settlement consent order between TSI and the Consumer Financial Protection Bureau ("CFPB") to which U.S. Bank was not a party. *Id.* ¶¶ 18, 24–26.

In the related suit filed by Osure Brown against the same Defendants for collection of the same debts at issue here, Osure Brown raised similar claims for violation of the CPA and the Fair Debt Collection Practices Act ("FDCPA"), *see Brown v. Transworld Sys. Inc. et al.*, No. 2:20-cv-00669-DGE (W.D. Wash. May 4, 2020), Dkt. # 5-2, before removing these claims in an amended complaint filed in response to Defendants' motions to dismiss, *see id.*, Dkt. # 56. Defendants then moved to dismiss the amended complaint, and on February 17, 2022 Judge Estudillo granted the motions and dismissed the case with prejudice. *Id.*, Dkt. # 120.

---

[3] It is unclear whether Plaintiff additionally asserts Count IV ("Per Se Violation of [the CPA] due to a Per Se Violation of The Fair Debt Collection Practices Act") against U.S. Bank, but regardless such a claim would fail for the reasons discussed in Sections IV.A–C, *infra*.

U.S. BANK'S MOTION TO DISMISS PLAINTIFF'S
COMPLAINT (No. 2:20-cv-00680-DGE) – 4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1

### III.   STANDARD OF REVIEW

2      To survive a motion to dismiss, a complaint's "[f]actual allegations must be enough to raise

3 a right to relief above the speculative level" and have "enough facts to state a claim to relief that is

4 plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "[N]aked

5 assertions devoid of further factual enhancement" will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662,

6 678 (2009) (internal quotations and brackets omitted). "Nor is the court required to accept as true

7 allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

8 inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). And, where

9 there are multiple defendants, "it is not enough for the complaint to make general allegations

10 … without providing more specificity as to the claims against each defendant." *Findley v. Am.*

11 *Home Mortg. Corp.*, 2010 WL 5169046, at *3 (E.D. Cal. Dec. 14, 2010).

12      Importantly, to allege CPA claims sounding in fraud—like the ones asserted here (Dkt. # 1-

13 2 at ¶¶ 1, 20, 22, 50, 65)—Plaintiff must satisfy the heightened pleading standard under Fed. R.

14 Civ. P. 9(b). *See Nemykina v. Old Navy, LLC*, 461 F. Supp. 3d 1054, 1058 (W.D. Wash. 2020)

15 (CPA claims that "sound in fraud … must be averred with particularity"). The same goes for any

16 conspiracy claim premised on such CPA claims. *See Wasco Prods., Inc. v. Southwall Techs., Inc.*,

17 435 F.3d 989, 990 (9th Cir. 2006) (observing that where "the object of the alleged conspiracy is

18 fraudulent," "Rule 9(b) of the Federal Rules of Civil Procedure requires plaintiffs to plead fraud

19 with particularity.").

20      Additionally, on a motion to dismiss, the court may consider a document not attached to the

21 complaint where the "claim depends on the contents of a document, the defendant attaches the

22 document to its motion to dismiss, and the parties do not dispute the authenticity of the document,

23 even though the plaintiff does not explicitly allege the contents of that document in the complaint."

24 *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). And the court need not "accept as true

25 allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell*, 266

26 F.3d at 988; *see also Schasa v. AmTrust Bank*, 2011 WL 13220099, at *2 (C.D. Cal. Aug. 2, 2011)

U.S. BANK'S MOTION TO DISMISS PLAINTIFF'S
COMPLAINT (No. 2:20-cv-00680-DGE) – 5

1    ("[A] written instrument that contradicts Plaintiff's allegations generally trumps the allegations");

2    *Marder*, 450 F.3d at 453 (affirming dismissal where the plaintiff's "proposed interpretation of [a]

3    Release [agreement] is inconsistent with its terms").

4    ## IV.    LEGAL ARGUMENT

5         Plaintiff's claims against U.S. Bank hinge on the theory that U.S. Bank is "vicariously

6    liable" for the collection actions taken by TSI or the attorneys TSI hired. Dkt. # 1-2 at ¶ 13; *see*

7    *also id.* ¶ 19 ("The doctrine of respondeat superior applies to U.S. Bank."). To support this theory,

8    Plaintiff baldly states that "TSI is an agent of U.S. Bank." *Id.* ¶ 16. But that "naked assertion[]" is

9    "devoid of further factual enhancement," *Iqbal*, 556 U.S. at 678, and therefore cannot nudge

10   Plaintiff past the pleadings stage. Not only that, Plaintiff's contention is definitively foreclosed by

11   the Trusts' governing agreements. *See Schasa*, 2011 WL 13220099, at *2 ("written instrument . . .

