The Honorable David G. Estudillo

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TOMMY BROWN,<br>*on their behalf and on behalf of other*<br>*similarly situated persons*<br><br>Plaintiff,<br><br>v.<br><br>TRANSWORLD SYSTEMS, INC.,<br>PATENAUDE & FELIX, APC, U.S. BANK,<br>NA. NATIONAL COLLEGIATE STUDENT<br>LOAN TRUST 2004-1, NATIONAL<br>COLLEGIATE STUDENT LOAN TRUST<br>2004-2, NATIONAL COLLEGIATE<br>STUDENT LOAN TRUST 2005-1,<br>NATIONAL COLLEGIATE STUDENT LOAN<br>TRUST 2005-2, NATIONAL COLLEGIATE<br>STUDENT LOAN TRUST 2005-3,<br>NATIONAL COLLEGIATE STUDENT LOAN<br>TRUST 2006-1, NATIONAL COLLEGIATE<br>STUDENT LOAN TRUST 2006-2,<br>NATIONAL COLLEGIATE STUDENT LOAN<br>TRUST 2007-1, and NATIONAL<br>COLLEGIATE STUDENT LOAN TRUST<br>2007-2,<br><br>Defendants. | Case No: 2:20-cv-00680-DGE<br><br>AMENDED COMPLAINT<br><br>(JURY DEMAND) |

Plaintiff Tommy Brown, on his behalf and on behalf of similarly situated persons,

bring this action by their undersigned counsel and say in support:

## I.     **INTRODUCTION**

1.     This is a putative class action arising from the Defendants' alleged coordinated

efforts to enforce consumer debts through the use of affidavits that allege to be based on personal

knowledge when they are not; and through the presentation of documents that have been altered

AMENDED COMPLAINT - 1

by the addition of information that was not part of the original documents, creating the purported debts and their transfers from the original creditors. In sum, Defendants' conduct amounts to an effort to lead consumers and the courts to believe that the Defendants have the right to collect consumer debts when they cannot show a satisfactory factual basis for their claims.

2. First Marblehead Corporation ("FMC") sought an opportunity to make high-cost loans to students. However, FMC did not have the reputation, credibility or ability to attract borrowers and even if it did it would be subject to complying with the laws in each state as a non-bank entity.

3. Instead, FMC came up with a scheme by which it would entice national banks to lend their charters to a marketing operation to be conducted by FMC for the banks. FMC itself identified this "rent a charter" scheme as a potential liability issue in its own 2007 annual report. See Exhibit A.

4. As part of its rent a charter scheme, FMC enlisted a purported non-profit entity to act as the guarantor of the loans which would allow FMC to convince and entice the banks that there would not be any problems or issues arising out of the loans. FMC convinced The Education Resources, Inc. (TERI) to be the guarantor for any student loans that went into default.

5. FMC was able to convince TERI to become involved, because as with the arrangement with the banks, FMC promised it would do all of the work connected with the marketing and generation of the loans. To this end, FMC and TERI entered into a series of management agreements with provisions including that FMC would manage database operations for TERI and that TERI would become the depository entity of all the original documents relating to the loans made in the names of the banks.

6. FMC for its efforts ending up being paid over $1,000,000,000 (one billion dollars) in fees from the Trusts as part of the effort.

7. In 2008, the Great Recession hit, and TERI filed bankruptcy. The relationship between FMC and TERI also disintegrated and eventually a post-bankruptcy lawsuit between TERI and FMC gave TERI control over its own loan database. This created a problem for FMC,

HENRY & DEGRAAFF, P.S.
113 CHERRY ST, PMB
SEATTLE, WASHINGTON  98104-2205
telephone (206) 330-0595
fax (206) 400-7609

because FMC never foresaw TERI ending the relationship, and now TERI owned the records of the loans. FMC no longer had access to the records, which meant that they were functionally lost. *See* Exhibit G.

8.     The "Rent a Charter" loans generated by FMC's scheme were allegedly assigned to 15 trusts (collectively referred to as the "Trusts"). None of the trusts have any employees. They all are treated the same and there is nothing to distinguish between the trusts other than a numeric designation.

9.     The Defendants in this action collectively act, directly or indirectly, on behalf of the Trusts.

10.     U.S. Bank serves two roles in connection with the Trusts. First is as the Indenture Trust of the Trusts for a series of Indenture Agreements that were created as part of the transactions for the benefit of the investors/note holders.[1] Second is that U.S. Bank would serve as the Special Servicer for the Trusts. As such, U.S. Bank is responsible for the collection of the loans allegedly held by the Trusts. It is in this role that the claims are asserted against it in this this action since it is the ultimate decision maker and controller of the collection actions pursued on behalf of the Trusts, whether through a servicer, subservicer, or the people they hire, including attorneys, to collect on behalf of the Trusts. It is true that multiple intermediaries exist between the Trusts and U.S. Bank in the collection chain of command. However, U.S. Bank remains in command no matter how long the chain of parties engaged in collecting on behalf of the Trusts may be.

11.     TERI was to provide copies of the original loan documents it had possession of to a servicer hired for the Trusts known as American Education Services ("AES"), a servicer that serves in that role for most of the loans that the Trusts claim to own. But as set forth in Servicer

---

[1] An example of the Indenture Agreement is available at
https://www.sec.gov/Archives/edgar/data/1223029/000088237707002305/d719497.htm

AMENDED COMPLAINT - 3

Performance Report conducted of AES, the auditors concluded TERI failed to deliver essential documents for collection purposes and AES had no way of knowing what they had not received nor could AES provide any personal knowledge concerning any of the records. *See e.g.,* New York Times Article, *As Paperwork Goes Missing, Private Student Loan Debts May Be Wiped Away*[2] ("The beneficial owner of the National Collegiate's student loan trusts conducted an audit of the loans' servicer. Crucial paperwork needed to collect on the loans in court is missing, according to the auditors' report.")  The Servicer Performance Report conclusions included:

> 100% of the accounts (randomly selected) did not contain an Assignment. It is unknown whether Assignments were appropriately issued. Based on the representations made by PHEAA (another acronym for AES) it is likely that the **assignments do not exist.** (emphasis added).

*See* Exhibit B.

12.    AES lacks the required, legal paperwork but other collectors for the Trusts (as discussed *infra*) that rely on AES's records nevertheless falsely claim to have personal knowledge of the loans based on the incomplete records held by AES, and also claim to have personal knowledge of information when they never had any direct relationship that would provide any basis for personal knowledge of the transactions.

13.    Transworld Systems Inc. (TSI) is a downstream collector from AES who has sought to collect on loans. TSI was appointed a special sub-servicer of the 15 statutory trusts. As Subservicer it is subject to the control of the Special Servicer, U.S. Bank. Both U.S. Bank and TSI have been identified as agents of the Trusts.

14.    As Special Subservicer, TSI oversees the collection of student loans purportedly owned by the Trusts that go into default. Once a loan has gone into default TSI has access to AES's records that, as explained above, have been found to be lacking because they rely on another party, TERI, to provide it records that were not provided.

---

[2] Accessed via the internet on March 22, 2022 at 3:3pm - https://www.nytimes.com/2017/07/17/business/dealbook/student-loan-debt-collection.html

AMENDED COMPLAINT - 4

15.     TSI's only involvement with the Trusts began well after the loans were made and after default and that its default efforts can include litigation. TSI relies on access to AES's records for its collection efforts.

16.     TSI knows that to enforce the loans before the courts it would have to present competent and admissible evidence which it does not have, and the series of events and actual conditions described herein does not provide TSI with proper records or any ability to provide any information based on personal knowledge.

17.     TSI attempts to overcome the problems arising from the lack of records and lack of personal knowledge by making claims that it has complete records and has personal knowledge of the loan transactions.

18.     For example, TSI's efforts to enforce the loans includes preparing and submitting affidavits by its employees that are alleged to be based on "personal knowledge." The affidavits are not based on any personal knowledge.

19.     TSI's practice was to use affidavits that wrongfully claimed to be based on personal knowledge by the federal Consumer Financial Protection Bureau. The enforcement actions identifying the defects in TSI's efforts to collect the student loans were set forth in a September 15, 2017 Stipulation and Consent to the Issuance of a Consent Order ("TSI Stipulation") and a Consent Order in the matter of Transworld Systems, Inc. as a result of actions taken on behalf of the 15 trusts operated by NCT and for which Wilmington Trust Company serves as Trustee ("TSI Consent Order"), filing both in 2017-CFPB-0018.[3]

20.     The TSI Consent Order was issued specifically as to TSI's unfair and deceptive acts and practices on behalf of, or in the name of, the Trusts. The TSI Consent Order is both

_____

[3] The Court may take judicial notice of this government record. The document is available at https://files.consumerfinance.gov/f/documents/201709_cfpb_transworld-systems_consent-order.pdf

AMENDED COMPLAINT - 5

remedial and mandatory, and identified and prohibited many of the unfair and deceptive acts and practices of TSI on behalf of, or in the name of, the Trusts.

