1

2

3

4
Hon. David G. Estudillo

5

6
UNITED STATES DISTRICT COURT
7
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

8 | TOMMY BROWN, on their own behalf and

on behalf of other similarly situated persons,
9
No. 2:20-cv-00680-DGE
Plaintiff,
10
DEFENDANT PATENAUDE &
vs.
FELIX, APC'S RULE 12(B)(6)
11
MOTION TO DISMISS
TRANSWORLD SYSTEMS, INC.,
12 | PATENAUDE & FELIX, APC; U.S. BANK,
NOTED FOR HEARING:
NA. NATIONAL COLLEGIATE STUDENT
JUNE 17, 2022
13 | LOAN TRUST 2004-1, NATIONAL
COLLEGIATE STUDENT LOAN TRUST
14 | 2004-2, NATIONAL COLLEGIATE
STUDENT LOAN TRUST 2005-1,
15 | NATIONAL COLLEGIATE STUDENT
LOAN TRUST 2005-2, NATIONAL
16 | COLLEGIATE STUDENT LOAN TRUST
2005-3, NATIONAL COLLEGIATE
17 | STUDENT LOAN TRUST 2006-1,
NATIONAL COLLEGIATE STUDENT
18 | LOAN TRUST 2006-2, NATIONAL
COLLEGIATE STUDENT LOAN TRUST
19 | 2007-1, and NATIONAL COLLEGIATE
STUDENT LOAN TRUST 2007-2,
20
Defendants.
21

22

23

24

25

DEFENDANT PATENAUDE & FELIX, APC'S RULE
12(B)(6) MOTION TO DISMISS - i
2:20-cv-00680-DGE
6940817.doc



701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com

1

2

<u>CONTENTS</u>

I. **INTRODUCTION**.................................................................................................... 1

II. **FACTS** ................................................................................................................... 1
    A.    The Patenaude law firm requests notice of documents on file in King County Superior Court, cause no. 19-2-09402-8. ..................................................................................... 1
    B.    The Patenaude law firm is a law firm that is being sued for bringing lawsuits and filing affidavits provided by TSI on behalf of the Trusts. ...................................................... 1

III. **POINTS AND AUTHORITIES** ............................................................................. 2
    A.    Standard on Rule 12(b)(6). ......................................................................................... 2
    B.    The judicial action privilege bars Brown from suing his adversary's lawyer for actions the Patenaude law firm took in the course of litigation. ............................................... 3
    C.    The Civil Conspiracy claim in "Count 1" fails because a lawyer cannot conspire with a client as a matter of law. ................................................................................................. 5
    D.    Plaintiff's private CPA claims fail under the *Hangman Ridge* test. ............................. 7
        1.    No unfair or deceptive act or practice by the Patenaude law firm. .......................... 7
        2.    For purposes of a private CPA action, the Patenaude law firm's actions did not occur in trade or commerce. ............................................................................................. 12
        3.    The Patenaude law firm reserves on public interest impact. .................................... 14
        4.    Brown was not injured, indeed, he escaped without repaying approximately $200,000 in student loans he had co-signed for. ............................................................. 14
        5.    The Patenaude law firm did not proximately cause injury to Brown. ..................... 15
    E.    Brown's per se CPA claims fail on a variety of grounds provided below.................. 17
        1.    This Court should dismiss the *per se* CPA claim in "Count 2" based on alleged violations of the Collection Agency Act ("CAA")............................................................. 17
        2.    This Court should dismiss the *per se* CPA claim in "Count 4" based on alleged violations of the FDCPA. ............................................................................................... 19
        3.    Per se CPA claims fail when the underlying claims are dismissed.......................... 22
    F.    This Court should dismiss the Injunctive Relief claim in "Count 5." ........................ 22
    G.    This Court should dismiss "Count 6," which alleges invasion of privacy. ................. 23
    H.    Dismissal should be with prejudice, since amendment is futile. ............................... 24

IV. **CONCLUSION**.................................................................................................... 24



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

## I.  INTRODUCTION

Pursuant to Fed.R.Civ.P. 12(b)(6), defendant Patenaude & Felix, APC ("the Patenaude law firm") moves to dismiss all claims alleged against it in the Amended Complaint ("Complaint"), (Dkt 104), filed by Plaintiff Tommy Brown ("Brown").  Dismissal of against the Patenaude law firm should be with prejudice, because amendment of the pleadings is futile.

## II.  FACTS

**A.**      **The Patenaude law firm requests notice of documents on file in King County Superior Court, cause no. 19-2-09402-8.**

In ruling on a Rule 12(b)(6) motion, the Court may consider documents attached to complaint, documents whose contents are alleged in a complaint, but not physically attached, and documents of which the Court may take judicial notice.  *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).  The court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). *See also Marder v. Lopez*, 450 F.3d 445, 453 (9th Cir. 2006); *Schasa v. AmTrust Bank*, No. 11-cv-01108, 2011 WL 13220099, at *2 (C.D. Cal. Aug. 2, 2011) ("a written instrument that contradicts Plaintiff's allegations generally trumps the allegations"). The Patenaude law firm requests notice of documents filed in the underlying case, King County Superior Court, cause no. 19-2-09402-8:  *See* (Dkt 95-1) - (Dkt 95-7); (Dkt 99-1) - (Dkt 99-5).

**B.**      **The Patenaude law firm is a law firm that is being sued for bringing lawsuits and filing affidavits provided by TSI on behalf of the Trusts.**

The Patenaude law firm is a law firm, and Matthew Cheung is a Patenaude law firm lawyer in Washington State.  (Dkt 104 at ¶¶ 40, 41(f), 41(i)).  The Patenaude law firm was retained to bring lawsuits on behalf of National Collegiate Student Loan Trusts (the "Trusts") against Brown.  (*Id*. at ¶ 41).  The Patenaude law firm has allegedly commenced over 1400 lawsuits on behalf of the Trusts, including the lawsuit against Brown.  (*Id*. at ¶ 41(f)).

LS LEE SMART

701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

"Tommy Brown is the father of Osure Brown, and the cosigner on the loans at issue in this matter."  (Dkt 104 at ¶ 36).[1]  Brown provides boilerplate allegations that the Patenaude law firm is a "debt collector" and "collection agency," but Brown's claims specifically relate to lawsuits filed against him in the consolidated cases under King County Superior Court, cause no. 19-2-09402-8.  (*Id.* at ¶ 75).  In that lawsuit, the Patenaude law firm filed the Affidavit of Bradley Luke on behalf of its clients, the Trusts.  (Dkt 95-2) - (Dkt 95-7).  Brown moved for summary judgment, and the state court dismissed the underlying lawsuit on the ground that the Luke Affidavit contained inadmissible hearsay.  (Dkt 104 at ¶¶ 81, 84, 86). (Dkt 95-1).  The Trusts chose not to appeal the decision.  (Dkt 104 at ¶ 87).  The Patenaude law firm shows below why dismissal was in error, and res judicata does not apply to the Patenaude law firm, which was not a party in the underlying lawsuit.  Brown attempts to create guilt by association in regard to its claims against the Patenaude law firm.  Brown argues that the Patenaude law firm is part of Transworld Systems, Inc.'s ("TSI") attorney network, but this does not mean that TSI possesses or controls the Patenaude law firm, only that TSI retains attorneys in different states to handle its work.  Regardless as to the outcome of the litigation against TSI or the Trusts, the Patenaude law firm cannot be judged based on the alleged actions of its clients, but only on the work that it performed regarding the lawsuit against Brown.[2]

### III.  POINTS AND AUTHORITIES

**A.     Standard on Rule 12(b)(6).**

A complaint may be dismissed where it "fails to state a claim upon which relief can be granted."  Fed.R.Civ.P.  12(b)(6).   Only a complaint that states a plausible claim for relief

---

[1] This Court may take judicial notice that it recently dismissed companion claims brought by Osure Brown. *See Brown v. Transworld Sys. Inc.*, No. 2:20-CV-00669-DGE, 2022 WL 617438 (W.D. Wash. Feb. 17, 2022).

