1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

THE HONORABLE DAVID G. ESTUDILLO

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TOMMY BROWN, on his own behalf and
on behalf of other similarly situated
persons,

Plaintiff,

v.

TRANSWORLD SYSTEMS, INC., *et al.*,

Defendants.

No. 2:20-cv-00680-DGE

U.S. BANK NATIONAL ASSOCIATION'S
MOTION TO DISMISS PLAINTIFF'S
AMENDED COMPLAINT UNDER RULE
12(b)(6)

NOTED ON MOTION CALENDAR:

Friday, June 17, 2022

*ORAL ARGUMENT REQUESTED*

U.S. BANK'S MOTION TO DISMISS PLAINTIFF'S
AMENDED COMPLAINT (No. 2:20-cv-00680-DGE)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

# <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ............................................................................................. ii

I.      INTRODUCTION ............................................................................................... 1

II.     FACTUAL BACKGROUND ............................................................................. 2

   A.      The Trusts ................................................................................................. 2

   B.      The Present Dispute ................................................................................. 4

III.    STANDARD OF REVIEW ................................................................................ 5

IV.     LEGAL ARGUMENT ....................................................................................... 6

   A.      Plaintiff's Allegations Are Insufficient to Impose Vicarious Liability on U.S. Bank ... 7

     1.      TSI Acts on Behalf of the Trusts, not U.S. Bank .......................... 8

     2.      Plaintiff Cannot Plead Mutual Consent .................................... 10

     3.      Plaintiff's Allegations Fail to Establish that U.S. Bank has the Requisite Amount of Control Over TSI .................................................. 11

   B.      Plaintiff's Additional, Throw-Away Theories of Liability Also Fail ......................... 15

   C.      Plaintiff's Claim for Civil Conspiracy To Violate the CPA Also Fails Against U.S. Bank ............................................................................................. 17

   D.      Plaintiff's Request for Injunctive Relief Also Fails ................................... 18

V.      CONCLUSION ................................................................................................. 19

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

## TABLE OF AUTHORITIES

Page

CASES

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................ 5, 6, 12

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................................. 5

*Brown v. Transworld Sys. Inc. et al.*,
   No. 2:20-cv-00669-DGE (W.D. Wash. May 4, 2020) ............................................... 5

*CFPB v. Nat'l Collegiate Master Student Tr.*,
   No. 17-1323 (MN), 2020 WL 2915759 (D. Del. May 31, 2020) ............................. 12

*Corbit v. J.I. Case Co.*,
   424 P.2d 290 (Wash. 1967) ..................................................................................... 17

*Env't Transp. of Nevada, LLC v. Mod. Mach. Co. Inc.*,
   2020 WL 1847747 (W.D. Wash. Apr. 13, 2020) ........................................... 10, 11, 14

*Findley v. Am. Home Mortg. Corp.*,
   2010 WL 5169046 (E.D. Cal. Dec. 14, 2010) ........................................................... 5

*Gosse v. Transworld Sys. Inc.*,
   2021 WL 5761733 (M.D. Pa. Jul. 13, 2021) ........................................................... 17

*Jones v. Royal Admin. Servs., Inc.*,
   887 F.3d 443 (9th Cir. 2018) ............................................................................. passim

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) .................................................................................. 6

*Larner v. Torgerson Corp.*,
   613 P.2d 780 (Wash. 1980) ......................................................................... 8, 11, 14

*Luken v. Christensen Grp. Inc.*,
   247 F. Supp. 3d 1158 (W.D. Wash. 2017) ......................................................... 7, 10

U.S. BANK'S MOTION TO DISMISS PLAINTIFF'S
AMENDED COMPLAINT (No. 2:20-cv-00680-DGE) – ii

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

*Marder v. Lopez,*
    450 F.3d 445 (9th Cir. 2006) .............................................................. 3, 6

*Merrill v. Transworld Sys., Inc.,*
    No. 1:20-CV-183, 2020 WL 8474736 (W.D. Mich. Dec. 1, 2020),
    *R&R adopted,* 2021 WL 210715 (W.D. Mich. Jan. 21, 2021) ................................. 12, 13

*Nat'l Collegiate Student Loan Trs. Litig.,*
    251 A.3d 116 (Del. Ch. 2020) ....................................... 2, 9, 12, 13, 16

*Nemykina v. Old Navy, LLC,*
    461 F. Supp. 3d 1054 (W.D. Wash. 2020) ............................................. 6

*Nw. Laborers-Emps. Health & Sec. Tr. Fund v. Philip Morris, Inc.,*
    58 F. Supp. 2d 1211 (W.D. Wash. 1999) ............................................ 18

*Reisinger v. Deutsche Bank Nat'l Tr. Co.,*
    174 Wash. App. 1060 (2013) ...................................................... 11

*Schasa v. AmTrust Bank,*
    2011 WL 13220099 (C.D. Cal. Aug. 2, 2011) ................................... 6, 7, 13

*Sprewell v. Golden State Warriors,*
    266 F.3d 979 (9th Cir. 2001) ............................................. 5, 6, 13, 16

*Stephens v. Omni Ins. Co.,*
    159 P.3d 10 (Wash. Ct. App. 2007), *aff'd sub nom. Panag v. Farmers Ins. Co.
    of Washington,* 204 P.3d 885 (Wash. 2009) ............................... 11, 15, 16

*Sterling Bus. Forms, Inc. v. Thorpe,*
    918 P.2d 531 (Wash. Ct. App. 1996) ............................................. 18

*Transworld Sys., Inc.,*
    Admin. Proc. No. 2017-CFPB-0018 (Sept. 18, 2017) ............................. 16

*Univ. of Wash. v. City of Seattle,*
    399 P.3d 519 (Wash. 2017) ...................................................... 8

*Veridian Credit Union v. Eddie Bauer, LLC,*
    295 F. Supp. 3d 1140 (W.D. Wash. 2017) ......................................... 18

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

*Wasco Prods., Inc. v. Southwall Techs., Inc.*,
  435 F.3d 989 (9th Cir. 2006) .............................................................................. 6, 17

*Wheatley v. W. Cent. Mich. Emp. & Training Consortium, Inc.*,
  341 F. Supp. 3d 753 (W.D. Mich. 2018) ....................................................... 10, 14

*Wilcox v. Basehore*,
  356 P.3d 736 (Wash. Ct. App. 2015), *aff'd*, 389 P.3d 531 (Wash. 2017)................................ 7

*Wilson v. JPMorgan Chase, N.A.*,
  2020 WL 885971 (W.D. Wash. Feb. 24, 2020) .................................................. 17

**RULES**

Fed. R. Civ. P. 9(b) .................................................................................... 5, 12, 16

Fed. R. Civ. P. 12(b)(6)................................................................................. 1, 3

**OTHER AUTHORITIES**

Restatement (Second) of Agency § 220.......................................................... 8, 10

Restatement (Third) of Agency § 1.04........................................................... 9

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1      Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant U.S. Bank

2  National Association ("U.S. Bank"), respectfully moves to dismiss Plaintiff's Amended

3  Complaint (Dkt. # 104).  U.S. Bank also joins in Section III.F. of the Trusts' Motion to Dismiss

4  (addressing Count VI), submitted concurrently with this Motion.