12   trumps the allegations").

13        Specifically, those agreements (as well as Plaintiff's own allegations[4]) make clear that TSI

14   acts on behalf of *the Trusts*, not U.S. Bank, which precludes any agency-type relationship between

15   TSI and U.S. Bank. Regardless, Plaintiff has not alleged any facts to show that U.S. Bank consented

16   to have TSI act as its agent or that U.S. Bank exercised the amount of control over TSI necessary

17   to impose vicarious liability. And again, even if he had so alleged, the contracts themselves dispose

18   of that notion—they reveal that TSI at most acted as an independent contractor *on behalf of the*

19   *Trusts*. Finally, Plaintiff's throw-away theories relating to negligent delegation and aiding-and-

20   abetting are equally deficient because they lack support from any factual allegations in the

21   complaint and because they are nonetheless foreclosed by the governing contracts. Accordingly,

22   all claims against U.S. Bank must be dismissed.

23

24

25

26   _____

        [4] *See, e.g.*, Dkt. # 1-2 at ¶ 48 ("Exhibit A was a notice from U.S. Bank . . . confirming Transworld
     as the trusts' subservicer.").

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

**A.    Plaintiff's Allegations Are Insufficient to Impose Vicarious Liability on U.S. Bank**

"In determining whether vicarious liability may be imposed," courts ask whether an alleged principal "has enough authority to control the actions of its agent such that the principal may be held vicariously liable to the same extent as an employer may be held liable for the conduct of its employee," *Jones v. Royal Admin. Svcs., Inc.*, 887 F.3d 443, 450 (9th Cir. 2018), or—on the other hand—whether the agent functions more as an "independent contractor," *Wilcox v. Basehore*, 356 P.3d 736, 753 (Wash. Ct. App. 2015) ("[A] principal is not liable for the torts of the independent contractors."), *aff'd*, 389 P.3d 531 (Wash. 2017).

To prove an agency relationship, a plaintiff must show "mutual consent" whereby "the parties agreed" that one would be the agent acting on behalf of the other as principal. *Luken v. Christensen Grp. Inc.*, 247 F. Supp. 3d 1158, 1163 (W.D. Wash. 2017) (dismissing claim for failure to allege required elements of mutual consent and control). Washington courts look to the common law factors listed in the Restatement, which include, among others: whether or not the parties "believe they are creating the relation of master and servant"; the "the extent of control which, by the agreement, the [alleged principal] may exercise over the details of the work"; whether the alleged principal "supplies the instrumentalities, tools, and the place of work for the person doing the work"; the "method of payment, whether by the time or by the job"; and whether the one employed is engaged in a "distinct occupation or business." Restatement (Second) of Agency § 220; *see also Larner v. Torgerson Corp.*, 613 P.2d 780, 782 (Wash. 1980) (citing Restatement (Second) of Agency § 220)); *Jones*, 887 F.3d at 450 (same). When the facts are not susceptible to more than one interpretation, the inquiry is "essentially a question of law." *Larner*, 613 P.2d at 804.

**1.    TSI Acts on Behalf of the Trusts, not U.S. Bank**

As a threshold issue, Plaintiff's claim that TSI acts as U.S. Bank's agent fails for a very basic reason—the contracts and Plaintiff's own allegations make clear that TSI acts "on behalf of" the Trusts rather than on behalf of U.S. Bank. *See Jones*, 887 F.3d at 448 ("Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1   'agent') that the agent shall act *on the principal's behalf*" (emphasis added) (quoting the

2   Restatement (Third) of Agency § 1.01)); *see also Univ. of Wash. v. City of Seattle*, 399 P.3d 519,

3   526 (Wash. 2017) (citing Restatement (Third) of Agency § 1.01)). The Special Servicing

4   Agreement directs the Special Servicer[5] to "retain[] and enter[] into agreements with licensed

5   collection agencies and other legally authorized persons (the 'Subservicers') … pursuant to which

6   the Subservicers, *for and on behalf of the applicable Trust*, will contact borrowers." Ex. A, SSA

7   § 2.B(i) (emphasis added); *see also, e.g., id.* § 2.B(viii) (Special Servicer will "refer the loan for

8   collection by a Subservicer *on behalf of such Trust*" (emphasis added)).