In the TSI Consent Order, the CFPB found that TSI and its nationwide network of law firms committed a number of offenses between November 1, 2014 and April 25, 2016, including:

a.   Filing tens of thousands of collections lawsuits against borrowers in which they did not possess the complete documentation needed to prove the NCT Trusts owned the loans;

b.   Filing tens of thousands of affidavits in support of collections lawsuits in which the affiant swore they had personal knowledge of the debt, when in fact the affiants frequently merely reviewed data on a computer screen, did not know the source of the data or how it was collected and maintained, and lacked knowledge of the chain of assignment records necessary to prove that the relevant Trust owned the loans;

c.   Filing numerous lawsuits without the intent or ability to prove the claims, if contested.

21.   The TSI Consent Order further found that these acts constituted violations of the Consumer Financial Protection Act, 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).

22.   Despite the Consent Order, TSI has continued to conduct "business as usual" and engage in the same wrongful behavior without making material changes. *See* Exhibit E and F.

23.   As part of its collection practices TSI also provides documents that are prepared for litigation which are filed in court actions in the names of the Trusts. The documents field in support of the lawsuits required adding documents to various agreements to give the appearance they were part of the origination and assignment of the subject loans when they not and instead were manufactured years later. The primary example of this unfair method of collection is a document that allegedly shows that the Trusts have interests in the Pool Supplements. The Pool Supplements reference a schedule of loans that is attached to the Pool Supplement Agreement. Since TSI does not have the original Schedules that were attached to the Pool Supplement Agreements (or even an actual copy of the original Schedules), TSI has instituted the use of what

HENRY & DEGRAAFF, P.S.
113 CHERRY ST, PMB
SEATTLE, WASHINGTON  98104-2205
telephone (206) 330-0595
fax (206) 400-7609

it calls a "placeholder" – a document that claims that the listing of the loans being transferred, which should be set forth on the Schedule, are on file with FMC. In sum, this "placeholder" is not part of the original loan agreement but has been added to the loan documents to leave the false impression that the Trusts have a valid interest and possession of the Schedules referenced in the Pool Supplement Agreements (which in fact it does not have).

24.     TSI's manufactured documents go further. Since the "placeholder" document added by TSI does not identify any specific loans, TSI adds an additional document that it attaches to the Pool Supplement labeled a "roster." This is also not a document included as part of the original Pool Supplement made at the time or the origination and initial assignment.

25.     TSI's practice of attaching this "roster" document has been addressed by the New York Attorney General, who found the roster "is a document TSI created for the specific litigation by copying identical text and data from a large spreadsheet with multiple accounts and pasting it into a new account-specific document"… [and] "TSI's description of a newly-created document as a "redacted" version of the original document may confuse consumers about the nature and legal status of the debt, impede consumers' ability to respond to the lawsuit, and influence consumers to settle rather than litigate (or to settle on less favorable terms than they would otherwise accept). *See* Exhibit H, New York Attorney General Assurance of Discontinuance at ¶¶ 21 and 22.[4]

26.     TSI also represented in that NY Assurance "that TSI has ceased identifying excerpts of loan rosters cut and pasted into new documents as "redacted" versions of original loan rosters." Id. at ¶ 23. That representation is untrue because TSI continues to alter the Pool Supplement documents by preparing and adding "rosters" to it and falsely and unfairly

---

[4] The Court may take judicial notice of this government record. The document is available at https://ag.ny.gov/sites/default/files/09.11.2020_tsi_aod_final.pdf

AMENDED COMPLAINT - 7

HENRY & DEGRAAFF, P.S.
113 CHERRY ST, PMB
SEATTLE, WASHINGTON  98104-2205
telephone (206) 330-0595
fax (206) 400-7609

pretending as part of its methods of collection by litigation that the "roster" is part of the original document described when it is not.

27.     TSI's designation of what Trust claims to own a particular loan is nothing more than mere guesses since TSI has no actual knowledge or the actual Schedules to the Pool Supplements. It does not have any way to identify which loans actually belong to which trusts (or what interests any trust has in any loan).

28.     In October 2017, the State of Connecticut Department of Banking entered into a Consent Order with TSI which expressly found that TSI

> **failed to maintain and implement adequate policies and procedures pertaining to its National Collegiate Student Loan Trust**….consumer collection accounts, including verification of debtor charge-off dates from certain loan servicers, adequate management of its vendor relationships and remediation of internal audit findings, that would demonstrate that the financial responsibility, character, reputation, integrity and general fitness of TSI are sufficient to warrant the belief that the business will be operated soundly and efficiently, in the public interest and consistent with the purposes of [Connecticut laws]. (emphasis added)

*See* Exhibit I.

29.     In response to the inquiry by the State of Connecticut Department of Banking, it should be noted, consistent with the facts alleged herein and other public investigations, that "TSI failed to produce complete, accurate and timely responses to requests for information made by the Department concerning TSI's consumer collection agency business."

30.     The unfair, deceptive, and abusive practices by TSI described herein in the name of the Trusts is done with the approval, consent, and acquiescence of the Special Servicer, U.S. Bank, and TSI's practice has been confirmed by the investigation of its practices by Massachusetts Attorney General[5] which concluded:

---

[5] The Court may take judicial notice of this government record. The document is available at https://www.mass.gov/doc/transworld-systems-aod/download

HENRY & DeGRAAFF, P.S.
113 CHERRY ST, PMB
SEATTLE, WASHINGTON  98104-2205
telephone (206) 330-0595
fax (206) 400-7609

Transworld executed certain Affidavits for use in Collection Lawsuits that stated a particular student loan was owned by a Trust, when, in fact, Transworld did not possess sufficient documentation to establish the chain of title of the particular (and) From November 1, 2014 through April 25, 2016, Transworld's representations contained in certain affidavits had the tendency to mislead Consumers to believe that Transworld and Law Firms representing the Trusts possessed the relevant documentation sufficient to support the assertions in the Affidavit and that the Debt was valid and accurate.

31.     Given the uncertainty of what Trust allegedly owns what loans (if any), the Trusts are treated as a single entity in collection efforts. The same acronyms, e.g., NCT, are used in communications with borrowers and in reporting the loans to consumer reporting agencies.

32.     The Defendants have worked together and collectively orchestrated and collaborated to illegally, unfairly, and deceptively collect and attempt to collect alleged debts owned by the Trusts through the improper means described herein and confirmed by multiple government investigations. In addition to the facts found by the public investigations discussed above, the issue has already been litigated in the courts and resolved against the Trusts by a court of competent jurisdiction in a decision that estops the Defendants from contesting their liability and that they lack personal knowledge to present evidence concerning the alleged ownership of loans by specific Trusts.

33.     This action concerns the unlawful actions including the debt collection practices of Defendants National Collegiate Student Loan Trust 2004-1, National Collegiate Student Loan Trust 2004-2, National Collegiate Student Loan Trust 2005-1, National Collegiate Student Loan Trust 2005-2, National Collegiate Student Loan Trust 2005-3, National Collegiate Student Loan Trust 2006-1, National Collegiate Student Loan Trust 2006-2, National Collegiate Student Loan Trust 2007-1, and National Collegiate Student Loan Trust 2007-2 (collectively or in part the "Trusts" or "NCSLT Trusts") through Transworld Systems, Inc. ("Transworld") and debt collection law firm Patenaude & Felix, A.P.C. ("P&F") (collectively "Defendants") on behalf of the Special Servicer, US Bank, National Association ("US Bank"). Specifically, the Defendants knew but recklessly disregarded:

a.     That the Defendants do not have the right to collect any sums from the Plaintiff and the Class members because the accounts they sought to collect on do not

HENRY & DEGRAAFF, P.S.
113 CHERRY ST, PMB
SEATTLE, WASHINGTON  98104-2205
telephone (206) 330-0595
fax (206) 400-7609

have the documentation necessary to prove that a particular loan was owned by a particular NCSLT Trust (if at all).