[2] Patenaude is not suggesting that TSI or the Trusts did anything wrong; only that claims against Patenaude must stand or fall on their own and cannot be based on actions allegedly taken by its client. *See Clark v. Cap. Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1173 (9th Cir. 2006).

survives a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*, 556 U.S. at 678. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted). "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.*, 556 U.S. at 678–79. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id.*, 556 U.S. at 679 (citing Fed.R.Civ.P. 8(a)(2)) (internal quotation marks and brackets omitted). "[C]onclusory allegations of law and unwarranted inferences will not defeat an otherwise proper motion to dismiss." *Vasquez v. L.A. County*, 487 F.3d 1246, 1249 (9th Cir. 2007).

**B.      The judicial action privilege bars Brown from suing his adversary's lawyer for actions the Patenaude law firm took in the course of litigation.**

Washington's "judicial-action privilege" protects lawyers from being sued for actions that they take during litigation, and this privilege extends immunity for lawyers' actions beyond defamation cases and litigation privilege. *Jeckle v. Crotty,* 120 Wn. App. 374, 385, 85 P.3d 931, 937 (2004). Washington courts have applied the privilege to bar claims of interference with a business relationship, outrage, infliction of emotional distress, civil conspiracy, and statutory claims. *Id.* "Judicial-action privilege" differs from witness immunity and litigation privilege, since the latter protects the testimony of witnesses, whereas the former protects the actions that a lawyer takes during litigation. *Id.*, 120 Wn. App. at 386.

In *Jeckle*, the Court of Appeals affirmed trial court holding that **"attorneys and law firms have absolute immunity from liability for acts arising out of representing their**

---

DEFENDANT PATENAUDE & FELIX, APC'S RULE
12(B)(6) MOTION TO DISMISS - 3
2:20-cv-00680-DGE
6940817.doc

LS LEE SMART

701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**clients.**" *Jeckle*, 120 Wn. App. 374 (emphasis added).   Judges in the Western District of Washington federal court have similarly applied *Jeckle* to bar claims based on litigation action, including CPA claims, holding:

> The Court agrees with the KBM Defendants that at the very least, Plaintiff's claims fail as a matter of law because the KBM Defendants enjoy absolute immunity for their alleged litigation conduct serving as the basis for Plaintiff's claims. Generally, Washington law establishes that an attorney is immune from litigation by an opposing party for actions taken on behalf of a client against that party, under the doctrine of the "judicial action privilege." *Jeckle v. Crotty*, 120 Wn. App. 374, 386, 85 P.3d 931 (2004); *McNeal v. Allen*, 95 Wn.2d 265, 621 P.2d 1285 (1980). This doctrine bars a plaintiff from suing attorneys and law firms for actions undertaken in litigation while "representing their clients." *Id.*

*Block v. Snohomish Cty.*, No. C18-1048-RAJ, 2019 WL 954809, at *5 (W.D. Wash. Feb. 27, 2019), *appeal dismissed*, No. 19-35329, 2019 WL 3297382 (9th Cir. July 9, 2019).   *See also McClain v. 1st Sec. Bank of Washington*, C15-1945 JCC, 2016 WL 8504775, at *5 (W.D. Wash. Apr. 21, 2016) ("McClain's state law claims against Huffington, McKay, and their firm are based on actions they took on behalf of FSBW ... [t]hey are therefore immune from liability for these actions").

As in *Jeckle*, *Block*, and *McClain*, this Court should dismiss state law claims against the Patenaude law firm (including all CPA claims and the invasion of privacy claim) since Brown's claims are based on actions taken by the Patenaude law firm in the course of litigation.

There is some overlap between judicial-action privilege and litigation privilege/witness immunity, but judges generally recognize the privileges are different and therefore apply them seperately.   *See Block*, 2019 WL 954809, at *7 ("the **j**udicial action privilege, litigation privilege, and judicial immunity are all common law immunities").   In a Venn diagram, there is a subset where litigation privilege intersects with judicial-action privilege, and the specific act could be protected under both doctrines, but in the vast majority of cases, there is no intersection.   A Venn diagram might look something like the following.

LS
LEE SMART

1

2

3

4

5

6

7

8

9

10

11

12

13

14



15    As this Court stated in Osure Brown's companion case: "The Trusts hired Defendant

16 Patenaude & Felix ("Patenaude"), a law firm specializing in debt collection, to represent them

17 in the courts." *Brown*, 2022 WL 617438, at *1.  Commencing lawsuits and submitting client

18 affidavits in litigation, as the Patenaude law firm did, is a quintessential activity protected by

19 judicial-action privilege.  Brown's CPA claims, both private and per se, are barred by judicial-

20 action privilege, as are the claim for civil conspiracy and invasion of privacy.

**C.    The Civil Conspiracy claim in "Count 1" fails because a lawyer cannot conspire with a client as a matter of law.**

21

22    A civil conspiracy exists where "two or more persons combine to accomplish an

23 unlawful purpose or combine to accomplish some purpose not in itself unlawful by unlawful

24 means." *Corbit v. J. I. Case Co.*, 70 Wn.2d 522, 528, 424 P.2d 290, 295 (1967).  Where an

25

LEE SMART

701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21

agent acts within the scope of agency, its acts are considered the acts of the principal; so there can be no conspiracy. *Id.*, n3 (concluding conspiracy cannot exist between parent corporation and a subsidiary). *See also* C.J.S. CONSPIRACY § 20 ("an agent acting within the scope of his or her representation cannot conspire with the principal"). In Washington, "the relation of an attorney to his client is one of agency." *Herman v. Safeco Ins. Co. of Am.*, 104 Wn. App. 783, 788, 17 P.3d 631, 633, n3 (2001) (quoting 7A C.J.S. *Attorney & Client* § 180 at 282 (1980)).

"[T]o hold that a conspiracy can exist between an attorney and his client runs counter to the fundamental notion that attorneys act on behalf of their clients and owe their clients a duty of loyalty" *Johnson v. U.S. Bancorp*, No. 10-0960-RSM, 2011 WL 13193269 at 2 (W.D. Wash. July 15, 2011). "A corporation cannot conspire with its duly recognized agents when they are acting within the scope of their agency." *Johnson v. U.S. Bancorp*, 476 F. App'x 148, 149 (9th Cir. 2012). *See also Linehan v. Allianceone Receivables Mgmt., Inc.*, 2016 WL 1408089, at *3 (W.D. Wash. Apr. 11, 2016) (civil conspiracy cannot lie between lawyer and client); *Crossroads Partners v. Utah Crossing, Ltd.*, 191 F.3d 459 (9th Cir. 1999) (mere desire to nurture business relationship with client and reception of legal fees not sufficient to support conspiracy claim). Most circuit, district, and state courts hold that an attorney and client cannot "conspire" amongst themselves.[3] In "Count 1," Brown alleges civil conspiracy where the Patenaude law firm filed lawsuits on behalf of its clients, the Trusts. Brown's claim for civil conspiracy should be dismissed where filing lawsuits and affidavits within the Patenaude law firm's scope of representing the Trusts in litigation.