5                                  **I.       INTRODUCTION**

6      Plaintiff Tommy Brown cosigned ten student loans that defaulted because neither the

7  borrower, Osure Brown, nor Tommy Brown paid the amounts owed.  The owners of those loans,

8  several National Collegiate Student Loan Trusts (the "Trusts"), through their Special Subservicer

9  Transworld Systems, Inc. ("TSI") and the law firm Patenaude & Felix ("Patenaude"), attempted

10 to collect on the loans and eventually sued Plaintiff and Osure Brown in state court.  Plaintiff now

11 brings claims against the Trusts, TSI, Patenaude, and U.S. Bank—as Successor Special Servicer

12 for the Trusts[1]—alleging that these collection attempts violated various statutes and invaded his

13 privacy.

14     Putting aside that Plaintiff's claims are baseless, Plaintiff has failed to allege that U.S.

15 Bank should be liable for the collection activities purportedly undertaken by the other entities.

16 Plaintiff's vicarious-liability theory is based on the naked assertion that "TSI is U.S. Bank's

17 agent."  But that allegation lacks any factual support in the complaint and is, in any event,

18 foreclosed by the relevant agreements.  And Plaintiff's conspiracy claim fails before the Court

19 even needs to reach Plaintiff's insufficient vicarious-liability theories.[2]  Thus, Plaintiff has failed

20 to allege that U.S. Bank can be held liable for any supposed violations.  Because the substantive

21 claims against U.S. Bank fail, so too does Plaintiff's request for injunctive relief.

22     Despite receiving various motions to dismiss the original complaint and having the

23 opportunity to remedy the apparent deficiencies, Plaintiff has failed to do so.  In particular, the

24

25      [1] Dkt. # 104 at ¶ 10 (limiting Plaintiff's claims against U.S. Bank to its role as Successor Special Servicer).
       [2] Likewise, Plaintiff's invasion of privacy claim against U.S. Bank fails for the reasons explained
26 in Section III.F. of the Trusts' Motion to Dismiss, in which U.S. Bank joins.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1   Amended Complaint provides no additional facts supporting his conclusory vicarious-liability

2   theories.  The conclusion is simple: Plaintiff is unable to state viable claims against U.S. Bank

3   regarding the collection of Osure Brown's student debt.  All claims against U.S. Bank therefore

4   must be dismissed with prejudice.

5   ## II.   FACTUAL BACKGROUND

6   ### A.   The Trusts.

7   To illustrate why Plaintiff has no claims against U.S. Bank, it is important to examine the

8   contractual relationship between U.S. Bank and the Trusts in this case.  Each of the Trusts is a

9   Delaware Statutory Trust formed for the purpose of acquiring student loans and issuing debt

10   securities through Indentures.  *See* Dkt. # 104 at ¶¶ 42, 66.  As Delaware Statutory Trusts, the

11   Trusts have no officers or directors and act exclusively through limited agents, such as an Owner

12   Trustee, or contractors with specific duties, as set forth in a series of agreements.  *See id.* ¶¶ 59–

13   62, 67.  Wilmington Trust Company is the Owner Trustee for the Defendant Trusts.  *See id.* ¶ 59.

14   Servicers collect amounts due on the loans on behalf of the Trusts.  *See id.* ¶¶ 67–68.  For

15   performing loans, the Trusts retained Pennsylvania Higher Education Assistance Agency

16   ("PHEAA"), also known as American Education Services ("AES").  *See In re Nat'l Collegiate*

17   *Student Loan Trs. Litig.*, 251 A.3d 116, 131 (Del. Ch. 2020).  For delinquent and default loan

18   servicing, known as "Special Servicing" (*i.e.*, the type of servicing relevant to Plaintiff's loan and

19   allegations), the Trusts' Owner Trustee, acting on behalf of the Trusts, entered into a Special

20   Servicing Agreement with First Marblehead Education Resources, Inc. ("FMER") to act as

21   Special Servicer.  *See* Dkt. # 97-1, Special Servicing Agreement ("SSA") § 2.A.[3]  The Special

22

23   [3] References to "Dkt. # 97" are to the Declaration of Kristine E. Kruger and attached Exhibits submitted in support of U.S. Bank's motion to dismiss the original complaint (Dkt. # 96), which for

24   economy have not been re-filed.  The Court may consider these documents at the pleadings stage. Plaintiff's claims against U.S. Bank necessarily rely upon the rights and duties imposed by the relevant agreements.  *See, e.g.*, Dkt. # 104 at ¶¶ 48, 78.  In fact, Plaintiff explicitly refers to the "Special Servicing

25   Agreement." *Id.* ¶ 48.  (The TSI Agreement is attached to and incorporated by reference in the Special Servicing Agreement as Exhibit II to that agreement.)  Thus, the Court may "treat [these] document[s] as

26   'part of the complaint, and thus may assume that [their] contents are true for purposes of a motion to

U.S. BANK'S MOTION TO DISMISS PLAINTIFF'S
AMENDED COMPLAINT (No. 2:20-cv-00680-DGE) – 2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Servicing Agreement appointed U.S. Bank as the "Back-Up Special Servicer" to automatically assume the role of Successor Special Servicer in the event FMER was unable to perform or resigned.  *Id.* § 8.A; *see also* Dkt. # 104 at ¶ 46.  But unlike FMER, as Successor Special Servicer, U.S. Bank assumed *only* the rights, duties, and obligations of the initial Special Servicer "to the extent expressly required to be assumed and performed by the Back-Up Special Servicer under this Agreement."  Dkt. # 97-1, SSA § 8.A.  And under the SSA, U.S. Bank is expressly prohibited from directly undertaking special servicing activities and has no duty to monitor or supervise such activities.  *See id.* § 8.A ("[N]othing in this Agreement shall be construed to require *or permit* the Back-Up Special Servicer (in its capacity as Special Servicer or otherwise) to undertake direct collection or enforcement activities . . . ." (emphasis added); *id.* § 8.D (U.S. Bank is not required to "supervise or monitor the performance" of Servicers or Subservicers and "shall have no liability for the acts or omissions of any such Servicer or Subservicer").  Because of these provisions, FMER simultaneously retained TSI's predecessor-in-interest, NCO Financial Systems Inc. ("NCO"), as Special Subservicer to manage the delinquent and default loan servicing for the Trusts in the event U.S. Bank became Successor Special Servicer.  *See* Dkt. # 97-2, TSI Agreement.  The TSI Agreement was attached as an exhibit and incorporated by reference into the Special Servicing Agreement and consented to by the Trusts through the Owner Trustee.  *See* Dkt. # 97-1, SSA § 8.G (warranting that the TSI Agreement "is in full force and effect" and attached to the SSA as Exhibit II).  The TSI Agreement expressly provides that TSI will act as an "independent contractor[]" for the Trusts.  Dkt. # 97-2, TSI Agreement § 11.4.