9          Plaintiff concedes this, as he alleges: "At all times relevant to this Complaint, [TSI] has

10   acted as the debt collector *on behalf of the Trusts* and the Trusts expressly authorized [TSI] to carry

11   out all work that it has done *on their behalf*." Dkt. # 1-2 at ¶ 28 (emphases added); *see also, e.g.,*

12   *id.* ¶¶ 6(c), 8, 8(c), 43, 62, 119(a). Plaintiff says the same about Patenaude, the law firm that filed

13   the collection suits. *See id.* ¶ 8 ("P&F seeks to collect defaulted consumer debts *on behalf of* the

14   NCSLT Trusts through litigation and the mails." (emphasis added)); *id.* ¶ 8(c). Indeed, he admits

15   that the at-issue collection activity was undertaken on behalf of the Trusts, not on behalf of U.S.

16   Bank. *See, e.g., id.* ¶ 43 ("On April 5, 2019, Osure Brown and Tommy Brown were sued by the

17   Trusts, represented by P&F.").

18          Thus, both TSI and U.S. Bank act on behalf of *the Trusts* (as independent contractors). *See*

19   Ex. A, SSA § 17; Ex. B, TSI Agreement § 11.4. Even if U.S. Bank and TSI both acted as agents of

20   the Trusts (which they do not), they would at most be considered "coagents," and so "neither is

21   vicariously liable for wrongs committed by the other." Restatement (Third) of Agency § 1.04 cmt.

22   a; *see also id.* cmt. i ("A superior coagent's right to direct a subordinate coagent does not itself

23

24

25

26          [5] To be clear, it was FMER (with the consent of the Trusts)—and not U.S. Bank—that retained
        NCO/TSI pursuant to the TSI Agreement. *See* Section II.A, *supra.*

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

create a relationship of agency between them.").[6] This alone precludes Plaintiff's theory of vicarious liability.

### 2.     Plaintiff Cannot Plead Mutual Consent

Plaintiff also cannot allege the requisite "mutual consent" whereby "[TSI] or its officers agreed to be [U.S. Bank's] agent, or that [U.S. Bank] agreed to be [TSI's] principal." *Luken*, 247 F. Supp. 3d at 1163; *see also* Restatement (Second) of Agency § 220(2)(i) (listing one factor as "whether or not the parties believe they are creating the relation of master and servant"); *Jones*, 887 F.3d at 450 (one factor is the "subjective intent of the parties"). In determining the nature of a relationship for purposes of vicarious liability, courts look to the express agreements creating that relationship. *See, e.g.*, *Envtl. Transp. of Nevada, LLC v. Modern Mach. Co. Inc.*, 2020 WL 1847747, at *5 (W.D. Wash. Apr. 13, 2020) (looking to the terms of the relevant agreement to determine whether there was an "agency relationship under Washington law").

Plaintiff does not even attempt to plead that U.S. Bank and TSI mutually consented to an agency relationship. Nor can he. As explained above, the relevant agreements are clear that TSI acts on behalf of the Trusts, not U.S. Bank. Equally explicit is the fact that all parties act as "independent contractors." Ex. B, TSI Agreement § 11.4. The Special Servicing Agreement additionally provides that U.S. Bank "shall have no liability for the acts or omissions of any … Subservicer in performing its obligations under the [TSI Agreement]," and U.S. Bank shall not be required to "supervise or monitor the performance of such Servicers or Subservicers." Ex. A, SSA § 8.D. These agreements provide "extremely probative evidence that the parties intended for [TSI] to work as an independent contractor." *Wheatley v. W. Cent. Mich. Empl. & Training Consortium, Inc.*, 341 F. Supp. 3d 753, 765 (W.D. Mich. 2018) (applying "common law agency

---

[6] Given that U.S. Bank is prohibited from itself undertaking special servicing activities, *see* Ex. A, SSA § 8.A, TSI could not, in any scenario, be considered a "subagent" of U.S. Bank.  *See* Restatement (Third) of Agency § 1.04 (distinguishing between "coagents" and "subagents" and explaining that "[a] subagent is a person appointed by an agent to perform functions that *the agent has consented to perform on behalf of the agent's principal*" (emphasis added)).