> b.     That the Defendants make use of documents as part of their methods of collection that were created and added to loan transactional documents but were never part of the original documents. These documents are specifically prepared for litigation and are inadmissible hearsay.

> c.     That the Defendants do not have the right to flood the courts with consumer debt collection actions, under the color of law, based upon records they know are unreliable, incomplete and are otherwise infected with inaccurate information or relying on hearsay documents that are not the original agreements as the agreements have been altered by adding documents that were not part of the original agreements.

> d.     That notwithstanding this knowledge, as part of their pattern and practice related to their unfair, deceptive, or otherwise unconscionable debt collection practices, Defendant's act through their affiliates and authorized agents to collect and attempt to collect on the hundreds and thousands of purported consumer debts.

34.     Here, the debts the Defendants are attempting to collect upon are (i) non-governmental loans that (ii) originated for student borrowers with co-signers for largely non-educational purposes.

35.     As a direct and proximate result of the Defendants acts and omissions, the Plaintiff and Class members have sustained damages and losses in the form of incurred out of pocket expenses to determine his rights and responsibilities about whether the debt was legally owed. Plaintiff and the Class members are also entitled to statutory damages and declaratory and injunctive relief.

## II.     PARTIES, JURISDICTION, AND VENUE

36.     Plaintiff Tommy Brown is a citizen of Washington state, the father of Osure Brown, and the cosigner on the loans at issue in this matter.

AMENDED COMPLAINT - 10

HENRY & DEGRAAFF, P.S.
113 CHERRY ST, PMB
SEATTLE, WASHINGTON  98104-2205
telephone (206) 330-0595
fax (206) 400-7609

37.     The Defendants removed this action based on claims that this Court has jurisdiction over the claims asserted under the Class Action Fairness Act, 28 U.S.C.A. §1332(d). The Plaintiff contested the jurisdiction and sought remand, which the Court denied. If it is later determined that the Court lacks jurisdiction, the case shall be remanded to the state court.

38.     If this action is within this court's jurisdiction, then venue is proper pursuant to 28 U.S.C.A. §1391(b)(2) since a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

39.     Defendant Transworld Systems, Inc. ("TSI") is a debt collector which acts under the authority and control of the Special Servicer, US Bank, for the NCSLT Trusts and is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts allegedly owed to others. TSI is a corporation chartered under California law with offices at 507 Prudential Road, Horsham, Penn., 19044. TSI does business in Washington, and its registered agent in Washington is CT Corporation System, 711 Capital Way S., Ste 204, Olympia, Wash., 98501. In addition:

a.      TSI is a debt collector as defined in the FDCPA. It regularly collects or attempts to collect debts, directly or indirectly, that are owed or asserted to be owed or due to others. Among the debts TSI collects that are alleged to be owed to others are so-called "private student loans" allegedly owed to the NCSLT Trusts.

b.      TSI is managed by a Board of Directors.

c.      To carry out part of its consumer collections business, it also operates and manages an Attorney Network business unit, which includes P&F, which files debt collection lawsuits in Washington and nationwide to collect on behalf of the NCSLT Trusts.

d.      TSI is a licensed Washington collection agency under UBI# 600-169-996. TSI services student loans as defined by RCW 31.04.015(35). It is not licensed as a student loan servicer as required by RCW 31.04.015 *et seq.*, but has been required to be so licensed since June 7, 2018.

AMENDED COMPLAINT - 11

e.      TSI is a person subject to RCW 19.86.

40.     Defendant Patenaude & Felix, A.P.C. ("P&F") is a debt collection law firm incorporated in California. P&F is a professional corporation doing business under the laws of Washington. P&F's registered agent in Washington is Matthew Cheung, who conducts business out of an office in Lynnwood, Wash.

41.     P&F seeks to collect defaulted consumer debts on behalf of the NCSLT Trusts through litigation and the mails. In addition:

a.      P&F is a debt collector as defined in the FDCPA. It regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another including the alleged loan accounts of the Plaintiff and putative class members.

b.      P&F is managed by a Board of Directors.

c.      To carry out part of its consumer collections business, it also operates as part of Transworld's Attorney Network business unit and files debt collection lawsuits in Washington and nationwide to collect on behalf of the Trusts.

d.      P&F is a licensed Washington collection agency.

e.      P&F is a person subject to Revised Code of Washington Ch. 19.86.

f.      P&F and its lawyer in Washington, Matthew Cheung, have, by service and/or filing, commenced over 1400 lawsuits in the state of Washington with the plaintiff identified in such cases as one or more of the NCSLT Trusts.

g.      P&F was fully aware of, countenanced, permitted, and encouraged the conduct of its employee Matthew Cheung as set forth herein.

h.      The actions of Mr. Cheung on behalf of P&F were conducted in trade or commerce and primarily in connection with P&F's business has a collection agency.

i.      Matthew Cheung is an employee of P&F, and is a lawyer licensed to practice law in the state of Washington and practices law from an office address in Lynnwood, Wash.

AMENDED COMPLAINT - 12

42.     Defendants National Collegiate Student Loan Trust 2004-1, National Collegiate Student Loan Trust 2004-2, National Collegiate Student Loan Trust 2005-1, National Collegiate Student Loan Trust 2005-2, National Collegiate Student Loan Trust 2005-3, National Collegiate Student Loan Trust 2006-1, National Collegiate Student Loan Trust 2006-2, National Collegiate Student Loan Trust 2007-1, and National Collegiate Student Loan Trust 2007-2 (collectively "NCSLT Trusts" or "the Trusts") are Delaware statutory trusts, formed and existing pursuant to the laws of the state of Delaware for the purpose of acquiring purported consumer debts.

43.     The Trusts are treated as a single entity by the other Defendants.

44.     Defendant U.S. Bank, NA is a National Banking Association which does business in King County, Washington.

45.     U.S. Bank National Association serves as the "indenture trustee" for the NCSLT 2006-2 Trust. U.S. Bank's role in the trusts is not related to its consumer banking activities whatsoever.

46.     U.S. Bank was designated as a Back-Up Special Servicer to the Trusts, a Back-Up to First Marblehead Education Resources, Inc. ("FMER"). In 2012, FMER resigned as Special Servicer and U.S. Bank assumed that role.

47.     U.S. Bank delegated the performance of its duties as Special Servicer to a company named Turnstile Capital Management, LLC ("Turnstile"). Despite the delegation of the performance of its duties, U.S. Bank remains responsible for the performance of the duties whether done by Turnstile, AES, TSI, P&F, TSI's Attorney Network or any other person involved in collecting loans allegedly acquired by the Trusts. U.S. Bank had the duty to properly supervise and control the activities of Turnstile, AES, TSI, P&F, TSI's Attorney Network or any other person engaged in collection for the Trusts and is vicariously or directly liable for the torts and other wrongful conduct committed against Plaintiff and others in Washington by Turnstile, AES, TSI, P&F, TSI's Attorney Network or any other person.

48.     Asserting gross negligence and other actionable wrongful conduct, the NCSLT Trusts, by way of a Verified Amended Complaint against U S. Bank, sued U.S. Bank, Turnstile,

HENRY & DeGRAAFF, P.S.
113 CHERRY ST, PMB
SEATTLE, WASHINGTON  98104-2205
telephone (206) 330-0595
fax (206) 400-7609

and GSS Data Services, Inc. and made, among others, the following allegations which, on

information and belief, after investigation, Plaintiff asserts are accurate, and on information and

belief reallege:

> Neither the Trusts nor the Owners approved these arrangements with Turnstile or with Transworld. To the contrary, the Owners specifically informed the Administrator and U.S. Bank that they did not want Turnstile or TSI to perform any services relating to the Trusts. But the Administrator and U.S. Bank refused to follow the instructions from the Owners. The Trust did not hire Turnstile or TSI, neither Turnstile nor TSI acts at the direction of the Trusts, and they do not follow any directions or instructions issued by the Trusts. To the contrary, as discussed below, while the Owners of the Trusts have requested that TSI cease filing lawsuits in the name of the Trusts where TSI cannot prove that the Trusts have standing to collect on defaulted loans, TSI has nevertheless continued to file such lawsuits.
>
> To the contrary, TSI is an agent of U.S. Bank as Special Servicer. Under the Special Servicing Agreement, U.S. Bank was responsible for 'the enforcement, collection and servicing of Delinquent Loans and Defaulted Loans. . . .

*See* Exhibit D.