22
23
24
25

[3] *See Dykes v. Hosemann*, 743 F.2d 1488, 1504 (11th Cir. 1984), *on reh'g*, 776 F.2d 942 (11th Cir. 1985); *Doherty v. American Motors Corp.*, 728 F.2d 334, 339–40 (6th Cir.1984); *Heffernan v. Hunter*, 189 F.3d 405, 413 (3d Cir. 1999); *Horen v. Bd. of Educ. of Toledo City Sch. Dist.*, 594 F. Supp. 2d 833, 842 (N.D. Ohio 2009); *Evans v. Chichester School District*, 533 F.Supp.2d 523, 529 (E.D.Pa.2008); *Fla. Country Club, Inc. v. Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A.*, 98 F. Supp. 2d 1356, 1365 (M.D. Fla. 2000). In full disclosure, while California generally prohibits civil conspiracy claims against an attorney and his client, it permits a small statutory exception. California Civil Code § 1714.10. There is no similar statute in Washington, so cases relating to that statute are not applicable here.

DEFENDANT PATENAUDE & FELIX, APC'S RULE
12(B)(6) MOTION TO DISMISS - 6
2:20-cv-00680-DGE
6940817.doc

LS LEE SMART

701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com

**D.      Plaintiff's private CPA claims fail under the *Hangman Ridge* test.**

To prevail on a private CPA action, a plaintiff must show: (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation.  *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986).  The finding that any element is not met is fatal to the claim.  *Id.*, 719 P.2d at 539.  A plaintiff may establish the first two elements of a CPA claim by showing a violation of a statute the legislature has identified as a per se CPA violation.  *Id.*, 719 P.2d at 535, 539; RCW 19.86.093(2).  "[T]he Legislature, not this Court, is the appropriate body to establish that interaction by declaring a statutory violation to be a per se unfair trade practice."  *Id.*, 719 P.2d 531, 536 (1986).  Plaintiff alleges a private CPA claim, (Count III), a per se CPA claims based on chapter 19.16, RCW, the Collection Agency Act ("CAA") (Count II),[4] and the Fair Debt Collection Practices Act (Count IV).  The Legislature provided that CAA violations are per se violations of the CPA.  RCW 19.16.440.  This does not appear so for the FDCPA.  In sections below, the Patenaude law firm shows that Brown cannot support a private CPA claim, then addresses why Brown cannot support each claimed per se CPA claim.  Of course, the claims already fail under judicial-action privilege.

**1.      No unfair or deceptive act or practice by the Patenaude law firm.**

**a.      It is not unfair or deceptive for a lawyer to file a lawsuit or submit a client affidavit in litigation.**

The first element of a CPA claim requires an unfair or deceptive act. *Hangman Ridge*, 105 Wn.2d at 780.  Whether a particular act gives rise to a CPA violation is a question of law. *Leingang v. Pierce Cty. Med. Bureau, Inc.*, 131 Wn.2d 133, 150, 930 P.2d 288, 297 (1997).

> It is … the intent of the legislature that this act shall not be construed to prohibit acts or practices which are reasonable in relation to the development and preservation of business or which are not injurious to the public interest, nor be

---

[4] The Patenaude law firm does not concede it is a "collection agency" for purposes of this lawsuit, but will not challenge this allegation solely for purposes of this Rule 12(b)(6) motion.

LS LEE SMART

701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com

1

construed to authorize those acts or practices which unreasonably restrain trade or are unreasonable per se.

2

RCW 19.86.920 (underline added).

3

4

By using the disjunctive "or" in the statute, the Legislature reflected its intent that the

5

CPA not apply to: (1) acts or practices which are reasonable in relation to the development and

6

preservation of business, *or*, (2) when acts are not injurious to the public interest, *or*, (3) when

7

construction of the statute unreasonably restrains trade, *or*, when construction of the statute is

8

unreasonable per se. *See e.g., In re Pac.-Atl. Trading Co.*, 64 F.3d 1292, 1302 (9th Cir. 1995)

9

("[i]n construing a statute, a court should interpret subsections written in the disjunctive as

10

setting out separate and distinct alternatives").  As such, the CPA does not apply where acts or

11

practices are reasonable in relation to the development and preservation of business or

unreasonably restrains trade, even when it is argued that the act somehow injures to the public.

12

13

14

15

16

17

18

> In passing the Consumer Protection Act, the Legislature specifically recognized that acts or practices which are reasonable business practices or which are not injurious to the public are not the kind of acts sought to be prohibited. RCW 19.86.920. This consideration, which is not part of the federal statutory scheme, warrants a narrower interpretation of the words "unfair method of competition" than that given by federal courts. **By expressly allowing for reasonable business practices, our Legislature recognized that a court must weigh the public interest in prohibiting anticompetitive conduct against the recognition that businesses need some latitude within which to conduct their trade.** In acknowledging that the letters written by respondent brokers were motivated by legitimate business concerns, the trial court implicitly acknowledged that the respondents' actions were not the kind of conduct within the scope of RCW 19.86.020.

19

20

21

*State v. Black*, 100 Wn.2d 793, 802–03, 676 P.2d 963, 969 (1984) (emphasis added).  *See also Boeing Co. v. Sierracin Corp.*, 108 Wn.2d 38, 54, 738 P.2d 665 (1987); *Blake v. Fed. Way Cycle Ctr.*, 40 Wn. App. 302, 307–08, 698 P.2d 578, 581 (1985).

22

23

Where conduct is motivated by legitimate business concerns, there is no violation of the CPA. *Black*, 100 Wn.2d at 802–03, 676 P.2d 963.

24

25

The Patenaude law firm is a law firm, and Matthew Cheung is a Patenaude lawyer in Washington State.  (Dkt 104 at ¶¶ 40, 41(f), 41(i)).  The Patenaude law firm was retained to

LS
LEE SMART

701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com

1
2
3
4
5
6
7
8
9
10
11
12
13

bring lawsuits against Brown on behalf of the Trusts.  (*Id*. at ¶ 41).  The Patenaude law firm allegedly commenced over 1400 lawsuits on behalf of the Trusts, including the lawsuit against Brown.  (*Id*. at ¶ 41(f)).  Brown is cosigner on the loans at issue.  (Dkt 104 at ¶ 36).  Brown's claims against the Patenaude law firm specifically relate to lawsuits filed against him in the consolidated cases under King County Superior Court, cause no. 19-2-09402-8.  (*Id*. at ¶ 75).  In that state-court lawsuit, the Patenaude law firm filed the Affidavit of Bradley Luke on behalf of its clients, the Trusts.  (Dkt 95-2) - (Dkt 95-7).  Brown alleges that the Patenaude law firm violated the CPA by filing the lawsuits against him on behalf of his clients the Trusts, and submitting affidavits in these lawsuits.  But filing lawsuits on behalf of a creditor client and submitting affidavits in lawsuits is reasonable in relation to the development and preservation of a law firm.  It would also be an unreasonable restraint of trade and unburden upon the legal profession to prevent a lawyer from filing lawsuits or requiring a lawyer to exhaustively investigate every line of every client affidavit provided by a client before filing it.