When FMER resigned in 2012, U.S. Bank automatically became the Successor Special Servicer and NCO's role as Special Subservicer became operative.  Dkt. # 104 at ¶ 46.  Because U.S. Bank is expressly prohibited from undertaking special servicing activities and because it has no duty to monitor or supervise subservicers, Turnstile Capital Management, LLC ("TCM") was

---

dismiss under Rule 12(b)(6).'"  *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); *see also* Section III, *infra*.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1  engaged as an independent contractor to perform certain special servicing responsibilities on

2  behalf of the Trusts.  In 2014, NCO was succeeded by TSI to manage delinquent and default loan

3  servicing for the Trusts.  *See id.* ¶ 67 (acknowledging that TSI became the "successor in interest

4  to NCO").

5       **B.**     **The Present Dispute.**

6       Between 2003 and 2007, Osure Brown took out the ten student loans at issue, *id.* ¶¶ 36,

7  71–75, which were subsequently transferred to the Trusts.  Plaintiff Tommy Brown cosigned the

8  loans.  *Id.*  When Osure Brown later defaulted on his payment obligations, TSI, on behalf of the

9  Trusts and through Patenaude, attempted to collect on the loans and, when that proved

10  unsuccessful, brought claims against Plaintiff for the amounts owed.  *Id.* ¶¶ 71–75.  Plaintiff now

11  sues the Trusts, U.S. Bank, TSI, and Patenaude, alleging that those collection efforts violated the

12  Washington Consumer Protection Act ("CPA") and were an invasion of his privacy.  Against

13  U.S. Bank, Plaintiff brings claims for civil conspiracy to violate the CPA (Count I), violation of

14  the CPA (Count III), injunctive relief (Count V), and invasion of privacy (Count VI), where at

15  least Counts III and VI appear premised entirely on a vicarious-liability theory.  U.S. Bank moved

16  to dismiss the original complaint, prompting Plaintiff to amend.

17       Plaintiff's amendments to his complaint have not cured its deficiencies.  Plaintiff still

18  acknowledges that the at-issue collection efforts were undertaken by Patenaude and/or TSI on

19  behalf of the Trusts.  *See, e.g., id.* ¶ 71 ("In October 2018, P&F sent ten letters signed by Matthew

20  Cheung . . . ."); *id.* ¶ 75 ("On April 5, 2019, Osure Brown and Tommy Brown were sued by the

21  Trusts, represented by P&F . . . .").  To sue U.S. Bank, then, Plaintiff relies on a vicarious-

22  liability theory.  *See, e.g., id.* ¶¶ 47, 51.  He does so by baldly alleging that TSI is U.S. Bank's

23  agent, quoting from other conclusory (and unproven) allegations in a separate lawsuit brought by

24  holders of equity interests in the Trusts.  *See id.* ¶¶ 48–55, 95–96.  He also baldly suggests that

25  U.S. Bank is responsible for AES's actions, even though AES does not engage in special

26  servicing functions and does not have any agreements with U.S. Bank.  *Id.* at ¶ 47.  Plaintiff also

U.S. BANK'S MOTION TO DISMISS PLAINTIFF'S
AMENDED COMPLAINT (No. 2:20-cv-00680-DGE) – 4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1    alleges, in passing, that U.S. Bank negligently delegated duties to TCM, without explaining how

2    that is legally relevant or any actions allegedly undertaken by TCM.  *Id.*  Finally, Plaintiff throws

3    in the factually unsupported assertion that U.S. Bank "aided and abetted" the alleged violations,

4    relying on a settlement consent order between TSI and the Consumer Financial Protection Bureau

5    ("CFPB") to which U.S. Bank was not a party.  *Id.* ¶¶ 50, 56–58.

6          In the related suit filed by Osure Brown against the same Defendants for collection of the

7    same debts at issue here, Osure Brown raised similar claims for violation of the CPA, *see Brown*

8    *v. Transworld Sys. Inc. et al.*, No. 2:20-cv-00669-DGE (W.D. Wash. May 4, 2020), Dkt. # 5-2,

9    before removing these claims in an amended complaint filed in response to Defendants' motions

10   to dismiss, *see id.*, Dkt. # 56.  Defendants then moved to dismiss the amended complaint, and on

11   February 17, 2022 this Court granted the motions and dismissed the case with prejudice.  *Id.*, Dkt.

12   # 120.

13                         **III.    STANDARD OF REVIEW**

14         To survive a motion to dismiss, a complaint's "[f]actual allegations must be enough to

15   raise a right to relief above the speculative level" and have "enough facts to state a claim to relief

16   that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

17   "[N]aked assertions devoid of further factual enhancement" will not suffice.  *Ashcroft v. Iqbal*,

18   556 U.S. 662, 678 (2009) (internal quotations and brackets omitted).  "Nor is the court required to

19   accept as true allegations that are merely conclusory, unwarranted deductions of fact, or

20   unreasonable inferences."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

21   And, where there are multiple defendants, "it is not enough for the complaint to make general

22   allegations . . . without providing more specificity as to the claims against each defendant."

23   *Findley v. Am. Home Mortg. Corp.*, 2010 WL 5169046, at *3 (E.D. Cal. Dec. 14, 2010).

24         Importantly, to allege CPA claims sounding in fraud—like the ones asserted here (Dkt. #

25   104 at ¶¶ 32, 52, 54, 82, 95)—Plaintiff must satisfy the heightened pleading standard under Fed.

26   R. Civ. P. 9(b).  *See Nemykina v. Old Navy, LLC*, 461 F. Supp. 3d 1054, 1058 (W.D. Wash. 2020)

1    (CPA claims that "sound in fraud . . . must be averred with particularity").  The same goes for any

2    conspiracy claim premised on such CPA claims.  *See Wasco Prods., Inc. v. Southwall Techs.,*

3    *Inc.*, 435 F.3d 989, 990 (9th Cir. 2006) (observing that where "the object of the alleged

4    conspiracy is fraudulent," "Rule 9(b) of the Federal Rules of Civil Procedure requires plaintiffs to

5    plead fraud with particularity.").

6           Additionally, on a motion to dismiss, the court may consider a document not attached to

7    the complaint where the "claim depends on the contents of a document, the defendant attaches the

8    document to its motion to dismiss, and the parties do not dispute the authenticity of the document,

9    even though the plaintiff does not explicitly allege the contents of that document in the

10   complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).  And the court need not

11   "accept as true allegations that contradict matters properly subject to judicial notice or by

12   exhibit." *Sprewell*, 266 F.3d at 988; *see also Schasa v. AmTrust Bank*, 2011 WL 13220099, at *2

13   (C.D. Cal. Aug. 2, 2011) ("[A] written instrument that contradicts Plaintiff's allegations generally

14   trumps the allegations"); *Marder*, 450 F.3d at 453 (affirming dismissal where the plaintiff's

15   "proposed interpretation of [a] Release [agreement] is inconsistent with its terms").