U.S. BANK'S MOTION TO DISMISS PLAINTIFF'S
COMPLAINT (No. 2:20-cv-00680-DGE) – 9

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

test"); *see also Envtl. Transp.*, 2020 WL 1847747, at *5 (holding that, "[b]ased on the terms of the [relevant] Agreement itself" an "agency claim fail[ed] as a matter of law"). Plaintiff thus has failed to plead the necessary element of mutual consent.

### 3. Plaintiff's Allegations Fail to Establish that U.S. Bank has the Requisite Amount of Control Over TSI

Independently dooming his claim is Plaintiff's failure to allege that U.S. Bank exercises the requisite amount of control over TSI's collection efforts so as to be held vicariously liable. "The requisite control does not exist where the asserted principal's only authority is to supervise whether the agent's performance conforms to a contract." *Envtl. Transp.*, 2020 WL 1847747, at *4. Additionally, the fact that an agreement "allows some measure of oversight" is insufficient. *Id.* at *5; *see also Jones*, 887 F.3d at 451 (that the principal "exercised some amount of control" was insufficient to impose vicarious liability). Rather, the alleged principal must control the "details of the work." *Larner*, 613 P.2d at 782; *see also Envtl. Transp.*, 2020 WL 1847747, at *5 (explaining that vicarious liability "arises only where one engaging another to achieve a result controls or has the right to control *the details* of the latter's" work (emphasis added)).

Indeed, in the debt-collection context, the alleged principal must have the right to control the "manner, method, and means" of the collection efforts *at issue*. *See Reisinger v. Deutsche Bank Nat'l Tr. Co.*, 174 Wash. App. 1060, at *1, 5 (Wash. Ct. App. 2013) (where Deutsche Bank "authorized American Home Mortgage Servicing Inc. (AHMSI) to act as its servicing agent" and AHMSI allegedly "refused to negotiate a loan modification in good faith," there was no vicarious liability because the plaintiff had not shown that Deutsche Bank had the "right to control AHMSI's loan modification negotiations with the [plaintiffs]"); *Stephens v. Omni Ins. Co.*, 159 P.3d 10, 15, 27 (Wash. Ct. App. 2007) (where Omni "arranged to have its subrogation claim pursued by Credit Control Services, Inc." there was no vicarious liability because the plaintiff had not shown that "Omni controlled any aspect of [the at-issue] notices sent by Credit"), *aff'd sub nom. Panag v. Farmers Ins. Co. of Washington*, 204 P.3d 885 (Wash. 2009).

U.S. BANK'S MOTION TO DISMISS PLAINTIFF'S
COMPLAINT (No. 2:20-cv-00680-DGE) – 10

1     Here, Plaintiff offers the naked assertion that "TSI is an agent of U.S. Bank," Dkt. # 5-2 at

2  ¶ 16,[7] without providing any "further factual enhancement," *Iqbal*, 556 U.S. at 678; *see also*

3  *Merrill v. Transworld Sys., Inc.*, No. 1:20-CV-183, 2020 WL 8474736, at *7 (W.D. Mich. Dec. 1,

4  2020) ("Thus, contrary to Plaintiff's allegation, the Trusts specifically authorized TSI to file

5  lawsuits to collect the student loans.") ("*Merrill R&R*"). That, of course, is insufficient. *Iqbal*, 556

6  U.S. at 678; *see also* Fed. R. Civ. P. 9(b). Plaintiff also baldly alleges that U.S. Bank "had the duty

7  to properly supervise and control the activities of [TSI] and its Attorney Network." Dkt. # 1-2 at

8  ¶ 13. But Plaintiff fails to identify the source of any such a duty, as it certainly *does not* stem from

9  the relevant agreements. To the contrary, those agreements make clear that, even if Plaintiff had

10 tried, he could not allege the requisite amount of control.

11    As an initial matter, although the initial "Special Servicer" under the TSI Agreement,

12 FMER, may have had the right to exercise some amount of general oversight over subservicers'

13 collection operations, U.S. Bank, as Back-Up Special Servicer, did not inherit each and every duty

14 of the initial Special Servicer: The Special Servicing Agreement states that the "Back-Up Special

15 Servicer . . . shall assume the rights, duties and obligations of the Special Servicer *to the extent*

16 *expressly required to be assumed and performed* by the Back-Up Special Servicer under this

17 Agreement." Ex. A, SSA § 8.A (emphasis added); *see also Merrill R&R*, 2020 WL 8474736, at

18 *10 ("Section 8.A. of the SSA . . . underscores the parties' intent that U.S. Bank would not perform