49.     "U.S. Bank's duties further included monitoring the performance of Turnstile and

replacing it if it was deficient or negligent in performing its duties." As set forth herein,

Turnstile's performance of its duties was deficient and negligent, but U.S. Bank failed to monitor

Turnstile's performance and failed to replace Turnstile as Subservicer.

50.     The remainder of the allegations as they pertain to U.S. Bank in said Verified

Amended Complaint establish that U.S. Bank was both in a position to and had a duty to prevent

and avoid the unfair and deceptive acts and practices performed by TSI, and the attorneys from

Transworld's Attorney Network acting in Washington and elsewhere, that U.S. Bank knew of

and was fully informed about said unfair and deceptive acts and practices being performed in

Washington and  elsewhere, that U.S. Bank was in a position to and had a duty to prevent and

avoid such unfair and deceptive acts and practices, and that U.S. Bank negligently and/or grossly

negligently and/or intentionally, failed to prevent such unfair and deceptive acts and practices in

Washington and elsewhere, and in fact aided, abetted and approved the commission of such

unfair and deceptive acts and practices in Washington and elsewhere by TSI and the attorneys

retained by TSI to act in the name of the NCSLT Trusts in Washington and elsewhere.

HENRY & DEGRAAFF, P.S.
113 CHERRY ST, PMB
SEATTLE, WASHINGTON  98104-2205
telephone (206) 330-0595
fax (206) 400-7609

51.     The doctrine of respondeat superior applies to U.S. Bank and its own acceptance of contractual duties as Special Servicer renders it responsible for the wrongful conduct of in Washington and elsewhere as herein alleged and for the wrongful actions of Turnstile, AES, TSI, P&F, TSI's Attorney Network or any other person engaged in collection for the Trusts in Washington and elsewhere and also including certain of those actions it has ratified by its own conduct.

52.     Paragraphs 71 through 79 of the said Verified Amended Complaint establish that U.S. Bank, TSI and others were fully aware, that the (variously Schedule 1, Schedule 2, or Schedule 3; collectively the "Loan Schedules") Loan Schedules do not exist. Despite that knowledge, TSI, with the knowledge and consent of U.S. Bank, has continued in many cases, in Washington and elsewhere, to file affidavits and/or declarations under oath which falsely and knowingly testify that such schedules do exist, that the affiant or declarant has personal knowledge of their existence and alter original documents by attaching documents that were not part of the original agreement and documents that were prepared for litigation.

53.     Paragraphs 80 through 85 of said Verified Amended Complaint set forth examples of case authority and rulings which establish that U.S. Bank and TSI knew that the declarations and affidavits submitted to support claims made in the name of NCSLT Trusts concerning loan documentation were false, and that altered documents were being presented as original documents to support claims and allegations as to which Trust owned a specific loan was done through speculation and not based on personal knowledge. The allegations in the Verified Amended Complaint were consistent with the findings of the government agencies investigations and the Servicer Performance Report.

54.     In fact, TSI created false and forged documents purporting to reflect the Loan Schedules from the original "Pool Supplement Agreements" and TSI, through its employees and through its Attorney Network, falsely represented, through false affidavits and/or declarations, and through false statements in pleadings, testified or asserted that such documents were genuine

HENRY & DEGRAAFF, P.S.
113 CHERRY ST, PMB
SEATTLE, WASHINGTON  98104-2205
telephone (206) 330-0595
fax (206) 400-7609

1  and original loan documents and that the attorney when they were not, and the affiant or

2  declarant had personal knowledge or attested to their authenticity.

3      55.    The foregoing statements made in, or summarized from, the said Verified

4  Amended Complaint constitute admissible evidence under Washington Evidence Rule 801(d)(2).

5      56.    U.S. Bank is fully aware of the TSI Consent Order issued by the Consumer

6  Financial Protection Bureau ("CFPB"), the other government investigations, and findings

7  regarding its unfair and deceptive acts and practices, including violations of the CAA and CPA

8  by TSI and U.S. Bank permitted, consented to, and aided and abetted those unfair and deceptive

9  acts and practices.

10      57.    U.S. Bank was, and is, bound by the TSI Consent Order issued by the CFPB

11  beause TSI performs services contractually assumed by U.S. Bank as Special Servicer. In fact,

12  that order imposed both affirmative and prohibitory duties upon U.S. Bank, and U.S. Bank has

13  failed and/or refused to act in accordance with its duties under said TSI Consent Order. The

14  failure of U.S. Bank to act in accordance with its duties under the TSI Consent Order, and to

15  ensure and enforce TSI's compliance with that Consent Order, establish that US Bank's consent

16  to, and aiding and abetting in the commission of, unfair and deceptive acts and practices by TSI

17  in violation of the CAA CPA, were willful and knowing.

18      58.    The actions, and non-actions of US Bank in consenting to, and aiding and

19  abetting, the unfair and deceptive acts and practices of TSI in violation of the CAA and the CPA,

20  are themselves unfair practices in violation of the CPA, when committed by a national banking

21  association in, or related to, its status and role as a trustee and not related to consumer banking

22  activities whatsoever as a national bank.

23      59.    Wilmington Trust Company serves as the "owner trustee" for the Trusts acting

24  solely on behalf of the investors who purchase offered notes or shares of the Trusts. Wilmington

25  Trust's role in the trusts is not related to consumer banking activities whatsoever.

26

HENRY & DEGRAAFF, P.S.
113 CHERRY ST, PMB
SEATTLE, WASHINGTON  98104-2205
telephone (206) 330-0595
fax (206) 400-7609

60.     At all times relevant to this Complaint, TSI has acted as the debt collector on behalf of the Trusts and the Trusts, through its Trustees, expressly authorized TSI to carry out all work that it has done on their behalf.

61.     The Trusts each have an organizational structure that exercises immediate control over the Trusts' activities through Trustees, has regular meetings in various offices, and decides how to conduct the affairs of the Trusts' business in Washington and elsewhere.

62.     The Trusts also work to carry out their business activities through a group of affiliates, partners, and agents.

63.     The Trusts are persons subject to RCW 19.86.

64.     This Court has jurisdiction over TSI, P&E, U.S. Bank and the NCSLT Trusts because they do business in Washington State and King County by collecting or attempting to collect debts from Washington State residents who they allege owe debts to the Trusts. Therefore, Defendants have obtained the benefits of the laws of Washington (without the right to do so), and Defendants are subject to the jurisdiction of this Court.

65.     Venue is proper in either this Court or in King County Superior Court because many of the acts and transactions occurred, and all Defendants transact business, in King County, Washington.

### III.     FACTUAL BACKGROUND

#### A.     NCSLT and TSI Background

66.     Based on publicly available documents and information and belief, the Trusts are investment vehicles that allegedly engaged in the practice of buying large numbers of purported education-related consumer loans and collecting payments from the borrowers for the benefit of investors. The Trusts have been subject to significant litigation, including some discussed herein, and are aware that the assets (i.e., purported student loans) acquired by them subject to this action are unenforceable.

67.     As the Trusts have no employees, any actions performed nominally by a Trust or on its behalf are actually performed by its Trustees and others engaged by the Trustees to

HENRY & DEGRAAFF, P.S.
113 CHERRY ST, PMB
SEATTLE, WASHINGTON  98104-2205
telephone (206) 330-0595
fax (206) 400-7609

perform the contractual or legal duties of the Trustees. As set forth above, the Trustees have assigned performance of duties to various entities that include Turnstile, AES, TSI, P&F, TSI's Attorney Network or any other person involved in collecting loans allegedly acquired by the Trusts but the responsibilities for the performance of these duties is non-delegable by the Trustees. On information and belief, NCO Financial Systems, Inc. was the default servicer for the Trusts until November 1, 2014, at which time TSI became the new servicer and successor in interest to NCO.

68.     TSI becomes the default student loan servicer for the loan accounts at issue here and the loan accounts of certain of the putative class members at a time when it believed the loans were in default. TSI became the servicer for the loan accounts and the loan accounts of the putative class members at a time then it knew the records were inaccurate, incomplete, prone to errors, and otherwise were deficient. This knowledge was based, upon information and belief, upon the records TSI received from NCO and AES or their agents and affiliates at the time of the servicing transfer. However, TSI has concealed this material information from the Plaintiff and putative class member Plaintiffs until a period of twelve months before the commencement of this action.

## 1.     TSI attorney network

69.     Based upon public disclosures, and upon information and belief, TSI retains a national network of law firms and attorneys to pursue delinquent student loan borrowers by filing collection lawsuits in state courts. TSI is not licensed as a student loan servicer by the State of Washington. One of these firms is P&F.