14
15
16

        **b.**      **The Patenaude law firm is not bound by the state-court judge's order, and this Court may determine that the state-court judge erred in holding that the Luke affidavit was inadmissible hearsay.**

17
18
19
20
21
22
23
24
25

     Res judicata and collateral estoppel do not bar an attorney from re-litigating issues decided in an underlying action where the attorney was not a party to the earlier litigation, and did not have a "full and fair opportunity" to litigate the issue the first time based on his own interests rather than those of a client.  *Paradise Orchards Gen. P'ship v. Fearing*, 122 Wn. App. 507, 514-15, 94 P.3d 372, 376-77 (2004).  In *Paradise Orchards*, a lawsuit was filed in Benton County Superior Court against a lawyer arising from an adverse decision against the client in an underlying case in Franklin County Superior Court.  *Id*., 94 P.3d at 375.  The Benton County court concluded collateral estoppel did not apply against the attorney from the Franklin County court's ruling, and then dismissed claims against the attorney after concluding

1
2
3
4
5
6
7
8
9

that the Franklin County court had erred.  *Id*.  The Court of Appeals agreed that the Benton County court had a right to find the Franklin County court in error and dismiss claims against the attorney based on its erroneous decision.  *Id*., 94 P.3d at 376-379.  Brown relies on allegations that the Patenaude law firm submitted an affidavit that was stricken by the state court because it contained inadmissible hearsay.  (Dkt 104 at ¶¶ 79-86); (Dkt 95-1).  The Trusts did not appeal dismissal.  (Dkt 104 at ¶ 87).  This Court is not bound by King County Superior Court's erroneous order striking the Luke affidavit as hearsay and dismissing the underlying case for purposes of claims against the Patenaude law firm.  (Dkt 95-1) – (Dkt 95-7).

10

### c.    The district court erred in striking the Luke affidavit and granting summary judgment.

11
12

In Washington superior courts, a party moving for or opposing a motion for summary judgment may support its position with affidavits setting forth admissible evidence.  CR 56(e).

13
14
15
16

> The Uniform Business Records as Evidence Act ("business records act") makes evidence that would otherwise be hearsay competent testimony. Statements made by a "custodian or other qualified witness" in a declaration based on the declarant's review of business records satisfy CR 56(e) if the declaration satisfies the business records act—RCW 5.45.020.22 Reviewing courts broadly interpret "custodian" and "other qualified witness."

17
18

> The statute's purpose is to permit the admission in evidence of systematically entered records made in the usual course of business without the necessity of identifying, locating, and producing as witnesses each individual who made the original entries in the records. No particular mode or record form is required.

19
20
21

*Bavand v. OneWest Bank*, 196 Wash. App. 813, 826, 385 P.3d 233, 240 (2016) (citations, quotation marks, and brackets omitted).  See also *Barkley v. GreenPoint Mortg. Funding. Inc*., 190 Wn. App. 58, 67, 358 P.3d 1204 (2015), *rev. denied*, 184 Wn.2d 1036 (2016).

22
23
24
25

Bradley Luke testified he was Director of Operations for TSI, the Trust's subservicer of student loans at issue, was employed at TSI and its predecessor company NCO, between January 2010 and signing of the affidavit, (Dkt 95-2 at ¶¶ 1-2), and he was authorized by the Trusts and US Bank to make representations in the affidavit. (*Id*. at ¶ 3).  Mr. Luke testified TSI

was the Trusts' designated custodian and maintained records of the loans at issue.  (*Id*. at ¶ 4). Mr. Luke indicated he had training and was familiar with the records and how to review them, (*id*. at ¶¶ 6-8), offered documentary evidence reflecting TSI's role as subservicer for the Trusts, (*id*.), and he was competent to testify regarding Brown's student loans.  (*Id*. at ¶ 5).  Mr. Luke testified that Brown's student loan documents were created, compiled, and recorded as part of regularly conducted business at or near the time of the event, (*id*. at ¶ 9), and ndicated that he had personally reviewed and was familiar with documents related to Brown's 10 student loans. (*Id*. at ¶ 10).  Mr. Luke testified about Brown's loan documents.  (*Id*. at ¶¶ 12-103, Ex. 2-40). Mr. Luke properly signed the affidavit under penalty of perjury.

Mr. Luke showed step-by-step  a written assignment, transferring, selling and assigning each of Brown's loans from the Program Lender Bank of America, NA to the Depositor National Collegiate Funding LLC and then to the Trusts.  (Dkt 95-2 at ¶¶ 14-18, 23-27, 32-36, 41-45, 50-54, 59-63, 68-72, 77-81, 86-90 and 95-99 and Exhibits. 8-9, 12-13, 16-17, 20-21, 24-25, 28-29, 32-33, 36-37 and 40-41, Pool Supplements with excerpts of applicable Schedules for Brown's Loans and Deposit and Sale Agreements). Each excerpt to the Pool Supplements shows Brown's loans were included in the applicable pool as the information in each Schedule includes the last four of Brown's SSN, identifies each loan by either sequence number or loan ID number, and includes disbursement dates, amounts and other information that clearly matches the identifying information in the Agreement and Note Disclosure Statement.

The superior court judge in the underlying lawsuit held:

> [T]he affidavit of Bradley Luke in Support of Response to Defendant's Motion for Summary Judgment (Dkt No. 32) is hearsay and inadmissible under RCW 5.45.020 because Mr. Luke does not have the ability to testify about the documents being business records since he is not employed at the entity that has custody and possession of the records … .

(Dkt 95-1 at 3-4).

This was an error, since Mr. Luke testified he was employed at TSI, which was the records custodian, and even if this were not so, he was not required to be an employee of the Trusts to be a corporate representative. *Bavand*, 385 P.3d at 242. ("Kevin Flannigan declared under penalty of perjury that he is a senior loan analyst for Ocwen Financial Corporation, which services Bavand's loan. Like the two other documents that Bavand challenges, this affidavit fully complies with the requirements of the business records act"). The affidavit should have at least raised a fact issue precluding summary judgment. This Court should not hold that the Patenaude law firm committed an unfair or deceptive act or practice by filing Mr. Luke's affidavit since, by all reasonable accounts, the affidavit supported the proposition that the Trusts owned Brown's student loan and Brown was noncompliant in paying the loans.

### 2. For purposes of a private CPA action, the Patenaude law firm's actions did not occur in trade or commerce.

For the second element of the *Hangman Ridge* test, a plaintiff must show acts occurring in trade or commerce. "Trade" and "commerce" are defined as the "sale of assets or services, and any commerce directly or indirectly affecting the people of the state of Washington." RCW 19.86.010(2). While "trade" includes the "sale of assets or services," the statute does not further define "commerce," but it has been defined as "the exchange or buying and selling of commodities especially on a large scale and involving transportation from place to place." *A.W.R. Const., Inc. v. Washington State Dep't of Lab. & Indus.*, 152 Wn. App. 479, 486, 217 P.3d 349, 352 (2009) (quoting Webster's Third New International Dictionary, 456 (1993) (brackets omitted)). What occurred here was neither trade nor commerce.

Claims directed at the competence of and strategy employed by a lawyer are exempt from the CPA. *Michael v. Mosquera-Lacy*, 165 Wn.2d 595, 603, 200 P.3d 695, 699 (2009). Only claims implicating entrepreneurial aspects of a law practice meet the "trade or commerce" element of a CPA claim, so only such claims are actionable under the CPA. *Id.* "In a legal

DEFENDANT PATENAUDE & FELIX, APC'S RULE
12(B)(6) MOTION TO DISMISS - 12
2:20-cv-00680-DGE
6940817.doc

LS LEE SMART

701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com

1
2
practice entrepreneurial aspects include how the price of legal services is determined, billed,

3
and collected and the way a law firm obtains, retains, and dismisses clients." *Id*.  As Judge

4
Coughenour held in regard to a creditor's attorney that brought lawsuits against plaintiffs:

5
> Plaintiffs allege that they challenge Friedman's entrepreneurial practices,
> because "Friedman is a debt collector who brought debt collection cases in
> [King County District Court] for Merchants" and "was able to secure default
> judgments [which] are enforced on a continuing basis by Friedman."
> (Dkt. No. 54 at 14.) This argument does not hold water. **The challenged
> conduct relates squarely to Friedman's representation of his client, as
> opposed to the financial management of his firm.** Thus, Plaintiffs' claims are
> based on conduct that is not actionable under the WCPA.