16                          **IV.    LEGAL ARGUMENT**

17          Plaintiff's claims against U.S. Bank hinge on the theory that U.S. Bank is "vicariously

18   liable" for the collection actions taken by TSI or the attorneys TSI hired.  Dkt. # 104 at ¶ 47; *see*

19   *also id.* ¶ 51 ("The doctrine of respondeat superior applies to U.S. Bank . . . .").  To support this

20   theory, Plaintiff baldly states that "TSI is an agent of U.S. Bank." *Id.* ¶ 48; *see also id.* ¶¶ 13, 39.

21   Plaintiff also suggests that U.S. Bank is responsible for AES's servicing, without any allegations

22   concerning a purported agency relationship. *See* Dkt. # 104 at ¶ 47.  But these "naked

23   assertion[s]" are "devoid of further factual enhancement," *Iqbal*, 556 U.S. at 678, and therefore

24   cannot nudge Plaintiff past the pleadings stage.  Not only that, Plaintiff's contentions are

25   definitively foreclosed by the Trusts' governing agreements. *See Schasa*, 2011 WL 13220099, at

26   *2 ("written instrument . . . trumps the allegations").

U.S. BANK'S MOTION TO DISMISS PLAINTIFF'S
AMENDED COMPLAINT (No. 2:20-cv-00680-DGE) – 6

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1    Specifically, those agreements (as well as Plaintiff's own allegations[4]) make clear that TSI

2    acts on behalf of *the Trusts*, not U.S. Bank, which precludes any agency-type relationship

3    between TSI and U.S. Bank.  Regardless, Plaintiff has not alleged any facts to show that U.S.

4    Bank consented to have TSI act as its agent or that U.S. Bank exercised the amount of control

5    over TSI necessary to impose vicarious liability.  And again, even if he had so alleged, the

6    contracts themselves dispose of that notion—they reveal that TSI at most acted as an independent

7    contractor *on behalf of the Trusts*.  Finally, Plaintiff's throw-away theories relating to negligent

8    delegation and aiding-and-abetting are equally deficient because they lack support from any

9    factual allegations in the complaint and because they are nonetheless foreclosed by the governing

10   contracts.  Accordingly, all claims against U.S. Bank must be dismissed.

11        A.    **Plaintiff's Allegations Are Insufficient to Impose Vicarious Liability on U.S.
12              Bank.**

13   "In determining whether vicarious liability may be imposed," courts ask whether an

14   alleged principal "has enough authority to control the actions of its agent such that the principal

15   may be held vicariously liable to the same extent as an employer may be held liable for the

16   conduct of its employee," *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 450 (9th Cir. 2018),

17   or—on the other hand—whether the agent functions more as an "independent contractor," *Wilcox

18   v. Basehore*, 356 P.3d 736, 753 (Wash. Ct. App. 2015) ("[A] principal is not liable for the torts of

19   the independent contractors."), *aff'd*, 389 P.3d 531 (Wash. 2017).

20        To prove an agency relationship, a plaintiff must show "mutual consent" whereby "the

21   parties agreed" that one would be the agent acting on behalf of the other as principal.  *Luken v.

22   Christensen Grp. Inc.*, 247 F. Supp. 3d 1158, 1163 (W.D. Wash. 2017) (dismissing claim for

23   failure to allege required elements of mutual consent and control).  Washington courts look to the

24   common law factors listed in the Restatement, which include, among others: whether or not the

25

26        [4] *See, e.g.*, Dkt. # 104 at ¶ 80 ("Exhibit A was a notice from U.S. Bank . . . confirming TSI['s] role
     as the trusts' subservicer.").

U.S. BANK'S MOTION TO DISMISS PLAINTIFF'S
AMENDED COMPLAINT (No. 2:20-cv-00680-DGE) – 7

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1   parties "believe they are creating the relation of master and servant"; "the extent of control which,

2   by the agreement, the [alleged principal] may exercise over the details of the work"; whether the

3   alleged principal "supplies the instrumentalities, tools, and the place of work for the person doing

4   the work"; the "method of payment, whether by the time or by the job"; and whether the one

5   employed is engaged in a "distinct occupation or business."  Restatement (Second) of Agency

6   § 220; *see also Larner v. Torgerson Corp.*, 613 P.2d 780, 782 (Wash. 1980) (citing Restatement

7   (Second) of Agency § 220)); *Jones*, 887 F.3d at 450 (same).  When the facts are not susceptible to

8   more than one interpretation, the inquiry is "essentially a question of law."  *Larner*, 613 P.2d at

9   782.

10              **1.       TSI Acts on Behalf of the Trusts, not U.S. Bank.**

11              As a threshold issue, Plaintiff's claim that TSI acts as U.S. Bank's agent fails for a very

12   basic reason—the contracts and Plaintiff's own allegations make clear that TSI acts "on behalf

13   of" the Trusts rather than on behalf of U.S. Bank.  *See Jones*, 887 F.3d at 448 ("Agency is the

14   fiduciary relationship that arises when one person (a 'principal') manifests assent to another

15   person (an 'agent') that the agent shall act *on the principal's behalf*" (emphasis added) (quoting

16   the Restatement (Third) of Agency § 1.01)); *see also Univ. of Wash. v. City of Seattle*, 399 P.3d

17   519, 526 (Wash. 2017) (citing Restatement (Third) of Agency § 1.01)).  The Special Servicing

18   Agreement directs the Special Servicer[5] to "retain[] and enter[] into agreements with licensed

19   collection agencies and other legally authorized persons (the 'Subservicers') . . . pursuant to

20   which the Subservicers, *for and on behalf of the applicable Trust*, will contact borrowers."  Dkt. #

21   97-1, SSA § 2.B(i) (emphasis added); *see also, e.g., id.* § 2.B(viii) (Special Servicer will "refer

22   the loan for collection by a Subservicer *on behalf of such Trust*" (emphasis added)).

23

24

25

26          [5] To be clear, it was FMER (with the consent of the Trusts)—and not U.S. Bank—that retained
     NCO/TSI pursuant to the TSI Agreement.  *See* Section II.A, *supra*.

U.S. BANK'S MOTION TO DISMISS PLAINTIFF'S
AMENDED COMPLAINT (No. 2:20-cv-00680-DGE) – 8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1       Plaintiff concedes this, as he alleges: "At all times relevant to this Complaint, TSI has

2  acted as the debt collector *on behalf of the Trusts* and the Trusts, through its Trustees,[6] expressly

3  authorized TSI to carry out all work that it has done *on their behalf*." Dkt. # 104 at ¶ 60

4  (emphases added); *see also, e.g.*, *id.* ¶¶ 39(c), 41(c), 75, 80, 92.  Plaintiff says the same about

5  Patenaude, the law firm that filed the collection suits.  *See id.* ¶ 41 ("P&F seeks to collect

6  defaulted consumer debts *on behalf of* the NCSLT Trusts through litigation and the mails."