19

20    [7] This allegation quotes a bare-boned (and unproven) allegation from another lawsuit currently
    pending in Delaware state court. *See* Verified Amended Complaint ¶ 46, *The National Collegiate Master*
21  *Student Loan Trust I et al. v. U.S. Bank Nat'l Ass'n et al.*, No. 2018-0167-JRS, 2018 WL 3094756 (Del. Ch.
    Ct. June 15, 2018) (consolidated with No. 12111-VCS). Contrary to Plaintiff's representation, Dkt. # 1-2 at
22  ¶ 14, this lawsuit was *not* brought by the Trusts. Instead, it was filed by certain owners of equity interests
    in the Trusts. Those owners have no right to act on behalf of the Trusts—they instead have the right to direct
23  the Owner Trustee to act in certain circumstances. *See Consumer Financial Protection Bureau v. The*
    *National Collegiate Master Student Trust, et al.*, 2020 WL 2915759, at *3 (D. Del. May 31, 2020) (the
24  "Owner Trustee is the entity through which the Trusts act" and the Owner Trustee has the "power" to "resist
    the [residual owners'] instruction[s]"). Because the Delaware state suit was *not* brought by the Owner
25  Trustee, every defendant moved to dismiss the complaint for lack of standing, and those motions remain
    pending. *See, e.g.*, Administrator Mot. to Dismiss, 2018 WL 3601375 (Del. Ch. Ct. July 20, 2018); U.S.
26  Bank Mot. to Dismiss, 2018 WL 3601376 (Del. Ch. Ct. July 20, 2018).

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax:  206.359.9000

debt collection in its role as Special Servicer."). Importantly, the Special Servicing Agreement also states that "nothing in this Agreement shall be construed to require *or permit* the Back-Up Special Servicer (in its capacity as Special Servicer or otherwise) to undertake direct collection or enforcement activities" and that "the Back-Up Special Servicer in its capacity as successor Special Servicer" shall not be required to "supervise or monitor the performance of . . . Subservicers" and "shall have no liability for the acts or omissions of any such . . . Subservicer." Ex. A, SSA §§ 8.A, 8.D (emphasis added); *see also Merrill R&R*, 2020 WL 8474736, at *10. No comparable provisions apply to FMER. Thus, whatever supervision duties applied to FMER, they would not apply to U.S. Bank.

Even if U.S. Bank could be deemed to have assumed all of FMER's duties and responsibilities under these agreements (which it has not), U.S. Bank still does not have the requisite amount of control over the at-issue collection activities. The TSI Agreement requires TSI to "provide [certain] reports" to the Special Servicer, *e.g.*, Ex. B, TSI Agreement § 2.2(a), and to obtain "written consent" from the Special Servicer in certain circumstances, *e.g.*, *id.* § 2.3(b)(i). But it is not enough that the alleged principal merely require that the alleged agent "keep records of its interactions with consumers," or provide "weekly reports" to the principal, or "obtain [the principal's] approval" before taking certain actions or using certain call scripts, or "comply with the 'guidelines and procedures'" provided by the principal. *Jones*, 887 F.3d at 451; *see also Envtl. Transp.*, 2020 WL 1847747, at *5 ("some measure of oversight" insufficient). Plaintiff must instead allege that U.S. Bank controlled the "details of the work" performed by TSI in this case—*i.e.*, deciding whether and how to collect on the loans and thereafter litigate. *Larner*, 613 P.2d at 782. He does not (and cannot) make those allegations, and so his vicarious-liability theory fails as a matter of law.

The additional factors considered by courts likewise counsel against imposing vicarious liability. TSI is "an independent business, separate and apart" from U.S. Bank. *Jones*, 887 F.3d at 452. It was free to "take on outside work," and U.S. Bank was authorized to retain additional

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1   subservicers on behalf of the Trusts. *Larner*, 613 P.2d at 782; Ex. B, TSI Agreement § 11.4; *see*

2   *also* Dkt. # 1-2 at ¶ 6(d) (TSI has "clients across the country"). TSI, not U.S. Bank, "supplies [the]

3   tools and instrumentalities and the place of work." *Jones*, 887 F.3d at 450 (brackets omitted); Ex. B,

4   TSI Agreement § 2.10(f). TSI also "hire[s] and fire[s] all [its] own employees," whom U.S. Bank

5   does not supervise. *Larner*, 613 P.2d at 782; *see* Ex. A, SSA § 8.D; Ex. B, TSI Agreement

6   §§ 2.4(a); 2.10(b), (c). Nor does U.S. Bank provide any "benefits" to TSI or its employees.