70.     On information and belief, P&F is licensed as a collection agency in the state of Washington, and is therefore subject to laws that govern the practice of such agencies, including the federal Fair Debt Collection Practices Act ("FDCPA"), Washington's Collection Agency Act ("CAA"), and Washington's Consumer Protection Act ("CPA").

HENRY & DEGRAAFF, P.S.
113 CHERRY ST, PMB
SEATTLE, WASHINGTON  98104-2205
telephone (206) 330-0595
fax (206) 400-7609

B.    **Debt Collection Begins**

71.    In October 2018, P&F sent ten letters signed by Matthew Cheung that were received by Tommy Brown stating that it would initiate collection efforts regarding an outstanding balance owed to the National Collegiate Student Loan Trusts. The collection letters failed to reference the original creditor Bank of America and did not include any breakdown of interest or service charge, collection costs, or late payment charges, if any, that might have been added to the original obligation by the original creditor or the last payment made on the loans.

72.    In response to a debt verification letters sent to Patenaude & Felix and signed by Matthew Cheung, Tommy Brown received documentation regarding all ten loans, including payment histories from American Educational Services (AES), and payments on a Loan Payment History Report after charge-off on September 4, 2012. Each loan verification response included accrued interest for each loan. There is no indication on any payment history to indicate who made the payments.

73.    In January 2019, Tommy Brown again received letters from P&F signed by Matthew Cheung informing him of a potential settlement for each NCSLT loan, indicating that they would discount a considerable portion of the obligation.

74.    In unfiled Complaints served on Tommy Brown in February 2019, the NCSLT Trusts made false and deceptive claims that he had liability on the debt allegedly owed to the Trusts even though he had never made any payment on the loans.

1.    **The Trusts File Suit**

75.    On April 5, 2019, Osure Brown and Tommy Brown were sued by the Trusts, represented by P&F, in ten separate cases in King County Superior Court, Nos. 19-2-09408-7, 19-2-09402-8, 19-2-0903-6, 19-2-09404-4, 19-2-09405-2, 19-2-09405-2, 19-2-09406-1, 19-2-09407-9, 19-2-09409-5, 19-2-09410-9, and 19-2-09411-7. The cases were subsequently consolidated into cause No. 19-2-09402-8.

76.    In each case, the NCSLT Trusts, TSI and P&F, acting on the authority of and at the direction of the Special Servicer, U.S. Bank, falsely and deceptively alleged that Tommy

HENRY & DEGRAAFF, P.S.
113 CHERRY ST, PMB
SEATTLE, WASHINGTON  98104-2205
telephone (206) 330-0595
fax (206) 400-7609

1   Brown, as cosigner on Osure Brown's loans, had liability for each one of the ten Bank of

2   America loans Osure Brown had scheduled when filing his Chapter 13 bankruptcy case, and

3   which, the Trusts alleged, had subsequently been purchased by the Trusts in the form of

4   consolidated loan pools.

5       77.    Tommy Brown sent notices of appearance on all ten cases to counsel at P&F and

6   on April 5, 2019 each lawsuit was filed separately, assigning ten case numbers and ten separate

7   judges in King County Superior Court.

8       78.    Each of the ten complaints filed by the Trusts, under the authority and direction of

9   the Special Servicer, U.S. Bank, and through their debt collectors TSI and P&F, was unfair and

10   deceptive in multiple ways, as explained herein:

11       **2.    The Trusts could not substantiate their ownership of the loans**

12       79.    In each case, the NCSLT Trusts concurrently filed an affidavit (collectively the

13   "Audet Affidavits") signed by Jennifer A. Audet, an employee of TSI, the NCSLT Trusts' debt

14   collector. Each of Audet's Affidavits claimed that Audet had "personal knowledge" regarding

15   the records pertaining to the loan at issue, had verified that there was an outstanding principal

16   balance on a loan currently owned by one of the Trusts, and was authorized by TSI and in turn,

17   US Bank, to make the representations in the affidavit. Each Audet Affidavit also claimed that the

18   associated loan had been transferred, sold and assigned to the NCSLT Trusts.

19       80.    Attached to each of the Audet Affidavits is a trio of exhibits purporting to

20   substantiate the chain of assignment for the loan. Exhibit A was a notice from U.S. Bank

21   identifying itself as the special servicer for a number of the Trusts, including the defendants,

22   and confirming TSI role as the trusts' subservicer. Exhibit B was a document titled "Loan

23   Application/Promissory Note" or "Loan Request /Credit Agreement" allegedly signed by

24   Osure Brown as borrower and Tommy Brown as cosigner and submitted to BOA, along with a

25   document titled "Note Disclosure Statement" that includes additional information about the

26   alleged loan. Exhibit C consisted of a "Pool Supplement" evidencing the purported sale of

certain loans from BOA to The National Collegiate Funding LLC, which would in turn sell

**HENRY & DEGRAAFF, P.S.**
113 CHERRY ST, PMB
SEATTLE, WASHINGTON  98104-2205
telephone (206) 330-0595
fax (206) 400-7609

them to one of the NCSLT Trusts, followed by a "Deposit and Sale Agreement" that purports to record the sale of the pool of loans from National Collegiate Funding to the designated Trust.

81.     In each case, both the Pool Supplement and the Deposit and Sale Agreement note that the actual list of loans in each pool is specified by an associated Schedule (variously Schedule 1, Schedule 2, or Schedule 3; collectively the "Loan Schedules") of the associated Pool Supplement. None of the Pool Supplements attached to any of the Audet Affidavits include the associated Schedule, despite the claim in the affidavits that Exhibit C "is a true and correct copy of the assignment Agreement(s) described herein." The document was both incomplete and inadmissible hearsay.

82.     Additionally, the Audet Affidavit claimed that Tommy Brown had made payments on the loan, with the last payment made for various loans in 2017 and 2018, without disclosing that any payments made on the account were not made by Tommy Brown. When subsequently challenged on the validity of the Audet Affidavits, the Trusts responded by replacing them with a new affidavit (the "Luke Affidavit") signed by Bradley Luke, another TSI employee presented as the custodian of records for the Trusts.

83.     The Luke Affidavit was accompanied by several exhibits that purported to substantiate the Trusts' ownership of the loans at issue. Like the Audet Affidavits, however, the Luke Affidavit failed to provide any of the Loan Schedules, or any other business records demonstrating that the Trusts had at any point purchased any loans originated by Osure Brown and/or Tommy Brown. Instead, it provided what appeared to be an excerpt of a spreadsheet, labeled as a "roster," which appeared to have been expressly generated for litigation purposes long after the loans were purportedly originated. It was not part of the original Pool Supplement Agreements but was presented as if it were part of the original Pool Supplement Agreements pursuant to the Defendants' unfair and deceptive methods of collection through mass litigation.

HENRY & DEGRAAFF, P.S.
113 CHERRY ST, PMB
SEATTLE, WASHINGTON  98104-2205
telephone (206) 330-0595
fax (206) 400-7609

**C.     Summary Judgment is Granted in Favor of the Browns**

84.     On September 20, 2019, the Browns moved for summary judgment in their favor in the consolidated matter for lack of standing and for failure to prove assignment of the loans, arguing that Bradley Luke did not have the ability to testify about the NCSLT Trusts' ownership of the loans at issue.

85.     On October 24, 2019, the Browns' motion for summary judgment and associated motions by all parties were heard before this Court by the Hon. Nicole Gaines Phelps. On December 24, the court ordered that summary judgment be granted in favor of Osure Brown and Tommy Brown in the consolidated matter.

86.     The court also struck the affidavit of Bradley Luke as hearsay because Mr. Luke was not employed by the entity that had custody and possession of the records and did not have knowledge of the retention policies of BOA, the alleged originator of the loans. Accordingly, the court granted the motion for summary judgment in favor of the Browns.

87.     The NCSLT Trusts, and their debt collectors TSI and P&F, did not appeal the judgments entered against the Trusts in favor of the Browns. Those judgments are now final judgments.

**D.     The Trusts' Other Legal Woes Which Further Demonstrate Their Knowledge that They Chose to Conceal from the Plaintiff, Putative Class Members, and State Courts**

88.     The Trusts were also the subject of investigation by the CFPB.

89.     On September 18, 2017, a complaint was filed by the CFPB against fifteen National Collegiate Student Loan Trusts, including all of the defendant trusts in the instant matter (collectively the "Collective NCSLT Trusts"), in the United States District Court for the District of Delaware, Cause No. 17-cv-01323-GMS (ECF No. 1 therein).