6
7
8

9
*Linehan v. Allianceone Receivables Mgmt.*, Inc., No. C15-1012-JCC, 2016 WL 5944564, at *3

10
(W.D. Wash. Oct. 13, 2016) (emphasis added).  *See also Anglin v. Merchants Credit Corp.*, No.

11
18-CV-507-BJR, 2020 WL 4000966, at *6 (W.D. Wash. July 15, 2020) (citing cases).

12
Likewise, in *Genschorck v. Suttell & Hammer, P.S.*, 2013 WL 6118678 (E.D. Wash.

13
Nov. 21, 2013), the district court held:

14
> Here Suttell and Filer's blunder in **filing for a garnishment based on a vacated
> judgment implicate a core practice of the law, the filing of pleadings.** It does
> not concern any entrepreneurial aspect of the practice, and therefore does not
> impact trade and commerce as those concepts are used in the WCPA.

15
16

17
*Id*. at *3 (emphasis added).

18
Generally, events occurring solely in litigation do not constitute "trade or commerce."

19
*Blake v. Fed. Way Cycle Ctr.*, 40 Wn. App. 302, 312, 698 P.2d 578, 584 (1985); *Medialdea v.

20
Law Office of Evan L. Loeffler PLLC*, No. C09-55RSL, 2009 WL 1767185, at *8 (W.D. Wash.

21
June 19, 2009).   Merely arguing that a lawyer charged a fee or sought financial benefit is

22
insufficient to implicate the entrepreneurial aspect of the practice, since essentially all lawyers

23
charge for their services.   There must be something more, and there is not here.   Brown's

24
allegations do not relate to the financial management of the the Patenaude law firm law firm,

25
and therefore Brown fails to show the trade or commerce elements of a CPA claim.

DEFENDANT PATENAUDE & FELIX, APC'S RULE
12(B)(6) MOTION TO DISMISS - 13
2:20-cv-00680-DGE
6940817.doc

701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com

LS LEE SMART

### 3. The Patenaude law firm reserves on public interest impact.

The Patenaude law firm does not concede, but rather reserves, its defenses on the public interest impact aspect of the CPA claim.

### 4. Brown was not injured, indeed, he escaped without repaying approximately $200,000 in student loans he had co-signed for.

The fourth element of a private CPA action requires a showing that plaintiff was injured in his "business or property."   A CPA claim, even one based on *per se* claims, fails where proximate cause and/or damages are not shown.  *Paris v. Steinberg & Steinberg*, 828 F. Supp. 2d 1212, 1217 (W.D. Wash. 2011) (citing *Keyes v. Bollinger*, 31 Wn. App. 286, 640 P.2d 1077, 1081 (1982).  Personal injuries, including mental pain and suffering, are not compensable under the CPA.  *Leingang*, 131 Wn.2d at 158.  Injury alleged by Brown include: (1) loss of time away from work to litigate debt collection actions against him; and (2) an inability to manage his finances, causing him to incur out of pocket expenses.  (Dkt 104 at ¶¶ 125, 140, and 148(e)).

In regard to the first claimed injury (i.e., cost of spending time to litigate the underlying lawsuit), costs incurred in defending against a state collection action and prosecuting a CPA counterclaim are insufficient to show injury. *Sign–O–Light, Inc. v. DeLaurenti Florists, Inc.*, 64 Wn. App. 553, 564, 825 P.2d 714 (1992) ("mere involvement in having to defend against Sign's State Case and having to prosecute a CPA counterclaim is insufficient to show injury to her business or property").  "[F]ees and costs incurred in litigating the CPA claim cannot satisfy the injury to business or property element: if plaintiff were not injured prior to bringing suit, he cannot engineer a viable claim through litigation." *Babrauskas v. Paramount Equity Mortg.*, C13–0494RSL, 2013 WL 5743903, at *4 (W.D. Wash. Oct. 23, 2013).

In regard to the second claimed injury, "plaintiffs are not injured in the amount collected when the plaintiff owed the debt even where the debt collector violated state law in doing so." *Moritz v. Daniel N. Gordon, P.C.*, 895 F. Supp. 2d 1097, 1117 (W.D. Wash. 2012)

DEFENDANT PATENAUDE & FELIX, APC'S RULE
12(B)(6) MOTION TO DISMISS - 14
2:20-cv-00680-DGE
6940817.doc

701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com

(citing *Gray v. Suttell & Assocs.*, 2012 WL 1067962, at *6 (E.D. Wash. Mar. 28, 2012)); *Flores v. The Rawlings Co., LLC*, 177 P.3d 341, 358 (Hawaii 2008) (finding that although the defendant's collection activities might have violated state statutes, the plaintiffs were not injured by paying the underlying debt because the debt was valid); *Camacho v. Auto. Club of S. Cal.*, 142 Cal.App.4th 1394, 1405, 48 Cal.Rptr.3d 770 (2006) (finding that the plaintiff could not establish an injury from the allegedly unfair collection practice where he conceded liability and owed the amounts that were collected)).  Brown admits he was cosigner on the loans at issue, (Dkt 104 at ¶ 36), and was not damaged by money he paid toward his obligations. Brown did not even pay his debt but, on an incorrect ruling, escaped his $200,000.00 obligation.  Brown profited immensely from welching on his promises.  The Patenaude law firm did not injure Brown by filing lawsuits and affidavits on behalf of a client.

### 5. The Patenaude law firm did not proximately cause injury to Brown.

To support the fifth element of the *Hangman Ridge* test, there must be a causal link between the deceptive act and plaintiff's injury.  *Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc.*, 162 Wn.2d 59, 83, 170 P.3d 10, 22 (2007).  The first prong of proximate cause is cause in fact.  *Kim v. Budget Rent A Car Sys., Inc.*, 143 Wn.2d 190, 203, 15 P.3d 1283, 1289 (2001).  Cause in fact concerns "but for" causation.  *Id.*  In the context of the CPA, "[a] plaintiff must establish that, but for the defendant's unfair or deceptive practice, the plaintiff would not have suffered an injury."  *Indoor Billboard*, 170 P.3d at 22.  The question of cause in fact is often left to the jury, but if reasonable minds could not differ, this issue may be determined as a matter of law. *Kim*, 15 P.3d at 1289.  "Cause in fact is not established if plaintiff's injury would have occurred without defendant's breach of duty."  *Walker v. Transamerica Title Ins. Co.*, 65 Wn. App. 399, 403, 828 P.2d 621, 623–24 (1992).

DEFENDANT PATENAUDE & FELIX, APC'S RULE
12(B)(6) MOTION TO DISMISS - 15
2:20-cv-00680-DGE
6940817.doc

701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com

1

2       "Legal cause is the second prong of proximate causation and is a question of law for the

3       court." *Kim*, 15 P.3d at 1289 (quotation marks and brackets omitted).