7  (emphasis added)); *see also id.* ¶ 41(c).  Indeed, he admits that the at-issue collection activity was

8  undertaken on behalf of the Trusts, not on behalf of U.S. Bank.  *See, e.g.*, *id.* ¶ 75 ("On April 5,

9  2019, Osure Brown and Tommy Brown were sued by the Trusts, represented by P&F . . . .").

10       Thus, both TSI and U.S. Bank act on behalf of *the Trusts* (as independent contractors).

11  *See* Dkt. # 97-1, SSA § 17; Dkt. # 97-2, TSI Agreement § 11.4.  Even if U.S. Bank and TSI both

12  acted as agents of the Trusts (which they do not), they would at most be considered "coagents,"

13  and so "neither is vicariously liable for wrongs committed by the other."  Restatement (Third) of

14  Agency § 1.04 cmt. a; *see also id.* cmt. i ("A superior coagent's right to direct a subordinate

15  coagent does not itself create a relationship of agency between them.").[7]  This alone precludes

16  Plaintiff's theory of vicarious liability.

---

[6] U.S. Bank acts as the Indenture Trustee for indenture trusts pursuant to which the Defendant Trusts are debtors and entered into to raise money from investors to acquire student loans.  *See* Dkt. # 104 at ¶¶ 10, 42.  U.S. Bank is not the trustee *of the Defendant Trusts*. *See In re Nat'l Collegiate Student Loan Trs. Litig.*, 251 A.3d at 138–39, 157–58.  And as the Delaware Chancery Court has found, U.S. Bank, as Indenture Trustee, is *not* responsible for the Defendant Trusts' servicing activities; those are the obligations of the Trusts and the entities it has contracted with.  *See id.*  Further, Plaintiff explicitly states that his claims in this action are asserted against U.S. Bank solely in its role as Successor Special Servicer. Dkt. # 104 at ¶ 10.

[7] Given that U.S. Bank is prohibited from itself undertaking special servicing activities, *see* Dkt. # 97-1, SSA § 8.A,  TSI could not, in any scenario, be considered a "subagent" of U.S. Bank.  *See* Restatement (Third) of Agency § 1.04 (distinguishing between "coagents" and "subagents" and explaining that "[a] subagent is a person appointed by an agent to perform functions that *the agent has consented to perform on behalf of the agent's principal*" (emphasis added)).

U.S. BANK'S MOTION TO DISMISS PLAINTIFF'S
AMENDED COMPLAINT (No. 2:20-cv-00680-DGE) – 9

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1

## 2.  Plaintiff Cannot Plead Mutual Consent.

2  Plaintiff also cannot allege the requisite "mutual consent" whereby "[TSI] or its officers

3  agreed to be [U.S. Bank's] agent, or that [U.S. Bank] agreed to be [TSI's] principal." *Luken*, 247

4  F. Supp. 3d at 1163; *see also* Restatement (Second) of Agency § 220(2)(i) (listing one factor as

5  "whether or not the parties believe they are creating the relation of master and servant"); *Jones*,

6  887 F.3d at 450 (one factor is the "subjective intent of the parties").  In determining the nature of

7  a relationship for purposes of vicarious liability, courts look to the express agreements creating

8  that relationship.  *See, e.g.*, *Env't Transp. of Nevada, LLC v. Mod. Mach. Co. Inc.*, 2020 WL

9  1847747, at *5 (W.D. Wash. Apr. 13, 2020) (looking to the terms of the relevant agreement to

10  determine whether there was an "agency relationship under Washington law").

11  Plaintiff does not even attempt to plead that U.S. Bank and TSI mutually consented to an

12  agency relationship.  Nor can he.  As explained above, the relevant agreements are clear that TSI

13  acts on behalf of the Trusts, not U.S. Bank.  Equally explicit is the fact that all parties act as

14  "independent contractors."  Dkt. # 97-2, TSI Agreement § 11.4.  The Special Servicing

15  Agreement additionally provides that U.S. Bank "shall have no liability for the acts or omissions

16  of any . . . Subservicer in performing its obligations under the [TSI Agreement]," and U.S. Bank

17  shall not be required to "supervise or monitor the performance of such Servicers or Subservicers."

18  Dkt. # 97-1, SSA § 8.D.  These agreements provide "extremely probative evidence that the parties

19  intended for [TSI] to work as an independent contractor."  *Wheatley v. W. Cent. Mich. Emp. &*

20  *Training Consortium, Inc.*, 341 F. Supp. 3d 753, 765 (W.D. Mich. 2018) (applying "common law

21  agency test"); *see also Env't Transp.*, 2020 WL 1847747, at *5 (holding that, "[b]ased on the

22  terms of the [relevant] Agreement itself" an "agency claim fail[ed] as a matter of law").  Plaintiff

23  thus has failed to plead the necessary element of mutual consent.

24

25

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1

### 3. Plaintiff's Allegations Fail to Establish that U.S. Bank has the Requisite Amount of Control Over TSI.

2

3       Independently dooming his claim is Plaintiff's failure to allege that U.S. Bank exercises

4 the requisite amount of control over TSI's collection efforts so as to be held vicariously liable.

5 "The requisite control does not exist where the asserted principal's only authority is to supervise

6 whether the agent's performance conforms to a contract." *Env't Transp.*, 2020 WL 1847747, at

7 *4. Additionally, the fact that an agreement "allows some measure of oversight" is insufficient.

8 *Id.* at *5; *see also Jones*, 887 F.3d at 451 (that the principal "exercised some amount of control"

9 was insufficient to impose vicarious liability). Rather, the alleged principal must control the

10 "details of the work." *Larner*, 613 P.2d at 782; *see also Env't Transp.*, 2020 WL 1847747, at *5

11 (explaining that vicarious liability "arises only where one engaging another to achieve a result

12 controls or has the right to control *the details* of the latter's" work (emphasis added)).

13       Indeed, in the debt-collection context, the alleged principal must have the right to control

14 the "manner, method, and means" of the collection efforts *at issue. See Reisinger v. Deutsche*

15 *Bank Nat'l Tr. Co.*, 174 Wash. App. 1060, at *1, 5 (2013) (where Deutsche Bank "authorized

16 American Home Mortgage Servicing Inc. (AHMSI) to act as its servicing agent" and AHMSI

17 allegedly "refused to negotiate a loan modification in good faith," there was no vicarious liability

18 because the plaintiff had not shown that Deutsche Bank had the "right to control AHMSI's loan

19 modification negotiations with the [plaintiffs]"); *Stephens v. Omni Ins. Co.*, 159 P.3d 10, 15, 27

20 (Wash. Ct. App. 2007) (where Omni "arranged to have its subrogation claim pursued by Credit

21 Control Services, Inc." there was no vicarious liability because the plaintiff had not shown that

22 "Omni controlled any aspect of [the at-issue] notices sent by Credit"), *aff'd sub nom. Panag v.*

23 *Farmers Ins. Co. of Washington*, 204 P.3d 885 (Wash. 2009).