7   *Wheatley*, 341 F. Supp. 3d at 765. TSI was paid a set fee, "rather than for the time . . . worked,"

8   *Jones*, 887 F.3d at 452; *see* Ex. B, TSI Agreement § 2.3(c), and paid its own expenses for the work

9   performed, *see* Ex. B, TSI Agreement § 3.2. And in no event was TSI paid *by U.S. Bank*—TSI

10  retained its fee from the collected funds due to the Noteholders of the Indentures. *Id.* at § 2.3(c).

11  Accordingly, Plaintiff has failed to allege that U.S. Bank is vicariously liable for TSI's collection

12  attempts against Plaintiff.

13  **B.      Plaintiff's Additional, Throw-Away Theories of Liability Also Fail**

14          Plaintiff tosses in the conclusory allegations that U.S. Bank "negligently" delegated its

15  monitoring or supervision duties and/or "aided and abetted" the alleged violations at issue. As with

16  the vicarious-liability theory, however, Plaintiff offers no *facts* to support these theories, a failure

17  that in itself necessitates dismissal. And the theories lack merit in any event. Take first Plaintiff's

18  theory that U.S. Bank is liable for acts it did not itself commit because U.S. Bank "delegated its

19  responsibilities, negligently, to [TCM]." Dkt. # 1-2 at ¶ 13. Plaintiff does not explain how this

20  somehow imputes CPA liability on U.S. Bank. Indeed, delegating special servicing-related

21  activities to a third party does not constitute an unfair or deceptive practice under the CPA. *See*

22  *Stephens*, 159 P.3d at 26. In any event, the fatal flaw in this theory is even more simple—U.S. Bank

23  did not delegate any special servicing, monitoring, or supervision duties because the Special

24  Servicing Agreement expressly prohibits U.S. Bank from itself undertaking special servicing

25  activities and makes clear that U.S. Bank has never had any duty to supervise or monitor

26  subservicers. Ex. A, SSA §§ 8.A, 8.D.

U.S. BANK'S MOTION TO DISMISS PLAINTIFF'S
COMPLAINT (No. 2:20-cv-00680-DGE) – 13

1        Equally deficient is Plaintiff's conclusory allegation that U.S. Bank somehow "aided and

2  abetted" the alleged violations against him. Dkt. # 1-2 at ¶¶ 18, 24–26. To the extent Plaintiff means

3  that U.S. Bank and TSI were "joint tortfeasors," Plaintiff has not alleged the "collaboration or

4  concerted action needed to establish that relationship." *Stephens*, 159 P.3d at 26 (no joint-tortfeasor

5  liability under the CPA where no suggestion that defendant collaborated in the alleged violation

6  by, for example, "suggest[ing] or review[ing] the wording of [the debt collector's] letters" to

7  plaintiff). And though Plaintiff, in passing, suggests that U.S. Bank aided and abetted TSI in "its

8  status as a trustee," that assertion is perplexing, to say the least. Dkt. # 1-2 at ¶ 26. Plaintiff has not

9  alleged that the Indenture Trustee—of a distinct and separate trust—had any involvement in loan

10  servicing on behalf of the Trusts. *See, e.g.*, *In re Nat'l Collegiate Student Loan Trs. Litig.*, 251 A.3d

11  116, 138–39 (Del. Ch. 2020) ("Indeed, the Indenture gives the Indenture Trustee a minimal role—

12  at least as long as the Student Loans are generating enough proceeds to pay off the Notes. The duty

13  to service the Student Loans and collect proceeds belongs, instead, to the Trusts.").

14        And, finally, Plaintiff appears to support its aiding-and-abetting theory by invoking the

15  settlement consent order between TSI and the CFPB, claiming that the order "imposed both

16  affirmative and prohibitory duties upon U.S. Bank" and required U.S. Bank to "ensure and enforce

17  [TSI's] compliance." Dkt. # 1-2 at ¶¶ 24–25. For starters, Plaintiff misrepresents the facts—U.S.

18  Bank was not a party to (and was not bound by) that Consent Order, and the Consent Order did not

19  impose affirmative or prohibitory duties on U.S. Bank. *See generally* Consent Judgment, *In re*

20  *Transworld Systems, Inc.*, Admin. Proc. No. 2017-CFPB-0018 (Sept. 18, 2017)[8]; *see also Sprewell*,

21  266 F.3d at 988 (courts do not "accept as true allegations that contradict matters properly subject

22  to judicial notice or by exhibit"). In any event, Plaintiff fails to explain how this consent order

23  shows U.S. Bank's "collaboration or concerted action" with respect to the alleged violations against

24  him. *Stephens*, 159 P.3d at 26; *see also* Fed. R. Civ. P. 9(b).