90.     That case continues after a series of appeals relating to the authority of the CFPB.

91.     On September 15, 2017, more than a year and a half before filing suit against the Browns, the CFPB issued a Consent Order in the matter of Transworld Systems, Inc. as agent for

HENRY & DEGRAAFF, P.S.
113 CHERRY ST, PMB
SEATTLE, WASHINGTON  98104-2205
telephone (206) 330-0595
fax (206) 400-7609

the Collective NCSLT Trusts, filing it as 2017-CFPB-0018. A copy of which is Exhibit C, hereto.

92.     That Consent Order was issued specifically as to TSI's unfair and deceptive acts and practices on behalf of, or in the name of, the NCSLT Trusts. The Consent Order is both remedial and mandatory, and identified and prohibited many of the unfair and deceptive acts and practices of TSI on behalf of, or in the name of, the NCSLT Trusts identified above.

93.     In the Consent Order, the CFPB found that TSI and its nationwide network of law firms committed a number of offenses between November 1, 2014 and April 25, 2016, including:

    a.     Filing tens of thousands of collections lawsuits against borrowers in which they did not possess the complete documentation needed to prove the NCSLT Trusts owned the loans;

    b.     Filing tens of thousands of affidavits in support of collections lawsuits in which the affiant swore they had personal knowledge of the debt, when in fact the affiants frequently merely reviewed data on a computer screen, did not know the source of the data or how it was collected and maintained, and lacked knowledge of the chain of assignment records necessary to prove that the relevant Trust owned the loans;

    c.     Filing numerous lawsuits without the intent or ability to prove the claims, if contested.

94.     The Consent Order further found that these acts constituted violations of the Consumer Financial Protection Act, 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).

95.     In 2018, the Collective NCSLT Trusts, through the Trusts' Owners (as defined in the Trust Agreements), filed suit in Delaware Chancery Court against Transworld and two codefendants (*The National Collegiate Master Student Loan Trust 1, et al v. U.S. Bank National Association, GSS Data Services Inc., Turnstile Capital Management, LLC and Transworld Systems, Inc.*; Chancery Court of Delaware, Cause #2018-0167-JRS), for breach of contract,

HENRY & DEGRAAFF, P.S.
113 CHERRY ST, PMB
SEATTLE, WASHINGTON  98104-2205
telephone (206) 330-0595
fax (206) 400-7609

charging them with costing the Collective NCSLT Trusts billions of dollars and with causing "wrongful and fraudulent . . . cases being brought against thousands of borrowers."[6]

96.     Specifically, the Collective NCSLT Trusts have accused Transworld of injurious falsehood for, among other things:

a.     Recklessly making false and misleading representations to borrowers that the Collective NCSLT Trusts had a right to sue the Plaintiff and putative class members, when they did not;

b.     Falsely representing to borrowers that the Collective NCSLT Trusts possessed all of the notes, assignments and other documents needed to prove standing to foreclose on their loans, when they did not; and

c.     In so doing, exposing the Collective NCSLT Trusts to lawsuits from borrowers.

97.     At the time the NCSLT Trusts filed suit against Osure Brown and Tommy Brown on April 5, 2019, the Trusts and their Trustees were aware of the CFPB Consent Order, and of their lawsuit against TSI and other codefendants in Delaware Chancery Court.

98.     At the time the NCSLT Trusts filed suit against Osure Brown and Tommy Brown on April 5, 2019, the Trusts and their Trustees were aware of the reckless and injurious practices of TSI as explained in the Delaware lawsuit.

99.     At the time the NCSLT Trusts filed suit against Osure Brown and Tommy Brown, with the aid and assistance of TSI and P&F, on April 5, 2019, the NCSLT Trusts, U.S. Bank, TSI, and P&F were aware of TSI's reckless and injurious practices. Nevertheless, U.S. Bank allowed TSI, P&F, and the NCSLT Trusts to continue their unfair and deceptive practices of

---

[6] As of 2020, this suit has been consolidated with three others as *In re National Collegiate Student Loan Trusts Litigation*, C.A. No. 12111-VCS (Del. Ch. Jan. 21, 2020).

HENRY & DeGRAAFF, P.S.
113 CHERRY ST, PMB
SEATTLE, WASHINGTON  98104-2205
telephone (206) 330-0595
fax (206) 400-7609

flooding the courts with hundreds of debt collection actions without a reasonable basis to do so and without the right to due so based on their prior admissions in the CFPB Consent Orders.

100.    The actions of the NCSLT Trusts, TSI, U.S. Bank and P&F in regard to Osure Brown and Tommy Brown were substantially identical to the actions that the Consent Order found they took in regard to thousands of borrowers across the country in violation of the Consumer Financial Protection Act.

101.    On information and belief, the NCSLT Trusts, P&F, U.S. Bank and TSI were aware that they lacked the ability to prove their ownership of any loans taken out by Osure Brown and Tommy Brown at the time they filed their collection action against the Browns.

102.    On information and belief, the NCSLT Trusts are aware that they cannot prove they have a legitimate claim on the $12,847.59 paid to them from the bankruptcy estate of Osure Brown between 2012 and 2017. Yet the NCSLT Trusts wish to retain the benefit from their improper actions.

103.    On information and belief, the NCSLT Trusts and U.S. Bank are aware that the Loan Schedules related to the purported student loans acquired by them are lost, and they do not exist now, if they ever did. On information and belief, no entity possesses the Loan Schedules, and therefore these loans are completely uncollectable. Their knowledge is also demonstrated by their efforts to conceal they cannot show ownership by their alteration of documents through the inclusion of "placeholders" and "rosters" that were not part of the original agreements and were created for litigation and are inadmissible hearsay statements.

## IV.    CLASS ALLEGATION

Plaintiff Tommy Brown also sues on behalf of others, pursuant to Fed. R. Civ. P. 23, who are similarly situated to Mr. Brown as a Washington Class. This Class of similar persons are defined as follows:

   a.    **Washington Class: Those persons in the state of Washington** whom the Trusts have communicated with, directly or indirectly, for the purpose of collecting a purported student loan owned by a Trust since April 3, 2015.

AMENDED COMPLAINT - 25

HENRY & DEGRAAFF, P.S.
113 CHERRY ST, PMB
SEATTLE, WASHINGTON  98104-2205
telephone (206) 330-0595
fax (206) 400-7609

104.    Excluded as members of the Washington Class are any persons who fall within these definitions if the person is (i) an employee or independent contractor of any of the Defendants, (ii) a relative of an employee or independent contractor of any of the Defendants, or (iii) is an employee of the Court where this action is pending.

105.    The Class definition may be amended or modified. Subclass(es) may also be added as these proceedings continue.

106.    Tommy Brown proposes to represent himself and the Washington Class defined above.

107.    Tommy Browns qualifies as a person who is a member of the respective Class definition he seeks to represent.

108.    The members of the Washington Class are capable of being described without difficult managerial or administrative problems. The members are readily identifiable from the information and records in the possession, custody or control of the Defendants, public records, and records of third parties including the consumer reporting agencies who report the Defendants furnished credit information to others as part of their business.

109.    Upon information and belief based on public records the Washington Class is sufficiently numerous such that individual joinder of all members is impractical. This allegation is based on the fact that the NCSLT Trusts have sued thousands of consumers nationwide, including hundreds of cases in Washington by P&F and TSI.