4            Legal causation is a much more fluid concept than cause in fact. It is grounded
        in policy determinations as to how far the consequences of a defendant's acts
5       should extend. The focus in legal causation analysis is on whether, as a matter of
        policy, the connection between the ultimate result and the act of the defendant is
6       too remote or insubstantial to impose liability. This inquiry depends upon mixed
        considerations of logic, common sense, justice, policy, and precedent.

7       *Kim*, 15 P.3d at 1289 (internal quotation marks and brackets omitted).

8            There is neither cause in fact nor legal causation here.  There is no cause in fact because

9       there was no unfair or deceptive act, and because Brown's alleged injuries would have occurred

10      without the Patenaude law firm bringing suit.  Brown admits he did not pay student loans he

11      co-signed on.  If the Patenaude law firm had not collected on his delinquent account, someone

12      else would have, so the "injury" would have occurred without the Patenaude law firm's actions.

13           The majority of Brown's claims are directed at the Trusts and TSI.  He claims that,

14      despite testimony and documentary evidence, (Dkt 95-2) – (Dkt 95-7), these entities could not

15      show ownership of student loan Brown admits he owes.  The connection of the Patenaude law

16      firm is tenuous.   The Patenaude law firm did not sign the TSI Consent Order, was not

17      responsible for maintaining the Trust's documents, and simply filed a lawsuit against Brown

18      based on substantial documents provided by a client reflecting that he owed the debt.

19      Assuming without conceding that Brown's allegation against TSI and the Trusts could be

20      shown, the Patenaude law firm is not liable for its client's actions.  *See Clark v. Cap. Credit &*

21      *Collection Servs., Inc.*, 460 F.3d 1162, 1173 (9th Cir. 2006) ("there is no legal authority for the

22      proposition that an attorney is generally liable for the actions of his client").  As a matter of

23      mixed considerations of logic, common sense, justice, policy, and precedent, it would be

24      improper to find the Patenaude law firm liable because Brown feels the Patenaude law firm's

25      clients engage in unfair or deceptive acts or practices.



1

2          In addition, judicial action may sufficiently disrupt the causal connection between a act

3  and subsequent harm to become a superseding, intervening cause. *Cox v. Dep't of Soc. &*

4  *Health Servs*., 913 F.3d 831, 842 (9th Cir. 2019) (citing *Bishop v. Miche*, 137 Wn.2d 518, 973

5  P.2d 465, 472 (1999)).  Here, the actions of the King County Superior Court in [improperly]

6  dismissing the trust's claims against Brown broke any chain of causation, as Brown did not end

7  up actually paying the loan, but was able to avoid his substantial obligations.

8          **E.      Brown's per se CPA claims fail on a variety of grounds provided below.**

9                 **1.      This Court should dismiss the *per se* CPA claim in "Count 2" based
                         on alleged violations of the Collection Agency Act ("CAA").**

10                       **a.      There is no RCW 19.16.450 claim because there is no finding
                              of a violation and the statute does not act retroactively.**

11         The plain language of RCW 19.16.450 provides prospective relief.  RCW 19.16.450

12  provides that, if violations are found to have occurred, no one may "thereafter" collect amounts

13  other than the principal amount.  There is no provision for disgorgement for past payments

14  made.  For example, if a person pays on a mortgage for 20 years, and then a violation occurs,

15  the prior interest properly paid over the last 20 years is not disgorged, and requiring such would

16  be patently unfair.  There is no finding that the Patenaude law firm violated the CAA, and

17  RCW 19.16.450 does not apply retroactively to form a new claim prior to a finding of any

18  violation, so there is no violation of RCW 19.16.450.  The RCW 19.16.450 claim is moot

19  because the Trusts did not appeal the summary judgment order in the underlying case, and the

20  Patenaude law firm will not be seeking any payment from Brown in the future.

21                       **b.      Brown's claims under RCW 19.16.250, and 15 U.S.C.
                              §§ 1692e(2) and 1692f fail for the same reason.**

22

23         The CAA is Washington's "counterpart to the FDCPA." *Panag v. Farmers Ins. Co. of*

24  *Washington*, 166 Wn.2d 27, 53, 204 P.3d 885, 897 (2009).  Where provisions of the FDCPA

25  differ from those of the CAA, FDCPA authority may not be persuasive.  *Gray v. Suttell &*

LS LEE SMART

701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

*Assocs.*, 181 Wn.2d 329, 336, 334 P.3d 14, 17 (2014).  FDCPA authority may be persuasive when CAA provisions are similar to corresponding FDCPA provisions.  *See Jammeh v. HNN Assocs., LLC*, 2020 WL 3266221, at *9 (W.D. Wash. June 17, 2020) ("[a]lthough there are 'notable differences' between the FDCPA and CAA, courts look to the FDCPA as an aid in interpreting the CAA particularly when, like here, the specific provisions of the two statutes at issue are similar"); *Opico v. Convergent Outsourcing, Inc*., No. C18-1579RSL, 2021 WL 1611505, at *10 (W.D. Wash. Apr. 26, 2021) ("Given the similarity between RCW 19.16.250(21) and § 1692f(1), the Court will interpret the two provisions consistently"); *Walcker v. SN Com., LLC*, No. CV-06-009-RHW, 2006 WL 3192503, at *7 (E.D. Wash. Nov. 2, 2006), *aff'd on other grounds*, 286 F. App'x 455 (9th Cir. 2008) (finding RCW 19.16.250(8) consistent with 15 U.S.C. §§ 1692e, and 1692g and adopting their reasoning).

Brown alleges that the Patenaude law firm violated RCW 19.16.250(21) in that it allegedly "improperly collected interest and fees," (Dkt 1-2 at ¶ 105),[5] and violated 15 U.S.C. §§ 1692e(2) and 1692f by allegedly "demanding sums not legally due." (Dkt 1-2 at ¶ 119(b)). Given the similarity between RCW 19.16.250(21), and §§ 1692e(2), and 1692f(1), the Court should interpret these provisions consistently.  *Opico*, 2021 WL 1611505, at *10.

"Tommy Brown is the … cosigner on the loans at issue in this matter."  (Dkt 1-2 at ¶ 5). The loan documents signed by Brown agree interest will be charged upon default of the loan. (Dkt 95-2 at Exhibit 2, Section I).  *See also Id.*, Exhibits 3, 6, 7, 10, 11, 14, 15, 18, 19, 22, 23, 26, 30, 38.  Brown does not deny that he defaulted on the loan, and his default is consistent with events alleged.  Brown alleges the Patenaude law firm violated the FDCPA and CAA because the Trusts allegedly do not have sufficient documents to support ownership of the loan.

---

[5] Brown does not identify the subsection under which he sues, but it is presumably RCW 19.16.250(21), which indicates that a licensee may not "[c]ollect or attempt to collect in addition to the principal amount of a claim any sum other than ***allowable interest***."  RCW 19.16.250(21) (emphasis added).

DEFENDANT PATENAUDE & FELIX, APC'S RULE
12(B)(6) MOTION TO DISMISS - 18
2:20-cv-00680-DGE
6940817.doc

LS LEE SMART

701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com

But setting aside for a moment that there is sufficient documents, a lawyer does not violate the FDCPA or CAA simply because he loses a case where a court rejects the evidence submitted. And the Patenaude law firm ceased all efforts to bring Brown current on his obligations once Brown prevailed on summary judgment and the Trusts chose not to appeal. As such, this Court should dismiss claims under RCW 19.16.250(21), and 15 U.S.C. §§ 1692e(2) and 1692f.