24

25

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1          Here, Plaintiff offers the naked assertion that "TSI is an agent of U.S. Bank," Dkt. # 104

2    at ¶ 48,[8] without providing any "further factual enhancement," *Iqbal*, 556 U.S. at 678; *see also*

3    *Merrill v. Transworld Sys., Inc.*, No. 1:20-CV-183, 2020 WL 8474736, at \*7 (W.D. Mich. Dec. 1,

4    2020) ("*Merrill R&R*") ("Thus, contrary to Plaintiff's allegation, the Trusts specifically

5    authorized TSI to file lawsuits to collect the student loans."). That, of course, is insufficient.

6    *Iqbal*, 556 U.S. at 678; *see also* Fed. R. Civ. P. 9(b).

7          Plaintiff also baldly alleges that U.S. Bank "had the duty to properly supervise and control

8    the activities of [TCM], AES, TSI, P&F, [and] TSI's Attorney Network." Dkt. # 104 at ¶ 47. But

9    this allegation is firmly rebutted by the relevant agreements and prior court decisions. First,

10   Plaintiff does not allege any factual basis for a relationship between U.S. Bank and AES and

11   indeed cannot: As the Delaware Chancery Court has previously explained, the Trusts—*not* U.S.

12   Bank—hired AES. *See In re Nat'l Collegiate Student Loan Trs. Litig.*, 251 A.3d at 131 ("The

13   Administrator, in turn, entered into certain Servicing Agreements . . . . In the applicable Servicing

14   Agreement, PHEAA [d/b/a AES] agreed to collect proceeds from certain Student Loans *on behalf*

15   *of the Trusts*." (emphasis added)). Further, the Special Servicing Agreement, to which U.S. Bank

16   is a party, covers only delinquent or defaulted loans—which are not serviced by AES. Nor does

17   Plaintiff allege any specifics concerning a relationship between U.S. Bank and TCM or any

18   allegations at all concerning TCM's purported actions. *See* Section II.A, *supra*. Second, Plaintiff

19   fails to identify the source of any such duty to monitor or supervise, as it certainly *does not* stem

20   from the relevant agreements. *See, e.g.*, Dkt. # 97-1, SSA § 8.D (U.S. Bank is not required to

21

22        [8] This conclusory allegation is pasted from a "verified amended complaint" filed by the Trust's "residual" owners in the Chancery Court of Delaware, *see* Dkt. # 104 at ¶¶ 48–53. On May 31, 2020, the

23   District of Delaware, in another case, held that the Trust's owners have no authority to act in the Trust's name without directing the Trust's Owner Trustee. *See CFPB v. Nat'l Collegiate Master Student Tr.*, No. 17-1323 (MN), 2020 WL 2915759, at \*3 (D. Del. May 31, 2020); *see also In re Nat'l Collegiate Student*

24   *Loan Trs. Litig.*, 251 A.3d at 168–71. And the Western District of Michigan recently rejected a similar allegation concerning the "residual owners" as "inaccurate." *Merrill v. Transworld Sys., Inc.*, No. 1:20-

25   CV-183, 2020 WL 8474736, at \*7 (W.D. Mich. Dec. 1, 2020) ("*Merrill R&R*"). Thus, the verified amended complaint was filed without authorization, and Plaintiff's quotations from it cannot be construed

26   as "admissions" here. *See* Dkt. # 104 at ¶ 99.

U.S. BANK'S MOTION TO DISMISS PLAINTIFF'S
AMENDED COMPLAINT (No. 2:20-cv-00680-DGE) – 12

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

"supervise or monitor the performance" of Servicers or Subservicers and "shall have no liability for the acts or omissions of any such Servicer or Subservicer").  To the contrary, those agreements make clear that, even if Plaintiff had tried, he could not allege the requisite amount of control.

As an initial matter, although the initial "Special Servicer" under the TSI Agreement, FMER, may have had the right to exercise some amount of general oversight over subservicers' collection operations, U.S. Bank, as Back-Up Special Servicer, did not inherit each and every duty of the initial Special Servicer:  The Special Servicing Agreement states that the "Back-Up Special Servicer . . . shall assume the rights, duties and obligations of the Special Servicer *to the extent expressly required to be assumed and performed* by the Back-Up Special Servicer under this Agreement."  Dkt. # 97-1, SSA § 8.A (emphasis added); *see also Merrill R&R*, 2020 WL 8474736, at *10 ("Section 8.A. of the SSA . . . underscores the parties' intent that U.S. Bank would not perform debt collection in its role as Special Servicer.")*.*  Importantly, the Special Servicing Agreement also states that "nothing in this Agreement shall be construed to require *or permit* the Back-Up Special Servicer (in its capacity as Special Servicer or otherwise) to undertake direct collection or enforcement activities" and that "the Back-Up Special Servicer in its capacity as successor Special Servicer" shall not be required to "supervise or monitor the performance of . . . Subservicers" and "shall have no liability for the acts or omissions of any such . . . Subservicer."  Dkt. # 97-1, SSA §§ 8.A, 8.D (emphasis added); *see also Merrill R&R*, 2020 WL 8474736, at *10.  No comparable provisions apply to FMER.  Thus, whatever supervision duties applied to FMER, they would not apply to U.S. Bank.  And to the extent Plaintiff alleges to the contrary, *see, e.g.*, Dkt. # 104 at ¶ 10 ("U.S. Bank is responsible for the collection of the loans allegedly held by the Trusts."), these written agreements prevail, *see Sprewell*, 266 F.3d at 988; *Schasa*, 2011 WL 13220099, at *2; *see also In re Nat'l Collegiate Student Loan Trs. Litig., 2*51 A.3d at 138–39*,* 157–58 (confirming that U.S. Bank, as Indenture

U.S. BANK'S MOTION TO DISMISS PLAINTIFF'S
AMENDED COMPLAINT (No. 2:20-cv-00680-DGE) – 13

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1    Trustee, is not responsible for the Defendant Trusts' servicing activities; those are the obligations

2    of the Trusts and the entities it has contracted with).

3            Even if U.S. Bank could be deemed to have assumed all of FMER's duties and

4    responsibilities under these agreements (which it does not), U.S. Bank still does not have the

5    requisite amount of control over the at-issue collection activities.  The TSI Agreement requires

6    TSI to "provide [certain] reports" to the Special Servicer, *e.g.*, Dkt. # 97-2, TSI Agreement

7    § 2.2(a), and to obtain "written consent" from the Special Servicer in certain circumstances, *e.g.*,

8    *id.* § 2.3(b)(i).  But it is not enough that the alleged principal merely require that the alleged agent

9    "keep records of its interactions with consumers," or provide "weekly reports" to the principal, or

10   "obtain [the principal's] approval" before taking certain actions or using certain call scripts, or

11   "comply with the 'guidelines and procedures'" provided by the principal.  *Jones*, 887 F.3d at 451;

12   *see also Env't Transp.*, 2020 WL 1847747, at *5 ("some measure of oversight" insufficient).