25

26        [8]  *Available  at*  https://files.consumerfinance.gov/f/documents/201709_cfpb_transworld-systems_consent-order.pdf.

U.S. BANK'S MOTION TO DISMISS PLAINTIFF'S
COMPLAINT (No. 2:20-cv-00680-DGE) – 14

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**C.      Plaintiff's Claim for a Per Se Violation of the CPA Additionally Fails Against U.S. Bank Because U.S. Bank Is Not a Debt Collector Under the FDCPA**

Plaintiff's claims against U.S. Bank for violation of the CPA (Counts III and IV) are premised entirely on vicarious-liability theories that must fail for the reasons given in Sections IV.A and IV.B, *supra*. With respect to Count IV, Plaintiff also cannot impose direct or vicarious liability on U.S. Bank for per se violation of the CPA based on alleged violations of the Fair Debt Collection Practices Act ("FDCPA") (Count IV) for the additional reason that U.S. Bank is not a "debt collector" subject to the FDCPA.

Plaintiff alleges only that "Transworld and P&F are Debt Collectors" under the FDCPA, *see, e.g.*, Dkt. # 1-2 at ¶¶ 6, 8, 119(a); the Complaint lacks any allegations that U.S. Bank, itself, is a debt collector. And, indeed, Plaintiff cannot allege that U.S. Bank *is* a debt collector because such an allegation would be at odds with the SSA, under which U.S. Bank is not "require[d] or permit[ted] . . . to undertake direct collection or enforcement activities." Ex. A, SSA § 8.A; *see also Merrill R&R*, 2020 WL 8474736, at *9–10 (recommending that District Court grant U.S. Bank's motion to dismiss FDCPA claim because it is not a debt collector), *adopted*, 2021 WL 210715, at *1 (W.D. Mich. Jan. 21, 2021) (accepting Magistrate Judge Berens's conclusion that U.S. Bank is not a debt collector under the FDCPA because "reading [the SSA and TSI Agreement] together supports the conclusion that the parties did not intend U.S. Bank to perform debt collection duties should it become the Successor Special Servicer").

Similarly, because U.S. Bank is not a "debt collector" it cannot be held vicariously liable for violation of the FDCPA. *See McAdory v. M.N.S. & Assocs., LLC*, 952 F.3d 1089, 1096 (9th Cir.), *cert. denied sub nom. DNF Assocs., LLC v. McAdory*, 141 S. Ct. 627 (2020) ("The circumstances under which an entity can be a 'debt collector' logically precedes consideration of whether and when a debt collector can be held vicariously liable for the actions of another debt collector."); *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 108 (6th Cir. 1996) ("We do not think it would accord with the intent of Congress, . . . for a company that is not a debt collector to

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1    be held vicariously liable for a collection suit filing that violates the Act only because the filing

2    attorney is a 'debt collector.'"); *Merrill R&R*, 2020 WL 8474736, at *9 (recommending dismissal

3    of FDCPA claim against U.S. Bank based on TSI's debt collection activity because the two entities

4    did not consist of "a single economic enterprise" as required for vicarious liability of a non-debt

5    collector under FDCPA).

6           Accordingly, U.S. Bank cannot be held directly or vicariously liable for violating the CPA

7    as premised on a federal statute to which it is not subject.

8    **D.    Plaintiff's Claim for Civil Conspiracy To Violate the CPA Also Fails Against U.S.
         Bank**

9           Plaintiff cannot state a claim against U.S. Bank for civil conspiracy to violate the CPA

10   because Plaintiff can neither plead the elements of a conspiracy with requisite particularity nor

11   sufficiently allege the predicate tort on which his conspiracy claim is based. "To establish a civil

12   conspiracy, Plaintiffs must prove that (1) two or more people *contributed* to accomplish an unlawful

13   purpose, or *combined* to accomplish a lawful purpose by unlawful means; and (2) the conspirators

14   *entered* into an agreement to accomplish the object of the conspiracy." *Wilson v. JPMorgan Chase,*

15   *N.A.*, No. 2:17-CV-00696-RAJ, 2020 WL 885971, at *5 (W.D. Wash. Feb. 24, 2020) (emphasis

16   added) (citing *Corbit v. J.I. Case Co.*, 424 P.2d 290, 295 (Wash. 1967)), *reconsideration denied*,

17   2020 WL 6262106 (W.D. Wash. Oct. 23, 2020). At the pleading stage, a plaintiff must allege the

18   factual basis for each element with particularity when "the object of the alleged conspiracy is

19   fraudulent." *Wasco*, 435 F.3d at 990.