110.    There are questions of law and fact common to the Washington Class and, in fact, the wrongs alleged against the NCSLT Trusts and the other defendants are identical. The common issues include, but are certainly not limited to:

a.      Whether the Defendants failed to meet the minimum investigation and good faith requirements of CR 11 and were in furtherance of and consequent to unfair and deceptive practices of repeatedly filing lawsuits without adequate investigation and without adequate or reasonable investigation by counsel;

HENRY & DeGRAAFF, P.S.
113 CHERRY ST, PMB
SEATTLE, WASHINGTON  98104-2205
telephone (206) 330-0595
fax (206) 400-7609

b.      Whether the Defendants engaged in any material investigation as to the completeness or authenticity of records to prove the chain of title and/or ownership of loan documents;

c.      Whether the Defendants engaged in any material investigation regarding statutes of limitations, as may be applicable to the alleged borrowers;

d.      Whether the Defendants engaged in any investigation of prior collection activities to determine if any unfair practice had been committed which as a matter of law prevent collection of interest under RCW 26.16.450, or otherwise;

e.      Whether the Defendants engaged in any investigation of the validity or truth of statements contained in the alleged loan documents;

f.      Whether the Defendants both negligently and intentionally caused false or forged evidence to be submitted in student loan collection actions commenced in the state of Washington;

g.      Whether the Defendants have used false, deceptive or misleading statements and documents in connection with its attempts to collect debts from the Plaintiff;

h.      Whether the Defendants have made false statements concerning the character, amount or legal status of any debts;

i.      Whether the Defendants have made any threat to take legal action that they do not have the right to take;

j.      Whether the Defendants have used any unfair and deceptive means to collect or attempt to collect any debt;

k.      Where the Defendants sued the Plaintiff for a debt not owed to the Defendant Trusts;

l.      Whether the Defendants filed and served lawsuits without standing or ownership of the alleged debt;

m.      The Defendants' net worth;

AMENDED COMPLAINT - 27

n. Whether the Defendant TSI has engaged in the unauthorized practice of law;

o. Whether the Defendant TSI has engaged in the servicing of student loans without a proper license for any or all portions of the class period;

p. Whether any other Defendant has engaged in the servicing of student loans without a required, proper license for any or all portions of the class period;

q. Whether the Defendants are collecting debts in the name of the Trusts deceptive when the Trusts have no employees and act only through their affiliates and agents;

r. Whether the Defendants letters sent to Plaintiff prior to filing that failed to identify the original creditor;

s. Whether U.S. Bank is legally and contractually responsible for the actions of persons performing duties of the Special Servicer.

111. The Plaintiff Tommy Brown's claims are the same as each member of the Washington Class and are based on the same legal and factual theories.

112. There is nothing unusual about the Plaintiff to warrant a material difference between his claims and the claims of the members of the class he seeks to represent.

113. The Defendants' likely defenses (though unavailing) are and will be typical of and the same or identical for each of the Washington Class and will be based on the same legal and factual theories. There are no valid, unique defenses or defenses that will become the major focus of the action.

114. Tommy Brown will fairly and adequately represent and protect the interests of the class members.

115. Tommy Brown does not have any interests antagonistic to the members of the class he seeks to represent.

116. Tommy Brown seeks certification pursuant to Wash. Super. Ct. Civ. R. 23(b)(2) and (b)(3).

AMENDED COMPLAINT - 28

117.    The Defendants has acted on grounds that applies uniformly across the Washington Class. so that the underlying statutory relief afforded to the claims below is appropriate respecting each of the classes as a whole. Further, the common questions predominate over any individual questions and a class action is superior for the fair and efficient adjudication of this controversy. A class action will cause an orderly and expeditious administration of class members' claims, and economies of time, effort, and expenses will be fostered, and uniformity of decisions will be ensured.

118.    There are no individual questions to establish the claims of the Plaintiff and the Washington Class members. The claims are based on Defendants' omissions and failure to have either a permissible purpose to collect sums from the class members or attempt to collect sums from the class members.

119.    Tommy Brown's claims are typical of the claims of the Washington Class members.

120.    The Washington Class members have suffered damages, losses, and harm similar to those sustained by the Browns in relation to the improper, unfair, and deceptive collect activities of the Defendants in violation of state and federal laws governing their activities.

## V.    CAUSES OF ACTION

**A.    Count I:  Civil Conspiracy to Violate the Washington State Consumer Protection Act On Behalf of The Named Plaintiff And The Washington Class Members**

121.     Plaintiff incorporates all preceding paragraphs as if set forth fully herein and assert this claim on their behalf and on behalf of the Washington Class members against each of the Defendants.

122.    Defendants have engaged in unfair and deceptive business practices in violation of the Revised Code of Washington Ch. 19.86.

123.    Such practices are likely to be repeated further, as illustrated by, among other things, similar conduct toward hundreds of other alleged debtors in Washington.

HENRY & DEGRAAFF, P.S.
113 CHERRY ST, PMB
SEATTLE, WASHINGTON  98104-2205
telephone (206) 330-0595
fax (206) 400-7609

124.    Such practices are likely to be repeated further, as illustrated by, among other things, the recent filings in the District of Delaware District Court and entry of the final and not appealed Transworld Consent Order by the CFPB.

125.    Such conduct has damaged Plaintiff and the Washington Class members by without limitation, loss of time away from their work having to litigate the Defendants' improper debt collection actions in state court proceedings against them without the right to do so.

126.    Such conduct constitutes an unacceptable risk to and/or damages the public interest.

127.    Such conduct should be enjoined as authorized by RCW 19.86.

128.    In additional to damages, Plaintiff and the Washington Class members are entitled to recover treble damages to the extent provided by statute together with reasonable attorney's fees and reasonable non-taxable costs and taxable costs.

129.    The Defendants have, amongst themselves, expressly or impliedly agreed to undertake unlawful debt collection efforts and/or violations of the Washington State Consumer Protection Act and/or the Washington Collection Agency Act including but not limited to the engagement and retention of TSI to service as a servicer when each knows TSI is not licensed to conduct such work in the State of Washington.

The Defendants, and each of them, have taken at least one overt wrongful act in furtherance of the said conspiracy. U.S. Bank agreed to be the Special Servicer of the Trusts and to be responsible for collection of debts allegedly owed to the Trusts. As part of accepting that role as Special Servicer, it has authorized and directed the other Defendants, TSI and P&F, to take actions on behalf of the Trusts to collect debts. The delegation of the performance of those duties to others by U.S. Bank does not relieve it of the responsibility, contractually and legally, for any collection actions taken on behalf of the Trusts which by its actions has ratified the unfair, deceptive, and abusive conduct.

130.    The Defendants are jointly and severally liable for the wrongful acts of the others in furtherance of the said conspiracy.

HENRY & DEGRAAFF, P.S.
113 CHERRY ST, PMB
SEATTLE, WASHINGTON  98104-2205
telephone (206) 330-0595
fax (206) 400-7609

**B.      Count II: Violations of The Washington Collection Agency Act on Behalf Of The Named Plaintiff And The Washington Class Against TSI and P&F.**

131.    Plaintiff incorporates all preceding paragraphs as if set forth fully herein and assert this claim on their behalf and on behalf of the Washington Class members against the Defendants TSI and P&F.

132.    Transworld and P&F have engaged in acts prohibited by the Washington Collection Agency Act, as more particularly set forth above.

133.    These Defendants have also improperly collected interest and fees from alleged borrowers following the commission, by one or more of them, or their agents, of acts prohibited by RCW 19.16 .250, in violation of RCW 19.16.450.

134.    All violations of the CAA by these Defendants also constitute violations of the CPA, RCW 19.86, pursuant to RCW 19.16.440.

135.    TSI has also engaged in the servicing of student loans without obtaining a proper license for some or all of the class period through the filing of this amended pleading.

**C.      Count III: Claim Against All Defendants: Violation of The Washington State Consumer Protection Act on Behalf of The Washington Class**

136.    Plaintiff incorporates all preceding paragraphs as if set forth fully herein and assert this claim on their behalf and on behalf of the Washington Class members against each of the Defendants.

137.    As described herein, Defendants have engaged in unfair and deceptive business practices in violation of RCW 19.86.

138.    Such practices are likely to be repeated further, as illustrated by, among other things, similar conduct toward hundreds of other alleged debtors in Washington.

139.    Such practices are likely to be repeated further, as illustrated by, among other things, the filing of this lawsuit after entry of the final and not appealed Transworld Consent Order by the CFPB and other government actions against the Trusts' collectors.

HENRY & DEGRAAFF, P.S.
113 CHERRY ST, PMB
SEATTLE, WASHINGTON  98104-2205
telephone (206) 330-0595
fax (206) 400-7609

140.    Such conduct has damaged the Plaintiff by without limitation, making him unable to manage his finances and causing him to incur out of pocket expenses to determine his legal rights and responsibilities which caused loss of time away from his business.

141.    Such conduct constitutes an unacceptable risk to and/or damages the public interest.

142.    Such conduct should be enjoined as authorized by RCW 19.86.

143.    In additional to damages, Plaintiff and the Class are entitled to recover treble damages to the extent provided by statute together with reasonable attorney's fees and reasonable non-taxable costs and taxable costs.

**D.    Count IV: Per Se Violation of Washington's Consumer Protection Act due to a Per Se Violation of The Fair Debt Collection Practices Act on Behalf of The Washington Class Against TSI and P&F**

144.    Plaintiff incorporates all preceding paragraphs as if set forth fully herein and assert this claim on their behalf and on behalf of the Washington Class members against the Defendants, TSI and P&F.