> **2.**     **This Court should dismiss the *per se* CPA claim in "Count 4" based on alleged violations of the FDCPA.**

>> **a.**     **The letters sent by the Patenaude law firm in 2018 and lawsuits filed by the Patenaude law firm in early 2019 are beyond the statute of limitations.**

An action under the FDCPA must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). "That language unambiguously sets the date of the violation as the event that starts the one-year limitations period." *Rotkiske v. Klemm*, 140 S. Ct. 355, 360, 205 L. Ed. 2d 291 (2019). Since Brown filed this lawsuit on April 6, 2020, (Dkt 1-1),[6] claims based on events occurring prior to April 6, 2019 are barred by the one-year statute of limitations in § 1692k(d). Thus claims based on the following events are time barred:

- In 2018, the Patenaude law firm sent Plaintiff 10 letters. (Dkt 1-1 at ¶¶ 39-40).

- In January 2019, Plaintiff received settlement letters from the Patenaude law firm. (*Id*. at ¶ 41).

- In February 2019, the Patenaude law firm commenced a number of lawsuits against Plaintiff by serving him with the pleadings. (*Id*. at ¶ 42).[7]

In Washington, a lawsuit is commenced by filing or service, RCW 4.28.020, so claims related to commencement of the State Cases are barred based on the February 19, 2019

---

[6] Brown's Complaint is stamped by the state court on the first page as being filed on April 6, 2020. (Dkt 1-1); (Dkt 40). The Complaint was subsequently removed by Defendants to this Court. (Dkt 1).

[7] These lawsuits were subsequently also filed as King County Superior Court, Nos. 19-2-09408-7, 19-2-09402-8, 19-2-0903-6, 19-2-09404-4, 19-2-09405-2, 19-2-09405-2, 19-2-09406-1, 19-2- 09407-9, 19-2-09409-5, 19-2-09410-9, and 19-2-09411-7, and then all consolidated into cause No. 19-2-09402-8. (Dkt 1-1 at ¶ 43).

1
2
3
4
5
6
7
8
9
10
11

commencement of these actions.  (Dkt 1-1 at ¶ 42).  Where FDCPA claims are based on filing

an underlying lawsuit, the statute of limitations often begins to run on the day the lawsuit is

filed because a filing date is easily ascertainable.  *Naas v. Stolman*, 130 F.3d 892, 893 (9th Cir.

1997).  The service date is easily ascertainable because Plaintiff admits it occurred in February

2019.  (Dkt 1-1 at ¶ 42).  The discovery rule does not apply to FDCPA claims and, absent the

availability of an equitable doctrine, § 1692k(d)'s statute of limitations begins to run when the

alleged FDCPA violation occurs. *Rotkiske*, 140 S. Ct. at 359-62.  No equitable doctrine applies

here, so all claims based on the sending of letters and commencement of lawsuits between 2018

and April 6, 2019 are barred by the one-year statute of limitations in § 1692d(k).  Even if the

FDCPA claims were not barred by statute of limitations, they fail for reasons set forth below.

### b.      The Patenaude law firm did not violate § 1692e(5).

12
13
14
15
16
17
18
19
20
21
22
23
24
25

Brown  alleges  a  violation  of  15  U.S.C.  §  1692e(5).   (Dkt 1-1 at  ¶  119(b)-(c)).

Subsection (5) prohibits "[t]he threat to take any action that cannot legally be taken or that is

not intended to be taken." 15 U.S.C. § 1692e(5).  This subsection is "aimed at preventing

empty threats of litigation as a means of scaring the debtor into payment." *Jenkins v. Union

Corp.*, 999 F. Supp. 1120, 1136 (N.D. Ill. 1998).  Taking action is not a "threat to take action,"

as contemplated by § 1692e(5).  *St. John v. Cach, LLC*, 822 F.3d 388, 390–91 (7th Cir. 2016)

(filing lawsuit is not a threat to take action that cannot legally be taken, even if collector does

not intend to take the case through trial); *Vanhuss v. Kohn Law Firm S.C.*, 127 F. Supp. 3d 980,

988 (W.D. Wis. 2015) ("This court agrees ... that extending § 1692e(5) to apply to actions

actually taken conflicts with the statutory text."); *Bravo v. Midland Credit Mgmt., Inc.*, No. 14

C 4510, 2014 WL 6980438, at *3 (N.D. Ill. Dec. 9, 2014) (holding that "§ 1692e(5) prohibits

only the threat of unlawful action, not the unlawful action itself" because "Congress intended

that provision to prohibit only threats, not actions" and that "the weight of authority from

district[ ] courts in this Circuit ... supports this conclusion"), *aff'd*, 812 F.3d 599 (7th Cir.

2016); *Thompson v. Cach, LLC*, No. 14 cv 313, 2014 WL 5420137, at *4 (N.D. Ill. Oct. 24, 2014) ("[T]hreats in and of themselves ... animate § 1692e(5), not what unfolds following the taking of a debt collection action."); *Eul v. Transworld Sys.*, 2017 WL 1178537, at *15 (N.D. Ill. Mar. 30, 2017) (citing cases). Brown alleges the Patenaude law firm violated § 1692e(5) by filing cases and taking action within them, but this was an action, not a threat to take action. Other portions of FDCPA deal with actions, but § 1692e(5) relates only to "threats," and it is presumed Congress intended the difference in language.

### c. Patenaude did not violate §§ 1692e(10).

The FDCPA prohibits the use of false representations or deceptive means to collect or attempt to collect a debt. 15 U.S.C. § 1692e(10). Brown repeatedly claims that TSI employees filed "false" affidavits. But Brown does not indicate that the loans are not his, or documents attached to the affidavits are not true. Brown primarily argues that that the Trusts cannot show that they own the loans, but even if that were true, it does not mean that the Patenaude law firm violated any laws by submitting the Luke affidavit in litigation. If a plaintiff's allegations "are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible. *Twombly*, 550 U.S. at 570. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not shown that the pleader is entitled to relief. *Iqbal*, 129 S.Ct. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)). Brown has not shown that the Patenaude law firm made false representations only that it submitted affidavits in litigation; and while an attorney may review an affidavit, the person that prepares it is the one responsible for its contents. *See United States v. Goodman*, 2012 WL 2525656, at *5 (E.D. Wis. June 29, 2012). Even if the Patenaude law firm submitted affidavits of TSI employees, who may or may not have had personal knowledge as to some of their statements, the Patenaude law firm did not make any false representations.

DEFENDANT PATENAUDE & FELIX, APC'S RULE
12(B)(6) MOTION TO DISMISS - 21
2:20-cv-00680-DGE
6940817.doc

LS LEE SMART

701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com

**3.      Per se CPA claims fail when the underlying claims are dismissed.**

Per se CPA claims fail when the underlying claims upon which they are based are dismissed.  *See also Fidelity Mort. Corp. v. Seattle Times Co*., 131 Wn. App. 462, 128 P.3d 621 (2005) (dismissing CPA claims based on violations of TILA where TILA claims previously dismissed); *Henery v. Robinson*, 67 Wn. App. 277, 834 P.2d 1091 (1992) (finding that plaintiff could not show per se violation of CPA as it could not show a violation of the underlying statute as a matter of law).[8]  When Plaintiff's per se CPA claim is dismissed, the entirety of the CPA claim based on the alleged conduct should be dismissed.