13   Plaintiff must instead allege that U.S. Bank controlled the "details of the work" performed by TSI

14   in this case—*i.e.*, deciding whether and how to collect on the loans and thereafter litigate.

15   *Larner*, 613 P.2d at 782.  He cannot make those allegations, and so his vicarious-liability theory

16   fails as a matter of law.

17           The additional factors considered by courts likewise counsel against imposing vicarious

18   liability.  TSI is "an independent business, separate and apart" from U.S. Bank.  *Jones*, 887 F.3d

19   at 452.  It was free to "take on outside work," and U.S. Bank was authorized to retain additional

20   subservicers on behalf of the Trusts.  *Larner*, 613 P.2d at 782; Dkt. # 97-2, TSI Agreement

21   § 11.4.  TSI, not U.S. Bank, "supplies [the] tools and instrumentalities and the place of work."

22   *Jones*, 887 F.3d at 450 (brackets omitted); Dkt. # 97-2, TSI Agreement § 2.10(f).  TSI also

23   "hire[s] and fire[s] all [its] own employees," whom U.S. Bank does not supervise.  *Larner*, 613

24   P.2d at 782; *see* Dkt. # 97-1, SSA § 8.D; Dkt. # 97-2, TSI Agreement §§ 2.4(a); 2.10(b), (c).  Nor

25   does U.S. Bank provide any "benefits" to TSI or its employees.  *Wheatley*, 341 F. Supp. 3d at

26   765.  TSI was paid a set fee, "rather than for the time . . . worked," *Jones*, 887 F.3d at 452; *see*

U.S. BANK'S MOTION TO DISMISS PLAINTIFF'S
AMENDED COMPLAINT (No. 2:20-cv-00680-DGE) – 14

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1   Dkt. # 97-2, TSI Agreement § 2.3(c), and paid its own expenses for the work performed, *see* Dkt.

2   # 97-2, TSI Agreement § 3.2.  And in no event was TSI paid *by U.S. Bank*—TSI retained its fee

3   from the collected funds due to the Noteholders of the Indentures.  *Id.* at § 2.3(c).  Accordingly,

4   Plaintiff has failed to allege that U.S. Bank is vicariously liable for TSI's collection attempts

5   against Plaintiff.

6           **B.       Plaintiff's Additional, Throw-Away Theories of Liability Also Fail.**

7           Plaintiff tosses in the conclusory allegations that U.S. Bank "negligently" delegated its

8   monitoring or supervision duties and/or "aided and abetted" the alleged violations at issue.  As

9   with the vicarious-liability theory, however, Plaintiff offers no *facts* to support these theories, a

10  failure that in itself necessitates dismissal.  And the theories lack merit in any event.  Take first

11  Plaintiff's theory that U.S. Bank is liable for acts it did not itself commit because U.S. Bank

12  "delegated the performance of its responsibilities as Special Servicer to [TCM]."  Dkt. # 104 at

13  ¶ 47.  Plaintiff does not explain how TCM allegedly violated the CPA or how this would impute

14  CPA liability on U.S. Bank.  Indeed, delegating special servicing-related activities to a third party

15  does not constitute an unfair or deceptive practice under the CPA.  *See Stephens*, 159 P.3d at 26.

16  In any event, the fatal flaw in this theory is even more simple—U.S. Bank did not delegate any

17  special servicing, monitoring, or supervision duties because the Special Servicing Agreement

18  expressly prohibits U.S. Bank from itself undertaking special servicing activities and makes clear

19  that U.S. Bank has never had any duty to supervise or monitor subservicers.  Dkt. # 97-1, SSA §§

20  8.A, 8.D.

21          Equally deficient is Plaintiff's conclusory allegation that U.S. Bank somehow "aided and

22  abetted" the alleged violations against him.  Dkt. # 104 at ¶¶ 50, 56–58.  To the extent Plaintiff

23  means that U.S. Bank and TSI were "joint tortfeasors," Plaintiff has not alleged the "collaboration

24  or concerted action needed to establish that relationship."  *Stephens*, 159 P.3d at 26 (no joint-

25  tortfeasor liability under the CPA where no suggestion that defendant collaborated in the alleged

26  violation by, for example, "suggest[ing] or review[ing] the wording of [the debt collector's]

letters" to plaintiff).  And though Plaintiff, in passing, suggests that U.S. Bank aided and abetted TSI in "its status and role as a trustee," that assertion is perplexing, to say the least.  Dkt. # 104 at ¶ 58.  Plaintiff has not alleged that the Indenture Trustee—of a distinct and separate trust[9]—had any involvement in loan servicing on behalf of the Trusts and expressly alleged that his claims against U.S. Bank arise solely out of its role as Successor Special Servicer.  Dkt. # 104 at ¶ 10; *see, e.g.*, *In re Nat'l Collegiate Student Loan Trs. Litig.*, 251 A.3d at 138–39 ("Indeed, the Indenture gives the Indenture Trustee a minimal role—at least as long as the Student Loans are generating enough proceeds to pay off the Notes.  The duty to service the Student Loans and collect proceeds belongs, instead, to the Trusts.").

And, finally, Plaintiff appears to support its aiding-and-abetting theory by invoking the settlement consent order between TSI and the CFPB, claiming that the order "imposed both affirmative and prohibitory duties upon U.S. Bank" and required U.S. Bank to "ensure and enforce TSI's compliance."  Dkt. # 104 at ¶¶ 56–57.  For starters, Plaintiff misrepresents the facts—U.S. Bank was not a party to (and was not bound by) that Consent Order, and the Consent Order did not impose affirmative or prohibitory duties on U.S. Bank.  *See generally* Consent Judgment, *In re Transworld Sys., Inc.*, Admin. Proc. No. 2017-CFPB-0018 (Sept. 18, 2017)[10]; *see also Sprewell*, 266 F.3d at 988 (courts do not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit").  In any event, Plaintiff fails to explain how this consent order shows U.S. Bank's "collaboration or concerted action" with respect to the alleged violations against him.  *Stephens*, 159 P.3d at 26; *see also* Fed. R. Civ. P. 9(b).

---

[9] *See In re Nat'l Collegiate Student Loan Trs. Litig.*, 251 A.3d at 131 (explaining "In lieu of officers and employees, the [Defendant] Trusts act through the Owner Trustee (Wilmington Trust), which is empowered to act on behalf of the Trust[s].  As a trustee in a separate trust relationship, [U.S. Bank] serves as Indenture Trustee for the Indenture Trust Estate … .") (internal quotes omitted).

[10] *Available at* https://files.consumerfinance.gov/f/documents/201709_cfpb_transworld-systems_consent-order.pdf.