20          Plaintiff, however, fails to allege *any* affirmative acts *by U.S. Bank* in concert with the other

21   Defendants that would establish that U.S. Bank "*contributed* to," "*combined*," or "*entered* into an

22   agreement" to accomplish an unlawful purpose. At most, Plaintiff reasserts allegations from other

23   lawsuits or settlements that "tell us little about the relationship between the plaintiff[] and the

24   defendants they have sued in this litigation." *Gosse v. Transworld Systems Inc.*, No. 3:20-CV-1446,

25   2021 WL 5761733, at *2, *7 (M.D. Pa. Jul. 13, 2021) (recommending dismissal of all claims against

26

U.S. BANK'S MOTION TO DISMISS PLAINTIFF'S
COMPLAINT (No. 2:20-cv-00680-DGE) – 16

U.S. Bank arising out of factual theories identical to those asserted here). Nor does Plaintiff plausibly allege an agreement among the Defendants to achieve such an unlawful purpose. At most, Plaintiff alleges only that Defendants, including U.S. Bank, entered into a series of business-related associations. *See, e.g.*, Dkt. # 1-2 at ¶¶ 6–12, 16, 28, 34–38. But lawful, business-related associations are insufficient to establish a conspiracy. *See Sterling Bus. Forms, Inc. v. Thorpe*, 918 P.2d 531, 533–34 (Wash. Ct. App. 1996) ("[T]he 'circumstances [of the alleged conspiracy] must be inconsistent with a lawful or honest purpose and reasonably consistent only with [the] existence of the conspiracy.'" (quoting *Corbit*, 424 P.2d at 295)).

Finally, civil conspiracy is not an independent cause of action, but must instead be based on an underlying, actionable tort. *Nw. Laborers-Employers Health & Sec. Tr. Fund v. Philip Morris, Inc.*, 58 F. Supp. 2d 1211, 1216 (W.D. Wash. 1999). Because Plaintiff has not stated (and cannot state) a claim for violation of the CPA under either Counts III or IV, his conspiracy claim, too, fails. Accordingly, Plaintiff's civil conspiracy claim against U.S. Bank (Count I) must be dismissed.

**E.    Plaintiff's Request for Injunctive Relief Also Fails**

Because Plaintiff's substantive claims against U.S. Bank fail, so too does Plaintiff's request for injunctive relief. *See Veridian Credit Union v. Eddie Bauer, LLC*, 295 F. Supp. 3d 1140, 1156 (W.D. Wash. 2017) (explaining that "request[s] [for] declaratory and injunctive relief . . . are requests for relief and not separate legal causes of action"); *see also* Order on Defs.' Mots. To Dismiss, No. 2:20-cv-00669-DGE, slip op. at 9–11, Dkt. # 120 (dismissing Osure Brown's claims for declaratory and injunctive relief because neither was "a stand-alone action" but "instead require[d] some other substantive basis for liability," which was lacking).

## V.    CONCLUSION

For the above reasons and those included in Section III.F. of the Trusts' Motion to Dismiss, all claims against U.S. Bank must be dismissed.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1

DATED: March 1, 2022

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PERKINS COIE LLP

By: s/ Kristine E. Kruger
By: s/ Thomas N. Abbott
Kristine E. Kruger, WSBA No. 44612
Thomas N. Abbott, WSBA No. 53024
1201 Third Avenue, Suite 4900
Seattle, WA 98101
Telephone: 206.359.8000
Facsimile: 206.359.9000
KKruger@perkinscoie.com
TAbbott@perkinscoie.com

*Attorneys for U.S. Bank National Association*

JONES DAY

By: s/ Albert J. Rota
Albert J. Rota, *Pro Hac Vice*
2727 North Harwood St.
Dallas, TX 75201
ajrota@jonesday.com

*Attorneys for U.S. Bank National Association*

U.S. BANK'S MOTION TO DISMISS PLAINTIFF'S
COMPLAINT (No. 2:20-cv-00680-DGE) – 18