145.    In RCW 19.86.020, the CPA provides that "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

146.    A CPA claim consists of the following elements: (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; and (5) causation.

147.    Violations of the FDCPA are *per se* violations of the CPA.

148.    Defendants' conduct violates the FDCPA through the following conduct as follows:

    a.    TSI and P&F each use any instrumentality of interstate commerce or the mails in a business, the principal purpose of which is the collection of any debts, or regularly collects or attempts to collect, directly or indirectly, debts owed or due or

asserted to be owed or due another. TSI and P&F are Debt Collectors within the meaning of 15 U.S.C. § 1692a(6).

   b.   By communicating with the Plaintiff and the class members, directly and indirectly, and threatening and/or actually pursuing litigation and demanding sums not legally due from the Plaintiff and the class members. TSI and P&F used false, deceptive, or misleading representations or means in connection with the collection of the consumer debts of the Named Plaintiff and the Class members in violation of 15 U.S.C. § 1692e, 1692e(2), 1692e(5) and 1692e(10).

   c.   TSI's and P&F's actions and omissions described herein in relation to their knowledge of the Trust's inaccurate and incomplete records which are not sufficient to pursue debt collection actions also constitute unfair or unconscionable means to collect or attempt to collect from the Named Plaintiff and the Class Members in violation of 15 U.S.C. § 1692f.

   d.   TSI's actions and omissions as a collector and also an unlicensed student loan servicer for periods of time governed by this action through the filing of this pleading also violates 15 U.S.C. § 1692e, § 1692f in light of the other conduct unfair, deceptive, and abusive conduct descried herein.

   e.   Named Plaintiff and the Class members have suffered actual economic and non-economic damages, as more fully described *supra,* and have incurred out of pocket expenses to determine to determine his legal rights and responsibilities which caused loss of time away from his business and made it impossible to manage their finances due to TSI's and P&F's illegal debt collection practices and direct and indirect actions described herein.

149.   The FDCPA violations are per se violations of the CPA. Defendant TSI and P&Fs' unfair and deceptive acts and practices repeatedly occurred in their trade and commerce, were capable of deceiving a substantial portion of the public, and have already injured many hundreds, if not thousands, of Washington residents.

AMENDED COMPLAINT - 33

HENRY & DeGRAAFF, P.S.
113 CHERRY ST, PMB
SEATTLE, WASHINGTON  98104-2205
telephone (206) 330-0595
fax (206) 400-7609

150.     Defendants TSI and P&Fs' wrongdoing is continuing in nature and represents an ongoing threat to Plaintiff and Class members.

151.     Class members generally are unaware that Defendants TSI and P&Fs' collection practices are unlawful, and that Defendants TSI and P&Fs are using false statement, affidavits and altered documents to obtain judgments or coerce payments on debts they are collecting.

152.     Plaintiff and Class members will suffer continuing, immediate, and irreparable injury absent the issuance of injunctive and equitable relief.

153.     Plaintiff and Class members do not individually have a complete, speedy, and adequate remedy at law with respect to Defendants TSI and P&Fs' continuing misconduct.

154.     Preliminary and injunctive relief is necessary to prevent further injury to Plaintiff and Class members.

155.     Defendants TSI and P&Fs' conduct in violation of the CPA has proximately caused and continues to cause injury to Plaintiff and Class members in their business or property.

156.     Plaintiff and Class members are entitled to recover compensatory, special, and general damages as allowed by law.

157.     Plaintiff and the Class are entitled to recover treble damages, attorneys' fees, and costs pursuant to RCW 19.86.090.

### E.      Count V: Injunctive Relief

158.     A party may seek injunctive relief for violations of the Consumer Protection Act. RCW 19.86.090.

159.     Plaintiff and Class members seek injunctive relief from this Court which would enjoin Defendant Trusts, TSI, P&F and Trustees Wilmington Trust and U.S. Bank in its capacity as Special Servicer for the Trusts, from collecting debts in the manner described above from the Plaintiff and Class members and from any other person similarly situated. *Scott v. Cingular Wireless*, 160 Wn. 2d 843, 853 (2007).

160.     Specifically, Plaintiff and Class members seek an injunction prohibiting Defendants from their unlawful collection tactics, including but not limited to demanding money

AMENDED COMPLAINT - 34

that is not owed, using Washington courts to extort payments and monies out of its residents by disregarding court rules and applicable law, misstating the law in collection lawsuits, providing insufficient or false affidavits, presenting altered documents as originals, and attempting to collect grossly inflated and illegal collection fees.

161.    Plaintiff and Class members have reason to believe these actions make up a pattern and practice of behavior and have impacted other individuals similarly situated.

162.    Injunctive relief is necessary to prevent further injury to Plaintiff and Class members and to the Washington public as a whole.

163.    Injunctive relief should therefore issue as described herein.

**F.      Count VI: Invasion of Privacy Against All Defendants on Behalf of the Washington Class.**

164.    Plaintiff incorporates all preceding paragraphs as if set forth fully herein and assert this claim on their behalf and on behalf of the Washington Class members against each of the Defendants.

165.    The Defendants have intruded upon the solitude and seclusion of the Plaintiff and members of the Washington Class.

166.    The Plaintiff and the members of the Washington Class each had a reasonable expectation that their solitude would not be intruded by demand letters and lawsuits by the Defendants and their agents and affiliates acting on their behalf and with their authorization.

167.    The Defendants' intrusion, given their knowledge that they did not have any legitimate legal claims against the Plaintiff and the members of the Washington Class and Defendants actions, would be highly offensive to a reasonable person.

168.    The Plaintiff and the members of the Washington have been damaged by the Defendants' invasion of their privacy, including their right to solitude and seclusion.

169.    The Defendants' intentional, malicious, and recklessly indifferent conduct warrants the imposition of punitive damages.

HENRY & DeGRAAFF, P.S.
113 CHERRY ST, PMB
SEATTLE, WASHINGTON  98104-2205
telephone (206) 330-0595
fax (206) 400-7609

1

## VI.    **REQUEST FOR RELIEF**

2

3      A.      WHEREFORE, the Plaintiff prays for the following relief and judgment in his

favor and the other members of the Class and against the Defendants for Counts I, III, V, and VI

4      of the Complaint and against TSI and P&F for Counts I-VI:

5

6           a.      That the Court certify a Washington Class of persons defined herein as

7      may be modified or amended;

8           b.      That the Court appoint Plaintiff and his counsel to represent the

9      Washington Class certified;

10          c.      That the Plaintiff and Washington Class be awarded actual damages

11     against each of the Defendants, jointly and severally, pursuant to the Washington

12     Consumer Protection Act in an aggregated amount in excess of $75,000.00 for the

13     Plaintiff and class members ;

14          d.      That the Plaintiff and Washington Class be awarded punitive damages in

15     an amount to be determined;

16          e.      That the Plaintiff and the Washington Class be awarded their costs,

17     including attorney fees, pursuant to the Washington Consumer Protection Act;

18          f.      For treble damages, pursuant to RCW 19.86.090, calculated from the

19     damages determined by the court;

20          g.      For injunctive relief pursuant to RCW 19.86.090 as described above; and

21          h.      That the Plaintiff and Washington Class be awarded such other and further

22     relief as may be appropriate and proper.

23

24

25

26

AMENDED COMPLAINT - 36

1

2
 Dated this 22nd of March, 2022.

3
 HENRY & DEGRAAFF, P.S.                    CONSUMER LAW CENTER, LLC

4

5
 By: /s/ Christina L. Henry               By: /s/ Phillip Robinson
 Christina L. Henry, WSBA No. 31273       Phillip Robinson, *Pro Hac Vice*

6
 113 Cherry St, PMB 58364                 8737 Colesville Road, Suite 308
 Seattle, WA 98104                        Silver Spring, MD 20910

7
 Telephone: 206.330.0595                  phillip@marylandconsumer.com
 Facsimile: 206.400.7609

8
 chenry@HDM-legal.com                      *Counsel for Plaintiff*

9
 *Counsel for Plaintiff*

10
 BORISON FIRM, LLC

11

12
 By: /s/ Scott Borison
 Scott Borison, *Pro Hac Vice*

13
 1900 S. Norfolk St., Suite 350
 San Mateo, CA 94403

14
 scott@borisonfirm.com

15
 *Counsel for Plaintiff*

16

17

18

19

20

21

22

23

24

25

26

AMENDED COMPLAINT - 37