**F.      This Court should dismiss the Injunctive Relief claim in "Count 5."**

"Washington does not recognize a standalone claim for injunctive relief, but rather views an injunction as a form of relief available for some causes of action."  *Veridian Credit Union v. Eddie Bauer, LLC*, 295 F. Supp. 3d 1140, 1151 (W.D. Wash. 2017) (citing *Hockley v. Hargitt*, 82 Wn.2d 337, 510 P.2d 1123, 1132 (1973) (distinguishing between a cause of action based on the CPA and the forms of relief that are potentially available, including damages and an injunction); *Robinson v. Wells Fargo Bank Nat'l Ass'n*, No. C17–0061JLR, 2017 WL 2311662, at *5 (W.D. Wash. May 25, 2017) ("Injunctive relief is available only if [the plaintiff] is entitled to such a remedy on an independent cause of action.").  *See also Ngethpharat v. State Farm Mut. Auto. Ins. Co*., 499 F. Supp. 3d 908, 919 (W.D. Wash. 2020) ("State Farm is correct that an injunction is a remedy for a CPA violation and not a separate cause of action. The Court GRANTS the Motions and Court dismisses Plaintiffs' injunctive relief claims").  Brown's fifth cause of action seeks injunctive relief under RCW 19.86.090.  (Dkt 1-2 at ¶ 27).   As in the authority cited above, this Court should dismiss Brown's fifth cause of action for an injunction. If Brown's CPA claims survives, he may seek to obtain the remedy of an injunction, but if his CPA claim is dismissed, the request for an injunction under RCW 19.86.090 also disappears.

---

[8] Abrogated in part on other grounds by *Klem v. Wash. Mut. Bank*, 176 Wn.2d 771, 295 P.3d 1179 (2013).

LS LEE SMART

701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com

1

**G.      This Court should dismiss "Count 6," which alleges invasion of privacy.**

2

3

4

5

6

7

To prove invasion of privacy because of the defendant's intrusion upon the plaintiff's seclusion, the plaintiff must prove each of the following elements: (1) an intentional intrusion, physically or otherwise, upon the solitude or seclusion of plaintiff, or his private affairs, (2) a legitimate and reasonable expectation of privacy with respect to that matter or affair, (3) an intrusion that is highly offensive to a reasonable person, and (4) damage proximately caused by the defendant's conduct. *Doe v. Gonzaga Univ*., 24 P.3d 390, 399 (Wash. 2001), *overruled on other grounds by Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002). Further, "[t]he intruder must have acted deliberately to achieve the result, with the certain belief that the result would happen." *Fisher v. Dep't of Health*, 106 P.3d 836, 840 (Wash. Ct. App. 2005).

8

9

10

11

12

13

14

*Dawud v. Boeing Co.*, No. C17-1254-JCC, 2018 WL 4735703, at *7 (W.D. Wash. Oct. 2, 2018).  *See also Mark v. Seattle Times*, 96 Wn.2d 473, 497, 635 P.2d 1081, 1094 (1981); *McLenan-Kenny v. Wash. Dep't of Lab. & Indus.*, No. C13-6026 RBL, 2014 WL 1648501, at *3 (W.D. Wash. Apr. 24, 2014); *Daviscourt v. US*, No. C20-720 RSM-MLP, 2020 WL 8273956, at *8 (W.D. Wash. Nov. 10, 2020), *R&R adopted*, 2021 WL 22111 (W.D. Wash. Jan. 4, 2021); *Disnute v. City of Puyallup*, 2012 WL 1237575, at *5 (W.D. Wash. Apr. 12, 2012); *Scheier v. City of Snohomish*, 2008 WL 4812336, at *17 (W.D. Wash. Nov. 4, 2008).

15

16

17

18

19

20

21

22

23

24

25

Brown alleges "invasion of privacy by intrusion upon seclusion."  (Dkt 1-2 at ¶¶ 136-140), on the ground that he "had a reasonable expectation that [his] solitude would not be intruded by demand letters and lawsuits by the Defendants."  (Dkt 1-2 at ¶ 137).  In other words, Brown failed to repay about $200,000.00 in loans he admits he cosigned for, and believes he had an expectation that the lender would never send him letters or bring suit.  One must be entitled to privacy as to the thing allegedly intruded upon.  *Mark*, 96 Wn.2d at 497–98.  Brown had no privacy in regard to his failure to repay loans.  No reasonable person would be highly offended at receiving letters and being hailed into court because he failed to honor his promise to pay $200,000.00.  Indeed, one should expect that they will be sued if they borrow hundreds of thousands of dollars and then fail to re-pay it.  Also, like *Fisher*, it is absurd to assert that The Patenaude law firm deliberately embarked upon a course of conduct guaranteed

LS LEE SMART

701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com

1
2

to result in unlawfully filing affidavits with the intent of causing Brown distress.  As a result, the invasion of privacy claim should also fail.

3
4

**H.     Dismissal should be with prejudice, since amendment is futile.**

5

On a Rule 12(b)(6) motion, the Court can dismiss a plaintiff's claims with prejudice

6

where amendment of the pleadings would be futile.  *Johnson v. Buckley*, 356 F.3d 1067, 1077

7

(9th Cir. 2004).  "Futility alone can justify the denial of a motion to amend." *Id.* (citing *Nunes*

8

*v. Ashcroft*, 348 F.3d 815, 818 (9th Cir.2003)).  Here, amendment of the pleadings would be

9

futile because Brown's claims are barred by such things as judicial action privilege, statute of

10

limitations, the lack of vicarious liability, and lack of proximate cause, and no pleading will

11

change that.  As such, dismissal with prejudice is appropriate.

12

**IV.  CONCLUSION**

13

The Patenaude law firm requests that this Court dismiss all of Brown's claims against

14

the Patenaude law firm and dismiss the Patenaude law firm as a party from this litigation.

15

DATED this 26th day of April, 2022.

16

LEE SMART, P.S., INC.

17

By: /s Marc Rosenberg
        Marc Rosenberg, WSBA No. 31034

18

Of Attorneys for Defendant
Patenaude & Felix, APC

19
20

1800 One Convention Place
701 Pike St.
Seattle, WA 98101-3929
(206) 624-7990
mr@leesmart.com

21
22
23
24
25

DEFENDANT PATENAUDE & FELIX, APC'S RULE
12(B)(6) MOTION TO DISMISS - 24
2:20-cv-00680-DGE
6940817.doc

**CERTIFICATE OF SERVICE**

I hereby certify that on the date provided at the signature below, I electronically filed the preceding document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following individuals:

| | |
|---|---|
| Christina Henry | chenry@hdm-legal.com |
| Phillip Robinson | phillip@marylandconsumer.com |
| Scott C. Borison | scott@borisonfirm.com |
| Bradley St. Angelo | bstangelo@session.legal |
| Bryan C. Shartle | bshartle@sessions.legal |
| Justin Homes | jhomes@sessions.legal |
| Emily Harris | eharris@corrcronin.com |
| Benjamin C. Byers | bbyers@corrcronin.com |
| Albert J. Rota | ajrota@jonesday.com |
| Kristine E. Kruger | kkruger@perkinscoie.com |
| Thomas N. Abbott | tabbott@perkinscoie.com |

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, to the best of my knowledge.

Dated this 26th day of April, 2022 at Seattle, Washington.

LEE SMART, P.S., INC.

By:  /s Marc Rosenberg
    Marc Rosenberg, WSBA No. 31034
    Of Attorneys for Defendant
    Patenaude & Felix, APC

    1800 One Convention Place
    701 Pike St.
    Seattle, WA 98101-3929
    (206) 624-7990
    mr@leesmart.com

LS LEE SMART
701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com