U.S. BANK'S MOTION TO DISMISS PLAINTIFF'S
AMENDED COMPLAINT (No. 2:20-cv-00680-DGE) – 16

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1

### C.      Plaintiff's Claim for Civil Conspiracy To Violate the CPA Also Fails Against U.S. Bank.

2

3          Plaintiff cannot state a claim against U.S. Bank for civil conspiracy to violate the CPA

4    because Plaintiff can neither plead the elements of a conspiracy with requisite particularity nor

5    sufficiently allege the predicate tort on which his conspiracy claim is based.  "To establish a civil

6    conspiracy, Plaintiff must prove that (1) two or more people *contributed* to accomplish an

7    unlawful purpose, or *combined* to accomplish a lawful purpose by unlawful means; and (2) the

8    conspirators *entered* into an agreement to accomplish the object of the conspiracy." *Wilson v.*

9    *JPMorgan Chase, N.A*., 2020 WL 885971, at *5 (W.D. Wash. Feb. 24, 2020) (emphasis added)

10   (citing *Corbit v. J.I. Case Co.*, 424 P.2d 290, 295 (Wash. 1967)), *reconsideration denied*, 2020

11   WL 6262106 (W.D. Wash. Oct. 23, 2020).  At the pleading stage, a plaintiff must allege the

12   factual basis for each element with particularity when "the object of the alleged conspiracy is

13   fraudulent."  *Wasco*, 435 F.3d at 990.

14         Plaintiff, however, fails to allege *any* affirmative acts *by U.S. Bank* in concert with the

15   other Defendants that would establish that U.S. Bank "*contributed* to," "*combined*," or "*entered*

16   into an agreement" to accomplish an unlawful purpose.[11]  At most, Plaintiff reasserts allegations

17   from other lawsuits or settlements that "tell us little about the relationship between the plaintiff[]

18   and the defendants they have sued in this litigation."  *Gosse v. Transworld Sys. Inc.*, No. 3:20-

19   CV-1446, 2021 WL 5761733, at *2, *7 (M.D. Pa. Jul. 13, 2021) (recommending dismissal of all

20   claims against U.S. Bank arising out of factual theories almost identical to those asserted here).

21   Nor does Plaintiff plausibly allege an agreement among the Defendants to achieve such an

22   unlawful purpose.  At most, Plaintiff alleges only that Defendants, including U.S. Bank, entered

23

24         [11] Plaintiff's throw-away line that "Defendants have, amongst themselves, expressly or impliedly agreed to undertake unlawful debt collection efforts . . . including but not limited to the engagement and retention of TSI to service as a servicer when each knows TSI is not licensed to conduct such work in the State of Washington," Dkt. # 104 at ¶ 129, is unavailing.  As discussed, it was FMER (with the consent of the Trusts)—and not U.S. Bank—that retained NCO/TSI pursuant to the TSI Agreement.  *See* Section II.A, *supra*.

25

26

U.S. BANK'S MOTION TO DISMISS PLAINTIFF'S
AMENDED COMPLAINT (No. 2:20-cv-00680-DGE) – 17

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1   into a series of business-related associations.  *See, e.g.*, Dkt. # 104 at ¶¶ 39–46, 48, 60, 66–70.

2   But lawful, business-related associations are insufficient to establish a conspiracy.  *See Sterling*

3   *Bus. Forms, Inc. v. Thorpe*, 918 P.2d 531, 533–34 (Wash. Ct. App. 1996) ("[T]he 'circumstances

4   [of the alleged conspiracy] must be inconsistent with a lawful or honest purpose and reasonably

5   consistent only with [the] existence of the conspiracy.'" (quoting *Corbit*, 424 P.2d at 295)).

6           Finally, civil conspiracy is not an independent cause of action, but must instead be based

7   on an underlying, actionable tort.  *Nw. Laborers-Emps. Health & Sec. Tr. Fund v. Philip Morris,*

8   *Inc.*, 58 F. Supp. 2d 1211, 1216 (W.D. Wash. 1999).  Because Plaintiff has not stated (and cannot

9   state) a claim for violation of the CPA under Count III, his conspiracy claim, too, fails.

10  Accordingly, Plaintiff's civil conspiracy claim against U.S. Bank (Count I)  must be dismissed.

11          **D.      Plaintiff's Request for Injunctive Relief Also Fails.**

12          Because Plaintiff's substantive claims against U.S. Bank fail, so too does Plaintiff's

13  request for injunctive relief (Count V)*.  See Veridian Credit Union v. Eddie Bauer, LLC*, 295 F.

14  Supp. 3d 1140, 1156 (W.D. Wash. 2017) (explaining that "request[s] [for] declaratory and

15  injunctive relief . . . are requests for relief and not separate legal causes of action"); *see also* Order

16  on Defs.' Mots. To Dismiss, No. 2:20-cv-00669-DGE, slip op. at 9–11, Dkt. # 120 (dismissing

17  Osure Brown's claims for declaratory and injunctive relief because neither was "a stand-alone

18  action" but "instead require[d] some other substantive basis for liability," which was lacking).

19  Further, Plaintiff's request for an injunction prohibiting U.S. Bank from servicing loans is moot

20  because U.S. Bank does not, and is not permitted to, engage in any servicing activity on behalf of

21  the Trusts.  Dkt. # 97-1, SSA § 8.A ("[N]othing in this Agreement shall be construed to require *or*

22  *permit* the Back-Up Special Servicer (in its capacity as Special Servicer or otherwise) to

23  undertake direct collection or enforcement activities . . . .").

24

25

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1

## V.   <u>CONCLUSION</u>

2        For the above reasons and those included in Section III.F. of the Trusts' Motion to

3  Dismiss, all claims against U.S. Bank must be dismissed with prejudice.

4

5  DATED:  April 26, 2022                    PERKINS COIE LLP

6                                            By: <u>s/ Kristine E. Kruger</u>
                                             By: <u>s/ Thomas N. Abbott</u>
7                                            Kristine E. Kruger, WSBA No. 44612
                                             Thomas N. Abbott, WSBA No. 53024
8                                            1201 Third Avenue, Suite 4900
                                             Seattle, WA 98101
9                                            Telephone: 206.359.8000
                                             Facsimile: 206.359.9000
10                                           KKruger@perkinscoie.com
                                             TAbbott@perkinscoie.com
11

12                                           *Attorneys for U.S. Bank National Association*

13                                           JONES DAY

14                                           By: <u>s/ Albert J. Rota</u>
                                             Albert J. Rota, *Pro Hac Vice*
15                                           2727 North Harwood St.
                                             Dallas, TX 75201
16                                           ajrota@jonesday.com

17                                           *Attorneys for U.S. Bank National Association*

18

19

20

21

22

23

24

25

26

U.S. BANK'S MOTION TO DISMISS PLAINTIFF'S
AMENDED COMPLAINT (No. 2:20-cv-00680-DGE) – 19

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1

**<u>CERTIFICATE OF SERVICE</u>**

2

      I hereby certify that on April 26, 2022, a copy of the foregoing Motion to Dismiss

3

Plaintiff's Amended Complaint was electronically filed with the Clerk of Court using the

4

CM/ECF system. Notice of this filing will be sent to all parties by operation of the Court's

5

electronic filing system. Parties may access this filing through the Court's system.

6

DATED:  April 26, 2022

7

8

                By *s/ Kristine E. Kruger*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000