# EXHIBIT 1

The Hon. Thomas S. Zilly

1

2

3

4
UNITED STATES DISTRICT COURT
5
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

6

7
ESTHER HOFFMAN; SARAH DOUGLASS;
ANTHONY KIM; and IL KIM and DARIA      NO.  C18-1132 TSZ
8
KIM, husband and wife and the marital
community comprised thereof, on behalf of    **SECOND AMENDED CLASS**
9
themselves and on behalf of others similarly  **COMPLAINT FOR INJUNCTIVE**
situated,                                  **RELIEF AND DAMAGES FOR**
10
                                           **VIOLATIONS OF THE WASHINGTON**
11
                    Plaintiffs,            **CONSUMER PROTECTION ACT**

12              vs.

TRANSWORLD SYSTEMS
13
INCORPORATED; PATENAUDE AND
14
FELIX, A.P.C.; MATTHEW CHEUNG, and the
marital community comprised of MATTHEW
15
CHEUNG and JANE DOE CHEUNG,
National Collegiate Student Loan Trust 2003-1,
16
National Collegiate Student Loan Trust 2004-1,
National Collegiate Student Loan Trust 2004-2,
17
National Collegiate Student Loan Trust 2005-1,
National Collegiate Student Loan Trust 2005-2,
18
National Collegiate Student Loan Trust 2005-3,
National Collegiate Student Loan Trust 2006-1,
19
National Collegiate Student Loan Trust 2006-2,
National Collegiate Student Loan Trust 2006-3,
20
National Collegiate Student Loan Trust 2006-4,
National Collegiate Student Loan Trust 2007-1,
21
National Collegiate Student Loan Trust 2007-2,
22
National Collegiate Student Loan Trust 2007-3,
National Collegiate Student Loan Trust 2007-4,
23
National Collegiate Master Student Loan Trust,
and DOES ONE THROUGH TEN,
24

25                  Defendants.

26

27  SECOND AMENDED CLASS COMPLAINT                    Leonard Law
    FOR INJUNCTIVE RELIEF AND DAMAGES FOR        1001 4th Ave, Suite 3200
    VIOLATIONS OF THE WASHINGTON CONSUMER        Seattle, Washington 98154
    PROTECTION ACT - 1                            Phone: 206-486-1176
    (Case No. C18-1132 TSZ)                        Fax: 206-458-6028

# I. INTRODUCTION

Plaintiffs are Washington consumers to whom Defendants Transworld Systems Incorporated ("TSI"), Patenaude and Felix, A.P.C. ("P&F"), Attorney Matthew Cheung ("Cheung"), and National Collegiate Student Loan Trusts made false and misleading representations and engaged in unfair and deceptive practices in the collection or attempted collection of alleged student loan debt, interest, and charges using fraudulent, deceptive, and misleading affidavits prepared by TSI employees (hereinafter collectively referred to as "the Affidavits"). False affidavits were used by the Defendants to obtain default judgments and orders of summary judgment in Washington state courts to later obtain settlements and garnish wages and bank accounts. The Defendants are on notice of the problems since their misrepresentations in affidavits led to a finding by the Consumer Financial Protection Bureau ("CFPB") following an investigation that TSI's consumer collection lawsuits lacked admissible evidence to prove up their claims. Following the investigation TSI stipulated and consented to the entry of a Consent Order in *In the Matter of Transworld Systems, Inc.*, 2017-CFPB-0018 (Sept. 18, 2017) (hereinafter "Stipulation" and "Consent Order"). Pursuant to the Stipulation, TSI consented to the "Order" and "Compliance Plan" in the Consent Order therein.[1]

Plaintiffs seek to enjoin Defendants' unlawful collection practices, to vacate any unlawful judgments entered against Plaintiffs and the Class, and to recover damages to which Plaintiffs and the Class are entitled.

---

[1] TSI consented to the issuance of the Consent Order by the CFPB without admitting or denying any of the findings of fact or conclusions of law, except as necessary to establish the CFPB's jurisdiction over TSI and the subject matter of the Consent Order. *See In the Matter of Transworld Systems, Inc.*, 2017-CFPB-0018, at 2 (available online at: http://s3amazonaws.com/files.consumerfinance.gov/f/documents/201709_cfpb_transworld-systems_stipulation.pdf.)

SECOND AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 2
(Case No. C18-1132 TSZ)

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98154
Phone: 206-486-1176
Fax: 206-458-6028

## II. JURISDICTION AND VENUE

1.     This action was originally filed in King County Superior Court and was removed by Defendants to this Court under 28 U.S.C. § 1331.

2.     After removal, Plaintiffs' federal claims were dismissed. This Court retains permissive supplemental jurisdiction over Defendants and the claims in this action under 28 U.S.C. § 1367.

3.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2), in that a substantial part of the events giving rise to the claims occurred in this judicial district.

## III. PARTIES

4.     Plaintiff Esther Hoffman ("Esther" or "Ms. Hoffman") is a person residing in King County, Washington who is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3), and a "debtor" as that term is defined in RCW 19.16.100(7).

5.     Plaintiff Sarah Douglass ("Ms. Douglass") is a person residing in King County, Washington who is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3), and a "debtor" as that term is defined in RCW 19.16.100(7).

6.     Plaintiff Anthony Kim is a person residing in Snohomish County, Washington who is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3), and a "debtor" as that term is defined in RCW 19.16.100(7).

7.     Plaintiff Daria Kim is a person residing in Snohomish County, Washington who is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3), and a "debtor" as that term is defined in RCW 19.16.100(7).

8.     Plaintiff Il Kim is a person residing in Snohomish County, Washington who is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3), and a "debtor" as that term is

SECOND AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 3
(Case No. C18-1132 TSZ)

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98154
Phone: 206-486-1176
Fax: 206-458-6028

defined in RCW 19.16.100(7).

9.        Defendants National Collegiate Student Loan Trust 2005-3, National Collegiate Student Loan Trust 2006-2, National Collegiate Student Loan Trust 2006-4, National Collegiate Student Loan Trust 2004-2, National Collegiate Student Loan Trust 2007-4, National Collegiate Student Loan Trust 2007-1, National Collegiate Student Loan Trust 2006-3, National Collegiate Student Loan Trust 2005-1, National Collegiate Student Loan Trust 2006-1, National Collegiate Student Loan Trust 2004-1, National Collegiate Student Loan Trust 2007-3, National Collegiate Student Loan Trust 2007-2, National Collegiate Student Loan Trust 2005-2, The National Collegiate Master Student Loan Trust, National Collegiate Student Loan Trust 2003-1 (hereinafter collectively, "NCSLTs") are Delaware statutory trusts.

10.        The NCSLTs are "persons" for the purpose of the Washington Consumer Protection Act, RCW 19.86, *et seq*. (the "WCPA").

11.        Since at least 2012, the NCSLTs have had agents collect debts on their behalf in state courts across the country.

12.        The NCSLTs use agents to conduct collections and oversee law firms that file collection lawsuits on their behalf. TSI, P&F, and Cheung are agents of the NCSLTs identified as defendants in Paragraph No. 9 of this Second Amended Complaint.

13.        Defendant TSI is a successor to NCO Financial Systems, Inc. (hereinafter "NCO"). TSI is a corporation chartered under California law with principal offices at 150 N. Field Drive, Suite 200, Lake Forest, Illinois 60045. It does business in Washington. Its registered agent in Washington is CT Corporation System, 711 Capitol Way S., Ste. 204, Olympia, Washington 98501.

14.        NCO and TSI are related entities. *See United States v Expert Global Solutions,*

SECOND AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 4
(Case No. C18-1132 TSZ)

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98154
Phone: 206-486-1176
Fax: 206-458-6028

1  *Inc., formerly known as NCO Group, Inc., NCO Financial Systems, Inc., NCO Financial*

2  *Systems Inc., ALW Sourcing, LLC, Transworld Systems, Inc.*, 3:13cv2611 (N.D. Tex.).

3      15.     Among the debts that NCO collected and that TSI now collects are private

4  student loan obligations allegedly owed to a large number of NCSLTs.

5      16.     Defendant TSI is a "collection agency" as defined in Washington's Collection

6  Agency Act, RCW 19.16., *et seq.* (the "WCAA"). TSI holds a Washington collection agency

7  license under UBI # 600-169-996.

8      17.     Defendant TSI seeks to collect on defaulted consumer debts that were originally

9
10  owed to others, using the mail, telephone, and electronic wire services to do so, all in the

11  general course of trade and commerce.

12      18.     Defendant TSI is also directly or indirectly engaged in soliciting claims for

13  collection or collecting or attempting to collect claims owed or due or asserted to be owed or

14  asserted to be due to another person.

15      19.     Defendant TSI is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

16
17      20.     Defendant TSI and its predecessor, NCO, have collected debt on behalf of the

18  NCSLTs since at least 2012. As part of their debt collection activities, TSI directs all collection

19  efforts against Washington consumers on behalf of the NCSLTs, including the conduct of

20  litigation filed in the name of NCSLTs against consumers in Washington State. All actions

21  alleged herein that were taken by Defendant TSI and its agents were taken for the benefit of

22  TSI and the NCSLTs.
23

24      21.     Defendant P&F is professional corporation doing business under the laws of

25  Washington. P&F's registered agent in Washington is Matthew Cheung, who conducts

26  business out of an office in Lynnwood, Washington.

27  SECOND AMENDED CLASS COMPLAINT                    Leonard Law
    FOR INJUNCTIVE RELIEF AND DAMAGES FOR            1001 4th Ave, Suite 3200
    VIOLATIONS OF THE WASHINGTON CONSUMER            Seattle, Washington 98154
    PROTECTION ACT - 5                               Phone: 206-486-1176
    (Case No. C18-1132 TSZ)                          Fax: 206-458-6028

22. Defendant P&F is a licensed Washington collection agency whose activities in Washington are governed by the WCAA.

23. Defendant P&F is a member of, or otherwise affiliated with, the Attorney Network of TSI.

24. Defendant P&F and its lawyer in Washington, Matthew Cheung, has, by service and/or filing, commenced over 1,400 lawsuits in the state of Washington with the plaintiff identified in such cases as one or more of the NCSLTs.

25. Defendant P&F sends collection letters to Washington consumers who allegedly have loans included in the NCSLTs.

26. Defendant P&F collects money from consumers and communicates with consumers prior to filing suit.

27. Defendant P&F is directly or indirectly engaged in soliciting claims for collection or collecting or attempting to collect claims owed or due or asserted to be owed or asserted to be due to another person.

28. Defendant P&F is engaged in a business, the principal purpose of which is the collection of debts, and regularly collects and attempts to collect, directly or indirectly, debts alleged to be due another.

29. Defendant P&F is a "debt collector" within the meaning of 15 U.S.C. §1692a(6). P&F is a "collection agency" as that term is defined in the WCAA. P&F is a "person" as that term is defined in the WCPA and engages in "trade" and "commerce" as those terms are defined in the WCPA. All actions alleged herein that were taken by Defendant P&F and its agents were taken for the benefit of P&F, TSI, and the NCSLTs.

30. Defendant P&F regularly uses the telephone in its attempts to collect debts.

SECOND AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 6
(Case No. C18-1132 TSZ)

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98154
Phone: 206-486-1176
Fax: 206-458-6028

31.     Defendant P&F uses the instrumentalities of interstate commerce and the United States Postal Service ("mail") in its business.

32.     Defendant P&F uses the "mail" in its attempts to collect debts.

33.     Defendant Cheung is an attorney licensed to practice law in Washington, and he practices law from an office address in Lynnwood, Washington. All actions taken by Cheung alleged herein were taken for his personal benefit, for the benefit of his marital community, and for the benefit of P&F, TSI, and the NCSLTs.

34.     In Washington, Cheung collects and attempts to collect debts referred to him by TSI and the NCSLTs, and he is engaged in a business in which he regularly collects and attempts to collect, directly or indirectly, debts alleged to be due another.

35.     Defendant Cheung seeks to collect on defaulted consumer debts that were originally owed to others, using the mail, telephone, and electronic wire services to do so, all in the general course of trade and commerce.

36.     Defendant Cheung is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

37.     The actions of Mr. Cheung on behalf of P&F were conducted in trade or commerce and primarily in connection with P&F's business as a collection agency.

38.     When P&F and Cheung collect or attempt to collect debts referred to them by NCO, TSI, and the NCSLTs, they act as agents for the NCSLTs and for TSI.

39.     TSI knows the collection methods and procedures that P&F and Cheung use, controls P&F's and Cheung's collection activities, and exercises that right as it deems necessary.

40.     P&F is also fully aware of, countenanced, permitted, and encouraged the actions

SECOND AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 7
(Case No. C18-1132 TSZ)

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98154
Phone: 206-486-1176
Fax: 206-458-6028

of its employee, Matthew Cheung, as set forth in this Second Amended Complaint.

41.     Plaintiffs allege on information and belief that each Defendant herein is acting in concert with, and is the agent and/or employee of, each other Defendant. Plaintiffs also allege on information and belief that the interests of all Defendants have been so unified that their separate personalities no longer exist and that if the acts of the corporate Defendants are treated as those of the corporation alone, an inequitable result will follow.

## IV.  FACTS

### A.  Plaintiff Esther Hoffman.

42.     In 2004, Esther took out a student loan with Bank of America in the amount of $6,000.00.

43.     Esther's mother, Pat Hoffman (hereinafter "Pat"), agreed at the time the loan was taken out that she would make the payments on the student loan.

44.     Pat failed to make those payments.

45.     Nine years later, Esther found out that her mother was served with a summons and complaint naming Esther as a defendant in an action brought by National Collegiate Student Loan Trust 2004-2 (hereinafter referred to individually as "NCSLT 2004-2"). Esther had not heard of NCSLT 2004-2 or P&F and/or Mr. Cheung, who were listed as counsel for NCSLT 2004-2 in the complaint. Because the NCSLTs represented that they owned Esther's student loans and that they could prove the same, Esther began making small payments to P&F because she could not afford to defend herself in court.

46.     Due to a serious physical injury, Esther became unable to continue making the agreed monthly payments.

47.     On June 8, 2016, P&F filed with the Snohomish County Superior Court the

SECOND AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 8
(Case No. C18-1132 TSZ)

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98154
Phone: 206-486-1176
Fax: 206-458-6028

summons and complaint it had served on Esther's mother.

48.     On August 25, 2016, NCSLT 2004-2, through P&F, filed a Motion and Declaration for Default and Judgment signed by Cheung. The proposed Order of Default and Default Judgment, which were granted, included an award of $833.66 in interest and $337.50 in costs.

49.     In support of the Motion and Declaration for Default and Judgment, Defendants filed the "Affidavit and Verification of Account" of Dudley Turner ("Turner"), a TSI employee.

50.     In Turner's affidavit, he declared "under penalty of perjury under the laws of the forum" that:

a.  He was "competent and authorized to testify relating to this action through personal knowledge of the business records, including the electronic data, sent to TSI that detail the education loan records"; and

b.  He had "personal knowledge of the record management practices and procedures of [NCSLT 2004-2] and the practices and procedures [NCSLT 2004-2] requires of its loan servicers and other agents."

51.     Attached to Turner's affidavit was a "Pool Supplement" (hereinafter "2004-2 Pool Supplement") pulled from the Securities and Exchange Commission's ("SEC's") online archives, "EDGAR." The Pool Supplement states,

> In consideration of the Minimum Purchase Price set forth in Schedule 1 attached hereto, [First Marblehead Corporation and Bank of America, N.A.] hereby sells, sets over and assigns to the National Collegiate Funding LLC [...] each student loan set forth on the attached Schedule 2....
>
> [National Collegiate Funding LLC] in turn will sell the Transferred Bank

SECOND AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 9
(Case No. C18-1132 TSZ)

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98154
Phone: 206-486-1176
Fax: 206-458-6028

of America Loans to the [NCSLT 2004-2].

52. Attached to the 2004-2 Pool Supplement was a document titled "Schedule 2" (hereinafter "2004-2 Schedule 2"). It did not contain a list of loans. It stated: "On file with the Indenture Trustee."

53. Also attached to the Turner Affidavit was a document titled "Deposit and Sale Agreement The National Collegiate Student Loan Trust 2004-2" (hereinafter "2004-2 Sale Agreement").

54. The Sale Agreement 2004-2 is between The National Collegiate Funding LLC as seller and NCSLT 2004-2 as purchaser. It states that "[2004-2] Sale Agreement sets forth the terms under which the Seller is selling and the Purchaser is purchasing the student loans listed on Schedule 2 to each of the Pool Supplements set forth on Schedule A attached hereto…." Schedules A and B are attached to the Sale Agreement, and they give descriptions of loan types that were being sold, but not the names of individual borrowers or loan account numbers. Schedule 2 is not attached to Schedules A or B.

55. Neither the 2004-2 Pool Supplement nor the 2004-2 Sale Agreement are mentioned in Turner's affidavit.

56. On information and belief, none of the defendants know the location of the 2004-2 Schedule 2.

57. On information and belief, Defendants TSI, P&F, and Cheung have never seen or reviewed the 2004-2 Schedule 2, and they are aware that it is lost.

58. NCSLT 2004-2, through P&F, filed Applications for Writs of Garnishment seeking to collect on the Hoffman judgment on November 29, 2016; February 10, 2017; March 21, 2017; May 23, 2017; August 1, 2017; and September 29, 2017. All were signed by Cheung,

SECOND AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 10
(Case No. C18-1132 TSZ)

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98154
Phone: 206-486-1176
Fax: 206-458-6028

and all sought amounts in addition to the principal balance of the judgment.

59.     All garnishment paperwork was sent directly to Ms. Hoffman or her parents, not her attorney.

60.     The August 2017 garnishment was directed to Ms. Hoffman's US Bank account.

61.     The only funds Ms. Hoffman kept in the US Bank account were her disabled brother's social security payments, which she managed for him.

62.     Ms. Hoffman had to spend time working with US Bank ensuring those funds were not garnished and were properly exempted.

63.     After the Default Judgment was entered on November 4, 2016, Ms. Hoffman hired an attorney to investigate the debt underlying the default judgment and the default judgment, and to help her settle the account if she in fact owed the debt to the NCSLT 2004-2. Ms. Hoffman has paid her attorney $1,500.00 to investigate Defendants' collection attempts, review the underlying documents, review the court file and attempted garnishments, advise her on what her options were, and attempt to settle her account. Ms. Hoffman still owes her attorney legal fees for his investigation of the debt and other legal services relating to Defendants' collection attempts and the judgment they obtained.

64.     On September 18, 2017, TSI entered into a Consent Order with the CFPB pursuant to which it agreed that it would cease collection on loans allegedly owned by the NCSLTs for which it used a TSI employee declaration like Turner's, because the CFPB found many of them to not be truthful.

65.     On October 5, 2017, Ms. Hoffman's attorney, Sam Leonard, sent Cheung a letter demanding that he cease all collection efforts against Ms. Hoffman, vacate the judgment against her, and dismiss the action with prejudice because of the Consent Order. A copy of the

SECOND AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 11
(Case No. C18-1132 TSZ)

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98154
Phone: 206-486-1176
Fax: 206-458-6028

Consent Order was attached to Sam Leonard's letter.

66.     Over two weeks later, Esther received a letter in the mail from P&F signed by Cheung dated October 20, 2017 that included copies of a new Writ of Garnishment and Application for Writ of Garnishment to Umpqua Bank.

67.     Ms. Hoffman spent money and time investigating the debt that the Defendants claim she owes them. She spent money and time working with an attorney to try and settle the account, including the default judgment that she has now learned was likely obtained with a false declaration. Ms. Hoffman has never seen the schedules that Defendants' agents relied upon to obtain the judgment, despite spending money to hire an attorney to investigate the proof of assignment.

**B.  Plaintiff Sarah Douglass.**

68.     Plaintiff Sarah Douglass ("Sarah") is a King County resident.

69.     In 2005, Sarah took out a student loan with Bank of America in the amount of $2,000.00.

70.     In 2006, Sarah took out a student loan with Bank of America in the amount of $2,500.00.

71.     Over ten years later, Sarah found out that National Collegiate Student Loan Trust 2006-3 (hereinafter referred to individually as "NCSLT 2006-3") had filed two separate lawsuits against her and had obtained default judgments against her in each case without first properly serving her with copies of the summons and complaints. Sarah found out about the default judgments after receiving copies of them in the mail from P&F and Cheung in June 2017.

72.     On April 24, 2017, P&F filed the summons and complaint in both cases with the

SECOND AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 12
(Case No. C18-1132 TSZ)

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98154
Phone: 206-486-1176
Fax: 206-458-6028

King County, Washington, Superior Court.

73. On April 25, 2017, NCSLT 2006-3, through P&F, filed Motions and Declarations for Default and Judgment signed by Cheung. In King County Superior Court Case No. 17-2-10604-6, the proposed Order of Default and Default Judgment, which was entered by the Court, included an award of $233.83 in interest and $395.80 in costs. In King County Superior Court Case No. 17-2-10605-4, the proposed Order of Default and Default Judgment, which was entered by the Court, included an award of $165.10 in interest and $395.80 in costs.

74. In support of the Motions and Declarations for Default and Judgment, Defendants filed the "Affidavit and Verification of Account" of Brian Jackson ("Jackson").

75. In Jackson's affidavit, he declared "under penalty of perjury under the laws of the forum" that:

    a. He was "competent and authorized to testify regarding this educational loan through personal knowledge of the business records maintained by TSI as custodian of records, including the electronic data provided to TSI related to Defendant's educational loan, and the business records attached to this Affidavit...."

76. Attached to Jackson's affidavit was a "Pool Supplement" (hereinafter "2006-3 Pool Supplement") pulled from the SEC's EDGAR online archives. The Pool Supplement states,

> In consideration of the Minimum Purchase Price set forth below, [First Marblehead Corporation and Bank of America, N.A.] hereby transfers, sells, sets over, and assigns to The National Collegiate Funding LLC [...] each student loan set forth on the attached Schedule 1....

> [National Collegiate Funding LLC] in turn will sell the Transferred Bank of America Loans to the [NCSLT 2006-3].

SECOND AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 13
(Case No. C18-1132 TSZ)

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98154
Phone: 206-486-1176
Fax: 206-458-6028

77.     Attached to the Jackson Affidavit was a document titled "Deposit and Sale Agreement The National Collegiate Student Loan Trust 2006-3" (hereinafter "2006-3 Sale Agreement.")

78.     The Sale Agreement 2006-3 is between The National Collegiate Funding LLC as seller and NCSLT 2006-3 as purchaser. It states that the "[2006-3] Sale Agreement sets forth the terms under which the Seller is selling and the Purchaser is purchasing the student loans listed on Schedule 2 to each of the Pool Supplements set forth on Schedule A attached hereto…." Schedules A and B are attached to the Sale Agreement and they give descriptions of loan types that were being sold, but not the names of individual borrowers or loan account numbers. Schedule 2 is not attached to Schedule A or B.

79.     Neither the 2006-3 Pool Supplement nor the 2006-3 Sale Agreement are mentioned in Jackson's affidavit.

80.     On information and belief, none of the Defendants know the location of the 2006-3 Schedule 2.

81.     On information and belief, Defendants TSI, P&F, and Cheung have never seen or reviewed the 2006-3 Schedule 2, and they are aware that it is lost. On November 3, 2017, Sarah's attorney, Amanda N. Martin, filed a Motion to Set Aside Default Order and Judgment based on the improper service of the summons and complaints in each case: King County Superior Court Case No. 17-2-10605-4 and King County Superior Court Case No. 17-2-10605-6. Each Motion states that the CFPB filed a complaint against Defendants NCSLTs and that TSI entered into the Consent Order with the CFPB. Copies of the Motions with the Consent Order were served on NCSLT 2006-3, P&F, and Cheung.

SECOND AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 14
(Case No. C18-1132 TSZ)

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98154
Phone: 206-486-1176
Fax: 206-458-6028

82.    On November 17, 2017, the King County Superior Court entered orders vacating the default orders and judgments entered in both cases.

83.    On March 20, 2017, an Order Dismissing Case was entered in Case No. 17-2-10605-4 upon NCSLT 2006-3's Motion to Dismiss.

84.    On August 1, 2018, a Clerk's Order of Dismissal was entered in Case No. 17-2-10604-6.

85.    Ms. Douglass spent time and money investigating the default judgment and underlying debt Defendants claim she owes. Ms. Douglass had to take time off work and paid bus fare to attend a legal aid clinic and later to meet with her attorney. While at the legal clinic, Ms. Douglass paid to print copies of the pleadings filed in the two cases so that she could investigate the validity of the default judgment and underlying debt.

**C.  Plaintiffs Anthony Kim, Il Kim, and Daria Kim.**

86.    From 2005 to 2007, while enrolled in the business program at St. John's University in New York City, Anthony Kim ("Anthony") took out a number of federal and private student loans, including a total of six student loans from Bank One (which later merged with JP Morgan Chase Bank) and Bank of America in the amount of $76,500.00.

87.    Anthony graduated from St. John's in 2008.

88.    On January 23, 2015, Daria Kim ("Daria,") Anthony's mother, was served with a summons for a case filed by P&F on behalf of National Collegiate Student Loan Trust 2005-2 (Snohomish County Superior Court Case No. 15-2-04465-4) against Anthony Kim and Il Kim ("Il"), Anthony's father and Daria's husband. Daria immediately informed her husband and son about the summons when she received it.

89.    Daria Kim has declared under penalty of perjury that she did not receive any

SECOND AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 15
(Case No. C18-1132 TSZ)

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98154
Phone: 206-486-1176
Fax: 206-458-6028

summonses related to the lawsuits initiated by the Defendants against the Kims individually or collectively (Snohomish County Superior Court Case No's. 15-2-03144-7, 15-2-03146-3, 15-2-04014-4, 15-2-04015-2, and 15-2-04016-1), despite the Defendants' claims to the contrary, and that she would have given all of the documents to her son if she had received any other summons.

90.     On January 31, 2015, Anthony responded to the suit for which his mother had been served by filing a Pro Se Notice of Appearance in Snohomish County Superior Court Case No. 15-2-04465-4, and delivering a copy thereof to Defendants P&F and Cheung.

91.     The Kims did not know whether NCSLTs were the true owners of their loans since they had lost track of who owned the private student loans, so they relied on the misrepresentations made by the Defendants that NCSLTs were in fact the owners of these loans.

92.     In response to the lawsuits, the Kims contacted P&F related to Snohomish County Superior Court Case No. 15-2-04465-4 in good faith to set up an arrangement with P&F to pay $50.00 a month on the alleged debt that was the subject of that case.

93.     In accord with their promise, the Kims paid $50 a month for January, February, March, April, and May 2015 while trying to work out a more permanent agreement. They were led to believe this payment plan pertained to any and all outstanding accounts with the NCSLTs.

94.     However, in June 2015, Anthony received notification that P&F had initiated garnishment proceedings against him on behalf of National Collegiate Student Loan Trusts 2005-2, 2005-3, 2006-1, and 2007-4.

95.     It was only at this time that Anthony and his parents learned of the existence of

SECOND AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 16
(Case No. C18-1132 TSZ)

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98154
Phone: 206-486-1176
Fax: 206-458-6028

the four other lawsuits that P&F had filed against them, and of the fact that P&F had obtained default judgments against them individually and collectively for each student loan without first properly serving any of them with copies of the summons and complaints for the cases.

96.　　In August 2015, the NCSLTs initiated garnishment proceedings against Daria and Il.

97.　　Before the garnishments stopped, the National Collegiate Student Loan Trust 2005-2 succeeded in garnishing Anthony's bank account in the amount of $2,182.08.

98.　　In support of their Motions and Declarations for Default and Judgment against the Kims, Defendants filed five separate "Affidavit and Verification of Account" documents sworn to by Dudley Turner.

99.　　In these affidavits, Turner declares "under penalty of perjury under the laws of the forum" that:

　　a.　TSI is the "designated Custodian of Records for Plaintiff pertaining to the Defendants' education loan(s)";

　　b.　He was "competent and authorized to testify relating to this action through personal knowledge of the business records, including the electronic data, sent to TSI that detail the education loan records";

　　c.　He had "personal knowledge of the record management practices and procedures of [the NCSLTs] and the practices and procedures [the NCSLTs] requires of its loan servicers and other agents."

100.　　Attached to Turner's affidavits for Snohomish County Superior Case No's. 15-2-04015-2 and 15-2-040161 were documents titled "Pool Supplement," which purport to document the transfer of student loans from Bank One to NCSLTs 2006-1 and 2005-3,

SECOND AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 17
(Case No. C18-1132 TSZ)

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98154
Phone: 206-486-1176
Fax: 206-458-6028

respectively, pulled from the SEC's EDGAR online archives. Both Pool Supplements state,

> In consideration of the Minimum Purchase Price, the Program Lender hereby transfers, sells, sets over and assigns to the National Collegiate Funding, LLC (the "Depositor") … each student loan set forth on the amended Schedule…. The Depositor in turn will sell the Transferred Bank One Loans to the National Collegiate Student Loan Trust ….

101.    The Pool Supplements included attachments titled "Schedule 2" and "Schedule 1," respectively. They did not contain lists of loans. They both state: "On file with the Indenture Trustee."

102.    For the other cases, Snohomish County Superior Court Case No.'s 15-2-03144-7, 15-2-03146-3, and 15-2-04014-4, the affidavits contained pool supplements for Bank One that were sold to the respective NCLST Trusts 2005-2 and 2007-4. Those pool supplements all contained references to "Schedules" for related loans, but no schedules were attached.

103.    Also attached to each of the Turner affidavits was a document titled "Deposit and Sale Agreement" for the relevant NCSLT trust (hereinafter the "Deposit and Sale Agreements").

104.    The Deposit and Sale Agreements set forth the terms under which the Seller was selling and the Purchaser was purchasing the student loans listed on the relevant numeric schedule (variously Schedule 1, Schedule 2, Schedule 3, or combinations thereof), as set forth in Schedule A of the Deposit and Sale Agreement. For each Deposit and Sale Agreement, Schedule A gave descriptions of loan types that were being sold, but not the names of individual borrowers or loan account numbers.

105.    Neither the Pool Supplements nor the Deposit Sale Agreements are mentioned in Turner's affidavits.

106.    In deposition testimony from Bradley Luke, the Senior Litigation paralegal for

SECOND AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 18
(Case No. C18-1132 TSZ)

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98154
Phone: 206-486-1176
Fax: 206-458-6028

TSI and the designated CR 30(b)(6) deponent, it was revealed that TSI does not have custody of the records and that the legal case managers who signed the affidavits in the Kim lawsuits retrieve documents from a prior loan servicer's system, American Educational Services a/k/a Pennsylvania Higher Education Assistance Agency ("AES" or "PHEAA"), for whom he is not an employee. Additionally, Mr. Luke testified that TSI does not create any new servicing records in that system while collecting on the loans.

107.    Ms. Luke also testified that AES does not retain the billing statements for the loans. Additionally, Mr. Luke testified that there was no training on the document retention policies and procedures or knowledge of the records of whomever has held custody of the documents or how they were maintained by Bank of America, Bank One, JP Morgan Chase Bank, First Marblehead Corporation, and/or National Collegiate Funding, LLC.

108.    Mr. Luke further testified that he does not know about the retention practices or the procedures about the creation of student loan agreements. He also testified that he has no knowledge as to whether the loan disclosure statement which disclosed the essential terms of the loan, including the amount to be borrowed, the interest rate and the repayment period, was mailed to or received by the Kims.

109.    Additionally, none of the Defendants have any knowledge of the actual Schedules 1, 2, and 3 that are referred to in the Pool Supplements.

110.    Defendants TSI, P&F, and Cheung have never seen or reviewed any of the Schedules and they are aware that they are lost.

111.    After the judgment was entered in case number 15-2-03144-7, Cheung sent Anthony a collection letter dated April 6, 2015, advising Anthony that the NCSLTs were willing to discuss resolution of the judgment and that it was imperative that he contact P&F.

SECOND AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 19
(Case No. C18-1132 TSZ)

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98154
Phone: 206-486-1176
Fax: 206-458-6028

112.    Cheung subsequently sent Anthony additional collection letters advising him to contact P&F to settle his account.

113.    The Kims were garnished and the garnished funds were paid into the Superior Court Registry.

114.    The Snohomish Superior Court disbursed by court order the $2,182.08 to Anthony on September 6, 2018 after the lawsuits were dismissed for want of prosecution.

115.    Anthony lost interest on the garnished funds from the date they were garnished until September 6, 2018.

116.    The Kims paid their attorney $11,540.00 to investigate and defend Defendants' collection attempts, including a review of the underlying documents, a review the court file and garnishments, litigation to vacate the default judgments and discovery to prepare a defense for trial.

**D.  NCSLTs' Collection History.**

117.    P&F and Cheung have been suing Washington consumers in Washington courts on behalf of the NCSLTs since at least 2012.

118.    In November 2014, TSI became the NCSLTs' debt collector.

119.    Acting as agents for the NCSLTs, P&F, Cheung, and TSI have obtained hundreds of default judgments against Washington consumers in Washington courts.

120.    TSI, P&F, and Cheung only collected on those accounts believed to be in default.

121.    Defendants have a common practice of obtaining judgments against Washington consumers using declarations executed by TSI employees that are filed in Washington courts that falsely claim personal knowledge of the account records and the consumer's debt, and in

SECOND AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 20
(Case No. C18-1132 TSZ)

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98154
Phone: 206-486-1176
Fax: 206-458-6028

many cases, personal knowledge of the chain of assignments establishing ownership of the loans.

122.     Acting in concert, TSI, P&F, and Cheung filed more than 2,000 debt collection lawsuits within the four years immediately preceding the filing of this lawsuit without the documentation necessary to prove NCSLTs' ownership of the loans.

123.     Notaries for the NCSLTs notarized over 25,000 affidavits throughout the country even though they did not witness the affiants' signatures. Many of these affidavits were filed with Washington state courts in furtherance of efforts to collect alleged student loan debts owned by the NCSLTs.

124.     In furtherance of the scheme to obtain default judgments, TSI feigns the existence of admissible evidence by falsely submitting materially false and misleading affidavits to state courts.

        a.     Fewer than ten TSI employees service NCSLT lawsuits for the entire country, and they sign 20 to 40 affidavits a day on average without personal knowledge of the educational loan records that would serve as the evidentiary basis for the collection of the alleged debts;

        b.     TSI's affidavits are carefully drafted to appear as if the affiants have actual knowledge of the underlying facts, when in fact the facts are based on hearsay;

        c.     In support of each affidavit filed to support a motion for default judgment, TSI's affiant swears that they are authorized and competent to testify about the alleged student loan debt through review of and "personal knowledge" of the business records, including electronic data in their possession, and that they have "personal knowledge of the

SECOND AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 21
(Case No. C18-1132 TSZ)

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98154
Phone: 206-486-1176
Fax: 206-458-6028

record management practices and procedures of the NCSLTs and the practices and procedures the NCSLTs require of its loan servicers and other agents";

d.    TSI claims to be the designated custodian of records, but on information and belief, the actual consumer loan files and loan documents are not in TSI's possession, but are rather kept with American Education Services ("AES") a/k/a Pennsylvania Higher Education Assistance Agency ("PHEAA");

e.    Defendants also knew or should have known that PHEAA's records are unreliable, since many are missing collateral documentation for the educational loans, and all of the loan files are missing assignments;

f.    The TSI employees regularly sign affidavits without reviewing any written assignment documentation showing that the individual loan accounts were actually included in the NCSLTs;

g.    The TSI affiants do not have any personal knowledge or training in the retention of the collateral loan documents, how they are kept, their custody, where they are placed, and how they are stopped from being tampered with by any of the entities who signed the documents and currently have custody of them;

h.    Defendants did not have in their possession the schedule of loans sold to the NCSLTs by the original creditor or creditors when the affidavits were signed.

125.    Defendants filed lawsuits against Washington consumers without the intent or ability to prove the claims if contested.

126.    On information and belief, Defendants filed affidavits in Washington courts attached to motions for default and motions for summary judgment that were notarized by Defendants despite the notaries not having witnessed the affiants signing the affidavits.

**E.  Consumer Financial Protection Bureau's TSI Consent Order.**

127.    The CFPB investigated the debt collections litigation practices of the Attorney

SECOND AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 22
(Case No. C18-1132 TSZ)

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98154
Phone: 206-486-1176
Fax: 206-458-6028

Network business unit of TSI.

128.    Through its investigation, the CFPB identified violations of the federal Consumer Financial Protection Act of 2010 ("CFPA"). TSI and the CFPB executed a Stipulation and consented to the entry of a Consent Order that was filed on September 18, 2017 (hereinafter the "Consent Order"), in the administrative proceeding *In the Matter of Transworld Systems, Inc.,* 2017-CFPB-0018.

129.    The Consent Order is attached hereto as Exhibit A, and is incorporated herein by this reference.

130.    The associated Stipulation and Consent to the Issuance of a Consent Order signed by Joseph Laughlin, CEO of TSI, is attached hereto as Exhibit B, and is incorporated herein by this reference.

131.    The Consent Order made numerous findings of fact. *See* Consent Order pgs. 5-9, ¶¶ 4-29.

132.    The CFPB found, through its investigation, that the TSI Affidavits violated the CFPA by doing the following:

> 33. In numerous instances, in connection with collecting or attempting to collect Debt from Consumers, [TSI] executed [TSI] Affidavits that were used by Law Firms with many of the Collections Lawsuits filed by Law Firms on behalf of the [NCSLTs] in courts across the country, and in live testimony, [TSI] represented, directly or indirectly, expressly or by implication, that:
>
> a. Affiants had personal knowledge of the account records and the Debt;
>
> b. Affiants had personal knowledge of the chain of assignment records evidencing [NCSLT] ownership of the subject loan; and
>
> c. Affiants had personal knowledge of the record management practices and procedures of the [NCSLTs] and all prior servicers.
>
> 34. In fact, … , in numerous instances, these representations were either

SECOND AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 23
(Case No. C18-1132 TSZ)

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98154
Phone: 206-486-1176
Fax: 206-458-6028

false or the Affiant did not have a basis for making the representation.

    35. The representations are material because they are likely to affect a Consumer's choice or conduct regarding how to respond to a Collections Lawsuit and are likely to mislead a Consumer acting reasonably under the circumstances.

    36. Thus, representations by Respondent, as described in Paragraphs 18-24, constitute deceptive acts or practices in violation of sections 1031(a) and 1036(a)(1)(B) of the CFPA, 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).

Consent Order pgs. 10-11, ¶¶ 33-36.

    133.    The CFPB found, through its investigation, violations of the CFPA relating to

TSI and its Attorney Network's other litigation practices:

    37. In numerous instances, in connection with collecting or attempting to collect Debt from Consumers, [TSI], acting through the Law Firms hired by [TSI] on behalf of the [NCSLTs], represented, directly or indirectly, expressly or by implication, that it could be proven in the Collections Lawsuits that the [NCSLTs] owned the loans in question and that the Consumers in question owed Debts to the [NCSLTs], if contested.

    38. In fact, in numerous instances, [TSI] lacked the complete chain of assignment documentation needed to prove [NCSLT] ownership of the subject loans and the promissory note needed to prove the existence of certain loans.

    39. The representations are material because they are likely to affect a Consumer's choice or conduct regarding how to respond to a lawsuit and are likely to mislead a Consumer acting reasonably under the circumstances.

    40. Thus, [TSI]'s representations, as described in [the facts section of the Consent Order], constitute deceptive acts or practices in violation of sections 1031(a) and 1036(a)(1)(B) of the CFPA, 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).

    41. In addition, [TSI]'s acts and practices, caused or were likely to cause substantial injuries to consumers.

    42. The injuries to consumers included, but were not limited to, all payments made, including garnishments of wages and bank accounts, to settle Debts not enforceable.

    43. The injuries to consumers were not reasonably avoidable by consumers and were not outweighed by any countervailing benefits to

SECOND AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 24
(Case No. C18-1132 TSZ)

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98154
Phone: 206-486-1176
Fax: 206-458-6028

consumers or to competition.

44. Thus, Respondent's conduct, as described in [the fact section of the Consent Order], constitutes unfair acts or practices in violation of sections 1031(c) and 1036(a)(1)(B) of the CFPA, 12 U.S.C. §§ 5531(c)(1), 5536(a)(1)(B).

Consent Order pgs. 11-12, ¶¶ 37-44; TSI Stipulation pg. 2, ¶ 6.

134. Through the TSI Stipulation, TSI waived any "right to challenge or contest the validity of the Consent Order." TSI Stipulation pg. 3-4, ¶ 9.

135. It is a violation of the Consent Order for:

a. TSI or any agent, service provider or attorneys that have notice of the Consent Order to cause law firms hired by TSI on behalf of the NCSLTs "to collect any Debt through Collection Lawsuits that [TSI] or its agents have any reason to believe may be unenforceable." Consent Order pgs. 14-15, ¶ 45(k).

b. TSI, P&F, or Cheung are "permanently restrained and prohibited from…..executing any Affidavit containing any misrepresentations, including false statements that: (i) the Affiant is familiar with or has personal knowledge of the Consumer's education loan records or the maintenance of those records; (ii) the Affiant has personal knowledge of the Consumer's debt; (iii) the Affiant has personal knowledge of the loan's chain of assignment or ownership; (iv) the Affiant has personal knowledge of the documents relating to the loan's chain of assignment or ownership; (v) the Affiant has been properly notarized….; (vi) certain documents or records …… have been reviewed by the Affiant." Consent Order pgs. 15, ¶ 45(l).

c. TSI, P&F, or Cheung to continue pending NCSLT lawsuits in which a false TSI Affidavit was filed after receiving notice of the Consent Order until TSI, P&F, or Cheung provides the court with a copy of the Consent Order and submits a notice to the court stating "Plaintiff withdraws the affidavit of [name of affiant] pursuant to Consent Order entered into by the Consumer Financial Protection Bureau and Transworld Systems, Inc." Consent

SECOND AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 25
(Case No. C18-1132 TSZ)

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98154
Phone: 206-486-1176
Fax: 206-458-6028

Order pgs. 17, ¶ 49.

        d.     TSI, P&F, and Cheung to continue garnishment, or fail to quash or withdraw a pending garnishment, in any case in which the NCSLTs obtained a judgment where a TSI Affidavit with misrepresentations was filed.

        e.     TSI, P&F, and Cheung to accept any settlement payments relating to any such collection lawsuits in which a TSI Affidavit with misrepresentations was filed.

**F. NCSLTs Agreed to a Consent Judgment with the CFPB Pursuant to Which They Would Cease Litigation and All Collection Until They Verified They Had Documentation Proving The Right to Collect on Accounts.**

136.    On September 18, 2017, the same day the Consent Order was filed, the CFPB filed a civil action for injunctive relief against the NCSLTs in the United States District Court for the District of Delaware. *Consumer Financial Protection Bureau v. The National Collegiate Master Student Loan Trust et al.*, Case No. 17-cv-01323-GMS (D. Del Sep. 18, 2017) (hereinafter the "CFPB Trust Action").

137.    The NCSLTs and the CFPB reached an agreement to enter a Consent Judgment in the CFPB Trust Action (hereinafter the "Trust Consent Judgment").

138.    A copy of the [Proposed] Trust Consent Judgment is attached hereto as Exhibit C and is incorporated herein by this reference.

139.    The Trust Consent Judgment include the following findings of fact:

        a.     "Since at least November 1, 2012, in order to collect on defaulted private student loans, Defendants' Servicers filed Collections Lawsuits on behalf of Defendants in state courts across the country."

        b.     "In support of these lawsuits, Subservicers on behalf of Defendants executed and filed affidavits that falsely claimed personal knowledge of the account records and the consumer's debt, and in in many cases, personal knowledge of the chain of assignments establishing ownership of the loans."

SECOND AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 26
(Case No. C18-1132 TSZ)

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98154
Phone: 206-486-1176
Fax: 206-458-6028

c.    "[NCSLT]s' Servicers on behalf of [NCSLTs] filed more than 2,000 debt collections lawsuits without the documentation necessary to prove [a NCSLT's] ownership of the loans or on debt that was time-barred."

d.    "Notaries for [NCSLT]s' Servicers notarized over 25,000 affidavits even though they did not witness the affiants' signatures."

e.    Entry of the "Order is in the public interest."

140.    NCSLTs waived any right to seek judicial review or otherwise challenge or contest the validity of this Order.

141.    NCSLTs also agreed to provide to all NCSLTs servicers copies of the Trust Consent Judgment within 30 days of the Trust Consent Judgment being entered on the Docket of the CFPB Trust Action.

142.    Upon the NCSLTs' delivery of the Trust Consent Judgment to the servicers of the NCSLTs, the NCSLTs were to require and ensure that all servicers and law firms acting on the NCSLTs' behalf cease initiation of collection lawsuits to collect on accounts unless:

a.    They possess a record of the complete chain of assignment from the original creditor to the specific trust claiming ownership;

b.    They possess a signed copy of the student loan contract;

c.    The statute of limitations on enforcement of the loan has not expired; and

d.    They have no reason to believe the debt may be unenforceable.

143.    Upon the NCSLTs' delivery of the Trust Consent Judgment to the servicers of the NCSLTs, the NCSLTs were to require and ensure that all servicers and law firms acting on the NCSLTs' behalf dismiss all pending collection lawsuit to collect on accounts unless:

a.    They possess a record of the complete chain of assignment from the original creditor to the specific trust claiming ownership;

b.    They possess a signed copy of the student loan contract;

SECOND AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 27
(Case No. C18-1132 TSZ)

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98154
Phone: 206-486-1176
Fax: 206-458-6028

c.        The statute of limitations on enforcement of the loan has not expired; and

d.        They have no reason to believe the debt may be unenforceable.

144.    Upon the NCSLTs' delivery of the Trust Consent Judgment to the debt collectors of the NCSLTs, the NCSLTs were to require and ensure that all debt collectors and collection law firms acting on the NCSLTs' behalf cease enforcement of any judgment obtained in a collection lawsuit to collect on accounts unless:

a.        They possess a record of the complete chain of assignment from the original creditor to the specific trust claiming ownership;

b.        They possess a signed copy of the student loan contract;

c.        The statute of limitations on enforcement of the loan has not expired; and

d.        They have no reason to believe the debt may be unenforceable.

145.    The NCSLTs, their debt collectors, and collection law firms representing the NCSLTs would also be barred under the Trust Consent Judgment from filing any false affidavits, and would be required to withdraw any affidavits they determined were false or were notarized when the notary had not witnessed the signing of the affidavit.

146.    As of the date of the filing of this Class Complaint, the Trust Consent Judgment has not been entered and multiple entities have sought to intervene in the CFPB Trust Action. Included in the list of intervenors is TSI, which has received and reviewed the proposed Trust Consent Judgment.

**G.  TSI and Attorney Networks.**

147.    TSI manages an Attorney Network that utilizes outside law firms to collect on defaulted private student loans.

148.    The collection attorneys filing collection cases, including Defendants P&F and Cheung, are part of TSI's Attorney Networks, and the alleged debts of Plaintiffs were handled through the "Attorney Network."

SECOND AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 28
(Case No. C18-1132 TSZ)

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98154
Phone: 206-486-1176
Fax: 206-458-6028

149.   Network firms are expressly informed by TSI that they are required to follow Network Attorney Standard Operating Procedures.

150.   TSI uses Network firms, including Defendant P&F and Cheung, as a collection tool, and their performance in collection is audited.

151.   TSI uses non-lawyer "performance managers" to monitor and assess the collection efficiency of accounts assigned to Network firms, including P&F and Cheung, on a weekly basis to determine the market share of accounts to assign to them.

152.   Upon review, the Network firms, including Defendant P&F and Cheung, are graded with "attorney report cards."

153.   A bad "grade" from a performance manager can lead to TSI off-boarding accounts or firing the Network firm.

**H. Defendant's Current Collection Actions In Washington.**

154.   Since entry of the TSI Consent Order on September 18, 2017:

   a.   Defendants have continued filing collection lawsuits in Washington on accounts they allege are owned by the NCSLTs.

   b.   Defendants have not voluntarily dismissed all NCSLT collection actions in Washington in which they have not verified that: (1) they have a record of the complete chain of assignment; (2) they have a copy of the signed student loan agreement; (3) the action was not time barred at the time of suit; and (4) a TSI Affidavit filed in the lawsuit was not false or misleading and was properly notarized.

   c.   Defendants have continued to file collection lawsuits where the Affiant has no personal knowledge of the Consumers' education loan records or maintenance of those records, has no personal knowledge of the Consumers' debt; has no personal knowledge of the loans' chain of assignment or ownership; or has no personal knowledge of the documents relating to the loans' chain of assignment or ownership.

SECOND AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 29
(Case No. C18-1132 TSZ)

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98154
Phone: 206-486-1176
Fax: 206-458-6028

d.      Defendants have continued to seek to enforce judgments obtained in NCSLTs suits when they have not verified that: (1) they have a record of the complete chain of assignment; (2) they have the complete student loan agreements; (3) the action was not time barred at the time of suit; and (4) a TSI Affidavit filed in the lawsuit was not false or misleading and was properly notarized.

## V.  CLASS ALLEGATIONS

155.      **Class Definition.** Pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3), Plaintiffs bring this case as a class action on behalf of the following "Class," who are

> All persons residing in Washington against whom Defendants sought to collect an alleged NCSLT loan debt, on or after four years prior to the filing of this action,

and two Subclasses thereof, defined as:

> **CPA Judgment Subclass:** All persons in the Class against whom Defendants obtained a judgment in any Washington court where a NCSLT was a Plaintiff and the judgment was obtained using a declaration of a TSI employee.

> **Post CFPB TSI Consent Order Subclass:** All persons in the Class against whom Defendants maintained or filed a lawsuit to collect an alleged debt owed to the NCSLTs after the CFPB Consent Order was entered.

156.      **Numerosity.** The Class and Subclasses are so numerous that joinder of all members is impracticable. On information and belief, there are over 300 people in the Class.

157.      **Commonality.** There exist questions of law and fact common to Plaintiffs and the proposed Class and Subclasses, including but not limited to:

a.      Whether Defendants have a standard practice of filing and maintaining lawsuits, and obtaining judgments in favor of the NCSLTs and against Washington residents, without proof that the loan they are suing on was assigned to or owned by the NCSLTs;

SECOND AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 30
(Case No. C18-1132 TSZ)

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98154
Phone: 206-486-1176
Fax: 206-458-6028

b.      Whether Defendants sue Washington residents without standing or proof of ownership or assignment of ownership of the specific debt each Washington consumer is being sued upon;

c.      Whether Defendants had sufficient evidence of the existence of the alleged NCSLT education debts when they negotiated settlements or obtained default judgments against Washington consumers;

d.      Whether Defendants engaged in unfair or deceptive business practices when they filed lawsuits without proof that the NCSLTs they were representing had proof of assignment entitling them to collect on the alleged debts;

e.      Whether Defendants are filing lawsuits on behalf of NCSLTs knowing that they lack the necessary paperwork and proof to complete or try the case and are filing the lawsuits to obtain defaults on or settlements of the claims;

f.      Whether Defendants have a standard practice of filing affidavits they know or believe to be false and misleading in an attempt to obtain judgments against Washington residents;

g.      Whether, by maintaining collection lawsuits in Washington when the Defendants did not have both complete chain of title and a signed copy of the loan agreement, the Defendants committed unfair or deceptive practices in trade or commerce that affect the public interest and which causes injury to Washington consumers' personal property or business, and therefore violate the WCPA;

h.      Whether Defendants violated the FDCPA by filing false or misleading affidavits in Washington courts and thereby committed *per se* violations of the WCPA;

i.      Whether Defendants violated the WCPA by filing false or misleading

SECOND AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 31
(Case No. C18-1132 TSZ)

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98154
Phone: 206-486-1176
Fax: 206-458-6028

affidavits in Washington courts;

        j.     Whether Defendants P&F and Cheung violated their duty of candor to tribunals when they filed lawsuits on behalf of NCSLTs knowing that the NCSLTs did not have the schedule of loans transferred to the NCSLTs and therefore could not prove the loans sued upon were owned by the NCSLTs;

        k.     Whether Defendants P&F and Cheung violated the WCPA when they attempted to collect debts for the NCSLTs and TSI knowing that TSI and the NCSLTs did not have the schedule of loans that P&F and Cheung were attempting to collect upon and could not prove assignment of the debts.

        l.     Whether Defendants P&F and Cheung engaged in unfair or deceptive practices in their business of debt collection outside their litigation activities.

        m.     Whether Defendants engaged in unfair or deceptive practices in violation of the WCPA; and

        n.     The nature and extent of classwide injury and the measure of compensation for such injury.

    158.   **Typicality**. The claims of Plaintiffs are typical of the claims of the Class and Subclasses. They arise out of the same common course of conduct by Defendants and are based on the same legal and remedial theories. The collection actions that Defendants engaged in against Washington consumers that make up the Class and Subclasses are the same collection actions Defendant engaged in against the Plaintiffs. Defendants maintained NCSLT collection lawsuits or sought to enforce judgments obtained in NCSLT lawsuits from all Plaintiffs and Class members. Defendants filed a TSI Affidavit in each and every action it maintained against Plaintiffs and Class members during the Class period.

SECOND AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 32
(Case No. C18-1132 TSZ)

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98154
Phone: 206-486-1176
Fax: 206-458-6028

159. **Adequacy of Representation**. Plaintiffs are appropriate representatives for the Class and Subclasses and will fairly and adequately protect the interests of the Class and Subclasses. Plaintiffs understand and are willing to undertake the responsibilities of acting in a representative capacity on behalf of the proposed Class and Subclasses. Plaintiffs will fairly and adequately protect the interests of the Class and Subclasses and have no interests that directly conflict with interests of the Classes. Plaintiffs have retained competent and capable attorneys who are experienced trial lawyers with experience in complex and class action litigation, including consumer class actions. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Class and Subclasses and have the financial resources to do so.

160. **Predominance.** Defendants have a standard practice of maintaining lawsuits like those maintained against the Plaintiffs and the Class, and Defendants have a standard practice of filing TSI Affidavits like the ones filed in cases against the Plaintiffs and the Class. The common issues arising from this conduct predominate over any individual issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

161. **Superiority**. Plaintiffs and members of the Class and Subclasses have suffered harm and damages as a result of Defendants' unlawful and wrongful conduct. Absent a class action, however, most Class members likely would find the cost of litigating their claims prohibitive. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. The members of the Class and Subclasses are readily identifiable from Defendants' records, and there will be no

SECOND AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 33
(Case No. C18-1132 TSZ)

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98154
Phone: 206-486-1176
Fax: 206-458-6028

significant difficulty in the management of this case as a class action.

162.    **Injunctive Relief**. Defendants' conduct is uniform to all members of the Class and Subclasses. Defendants have acted or refused to act on grounds that apply generally to the Class and Subclasses, so that final injunctive relief or declaratory relief is appropriate with respect to the Class and Subclasses as a whole.

163.    Accordingly, class certification of the Class and Subclasses is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3).

## VI.  CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

**VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT,
15 U.S.C. § 1692 *et seq.*, *PER SE* VIOLATIONS OF
WASHINGTON'S CONSUMER PROTECTION ACT
(Against Defendants TSI, P&F, and Cheung)**

164.    Plaintiffs re-allege and incorporate by reference all of the preceding paragraphs as though fully stated herein.

165.    Defendants' violations of the FDCPA include, but are not necessarily limited to, the following:

**A.    False, Deceptive, or Misleading Representations.**

166.    Pursuant to 15 U.S.C. §§ 1692e(2)(a) and 1692e(10), the FDCPA prohibits debt collectors from making false representations of the character, amount, or legal status of any debt and from using any false representation or deceptive means to collect or attempt to collect any debt or obtain information concerning a consumer.

167.    Defendants violated 15 U.S.C. § 1692e and 15 U.S.C. § 1692e(10) by making false, deceptive, and misleading representations to debtors and Washington courts concerning

SECOND AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 34
(Case No. C18-1132 TSZ)

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98154
Phone: 206-486-1176
Fax: 206-458-6028

the documents they possessed or reviewed that allegedly showed that the NCSLTs were entitled to collect on student loan debt.

**B.**      **Unfair or Unconscionable Means to Collect or Attempt to Collect on a Debt.**

168.      Pursuant to 15 U.S.C. § 1692f, the FDCPA generally prohibits debt collectors from engaging in "any unfair or unconscionable means to collect or attempt to collect the alleged debt."

169.      Defendants violated 15 U.S.C. § 1692f by filing and sending as verification of debt TSI employee affidavits that were misleading or false in order to obtain debt settlements, default judgments, and summary judgments;

170.      Defendants' conduct in violation of the FDCPA caused and proximately caused injury and damages to Plaintiffs and Class members.

171.      In RCW 19.86.020, the WCPA provides that "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

172.      A WCPA claim consists of the following elements: (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; and (5) causation.

173.      The FDCPA violations are *per se* violations of the WCPA. Defendants' unfair and deceptive acts and practices repeatedly occurred in trade and commerce, were capable of deceiving a substantial portion of the public, and have already injured many hundreds, if not thousands, of Washington residents.

174.      Defendants' wrongdoing is continuing in nature and represents an ongoing threat to Plaintiffs and Class members.

SECOND AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 35
(Case No. C18-1132 TSZ)

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98154
Phone: 206-486-1176
Fax: 206-458-6028

175.    Plaintiffs and Class members will suffer continuing, immediate, and irreparable injury absent the issuance of injunctive and equitable relief.

176.    Plaintiffs and Class members do not individually have a complete, speedy, and adequate remedy at law with respect to Defendants' continuing misconduct.

177.    Preliminary and injunctive relief is necessary to prevent further injury to Plaintiffs and Class members.

178.    Defendants' conduct in violation of the WCPA has proximately caused and continues to cause injury to Plaintiffs and Class members in their business or property.

179.    Plaintiffs and Class members are entitled to recover compensatory, special, and general damages as allowed by law.

180.    Plaintiffs and the Class are entitled to recover treble damages, attorneys' fees, and costs pursuant to RCW 19.86.090.

## SECOND CLAIM FOR RELIEF

### VIOLATIONS OF WASHINGTON'S CONSUMER PROTECTION ACT, RCW 19.86 *et seq.*
### (Against All Defendants)

181.    Plaintiffs re-allege and incorporate by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

182.    Defendants are "persons" within the meaning of the WCPA, RCW 19.86.010(1) and conduct "trade" and "commerce" within the meaning of the WCPA, RCW 19.86.010(2).

183.    Plaintiffs and Class members are "persons" within the meaning of the WCPA. RCW 19.86.010(1).

184.    Defendants' actions described herein were unfair or deceptive acts or practices occurring in trade or commerce, and were capable of injuring a substantial number of

SECOND AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 36
(Case No. C18-1132 TSZ)

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98154
Phone: 206-486-1176
Fax: 206-458-6028

Washington consumers. The unfair and deceptive acts include the following:

        a.    Filing and/or sending Class members, including Plaintiffs, false and misleading affidavits in the attempted collection of debts;

        b.    Entering into a Consent Order with the CFPB whereby Defendants agreed to discontinue collection on NCSLT accounts until which time Defendants could audit their records to determine collectability of accounts, but nevertheless continuing to collect on NCSLT accounts without performing the audit or determining the collectability of accounts;

        c.    Knowingly filing false affidavits in Washington courts; and

        d.    Taking all other actions described herein that violate applicable collection laws.

185.    Defendants' actions proximately caused and continue to cause injury to Plaintiffs and Class members in their business or property, which has damaged Plaintiffs and Class members.

186.    Defendants' actions warrant an injunction to protect Plaintiffs and other Washington consumers from similar harm.

## VII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that judgment be entered against Defendants:

1.    For an order certifying the identified Class and Subclasses pursuant to Fed. R. Civ. P. 23(b)(2) and/or 23(b)(3), with Plaintiffs as the Class Representatives and the undersigned as Class Counsel;

2.    For an injunction preventing Defendants from all future collection attempts upon the alleged NCSLT loan debts of Plaintiffs and Class members, pursuant to RCW 19.86.090;

3.    For actual and compensatory damages pursuant to RCW 19.86, *et seq.* in an

SECOND AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 37
(Case No. C18-1132 TSZ)

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98154
Phone: 206-486-1176
Fax: 206-458-6028

1 | amount to be proven at trial, but no less than the sum of all amounts that Defendants have

2 | collected on judgments or claims against Class and Subclass members;

3 |     5.     For treble damages, pursuant to RCW 19.86 *et. seq.*;

4 |     6.     For costs and reasonable attorney's fees in an amount to be proven at trial,

5 | pursuant to RCW 19.86.090 and as otherwise allowed by law;

6 |     7.     For an award of pre-judgment and post-judgment interest at the highest

7 |
8 | allowable rate on all liquidated sums awarded to Plaintiffs and the Class and Subclasses as

9 | damages;

10 |     8.     For leave to conform the pleadings to the proof presented at trial; and

11 |     9.     For such other relief as the Court deems justice and equitable.

12 |     DATED this 7th day of July, 2020.

13 | **Attorneys for Plaintiffs:**

14 |
15 | LEONARD LAW                                    BERRY & BECKETT, PLLP

16 | */s/Sam Leonard*                              */s/ Guy Beckett*
     Sam Leonard, WSBA #46498                     Guy W. Beckett, WSBA #14939
17 | 1001 4th Ave, Suite 3200                      1708 Bellevue Avenue
     Seattle, Washington  98154                   Seattle, WA  98122
18 | Telephone:  (206) 486-1176                    Telephone:  (206) 441-5444
     Facsimile:  (206) 458-6028                   Facsimile:  (206) 838-6346
19 | E-mail:  sam@seattledebtdefense.com           E-mail:  gbeckett@beckettlaw.com

20 |
21 | HENRY & DeGRAAF, P.S.                          NORTHWEST CONSUMER LAW CENTER

22 | */s/ Christina L Henry*                        */s/ Amanda Martin*
     Christina L. Henry, WSBA #31273               Amanda N. Martin, WSBA #49581
23 | 787 Maynard Ave S.                             936 North 34th Street, Suite 300
     Seattle, WA 98104                             Seattle, WA 98103
24 | Telephone:  (206) 330-0595                     Telephone:  (206) 805-0989
     Facsimile:  (206) 400-7609                    Facsimile:  (206) 805-1716
25 | E-mail:  chenry@HDM-legal.com                  E-mail:  Amanda@NWCLC.org

26 |

27 | SECOND AMENDED CLASS COMPLAINT                         Leonard Law
     FOR INJUNCTIVE RELIEF AND DAMAGES FOR            1001 4th Ave, Suite 3200
     VIOLATIONS OF THE WASHINGTON CONSUMER            Seattle, Washington 98154
     PROTECTION ACT - 38                              Phone: 206-486-1176
     (Case No. C18-1132 TSZ)                          Fax: 206-458-6028

# EX. A

## UNITED STATES OF AMERICA
## CONSUMER FINANCIAL PROTECTION BUREAU

ADMINISTRATIVE PROCEEDING File
2017-CFPB-0018

In the Matter of:

TRANSWORLD SYSTEMS, INC.

**CONSENT ORDER**

## I.
### Overview

The Consumer Financial Protection Bureau (Bureau) has reviewed the debt collections litigation practices of the Attorney Network business unit of Transworld Systems, Inc. ("TSI") ("Respondent"), the agent and Service Provider for fifteen (15) Delaware statutory trusts referred to as the National Collegiate Student Loan Trusts ("NCSLTs", or "the Trusts", which are the National Collegiate Master Student Loan Trust, NCSLT 2003-1, NCSLT 2004-1, NCSLT 2004-2, NCSLT 2005-1, NCSLT 2005-2, NCSLT 2005-3, NCSLT 2006-1, NCSLT 2006-2, NCSLT 2006-3, NCSLT 2006-4, NCSLT 2007-1, NCSLT 2007-2, NCSLT 2007-3, and NCSLT 2007-4), and has identified violations of sections 1031(a) and 1036(a)(1) of the Consumer Financial Protection Act of 2010 (CFPA). Under sections 1053 and 1055 of the CFPA, 12 U.S.C. §§ 5563, 5565, the Bureau issues this Consent Order (Consent Order).

To collect on defaulted private student loans, Law Firms engaged by Respondent's Attorney Network business unit filed debt Collections Lawsuits in state

1


**EX A**

courts across the country on behalf of the Trusts. In support of many of these lawsuits, Respondent executed affidavits that falsely claimed personal knowledge of the account records and the consumer's debt, and in many cases, personal knowledge of the chain of assignments establishing ownership of the loans. In addition, since November 1, 2014, Law Firms hired by Respondent filed hundreds of debt Collections Lawsuits without the documentation necessary to prove Trust ownership of the loans.

## II

## Jurisdiction

1.    The Bureau has jurisdiction over this matter under sections 1053 and 1055 of the CFPA, 12 U.S.C. §§ 5563, 5565.

## III
## Stipulation

2.    Respondent has executed a "Stipulation and Consent to the Issuance of a Consent Order," dated September 14, 2017 (Stipulation), which is incorporated by reference and is accepted by the Bureau. By this Stipulation, Respondent has consented to the issuance of this Consent Order by the Bureau under sections 1053 and 1055 of the CFPA, 12 U.S.C. §§ 5563, 5565, without admitting or denying any of the findings of fact or conclusions of law, except that Respondent admits the facts necessary to establish the Bureau's jurisdiction over Respondent and the subject matter of this action.

## IV
## Definitions

2

**EX A**

Case 3:20-cv-00680-DGE  Document 144-1  Filed 06/16/23  Page 43 of 118
Case 2:18-cv-01132-TSZ  Document 61  Filed 07/04/20  Page 42 of 117

2017-CFPB-0018     Document 1     Filed 09/18/2017     Page 3 of 32

3.      The following definitions apply to this Consent Order:

a.   "Affiant" means any signatory to an Affidavit, signing in his or her capacity as
     an employee or agent of Respondent, but excluding one signing solely as a
     notary or witness to the act of signing.

b.   "Affidavit" means any sworn statement filed with a court in connection with a
     Collections Lawsuit.

c.   "Board" means TSI's duly elected and acting Board of Directors.

d.   "Clearly and Prominently" means:

        i.   as to written information: written in a type size and location sufficient
             for an ordinary consumer to read and comprehend it, and disclosed in
             a manner that would be easily recognizable and understandable in
             language and syntax to an ordinary consumer; if the information is
             contained in a multi-page print document, the disclosure appears on
             the first page.

       ii.   as to information presented orally: spoken and disclosed in a volume,
             cadence, and syntax sufficient for an ordinary consumer to hear and
             comprehend.

e.   "Collections Lawsuits" means attempts by a Law Firm engaged by
     Respondent's Attorney Network business unit, for an account owned or
     alleged to be owned by a Trust, through judicial processes in the United States
     of America, to collect or establish a Consumer's liability for a Debt.

f.   "Consumer" means any natural person obligated or allegedly obligated to pay
     any Debt.

3

**EX A**

g. "Debt" means any obligation or alleged obligation of a Consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

h. "Effective Date" means the date on which the Consent Order is issued.

i. "Enforcement Director" means the Assistant Director of the Office of Enforcement for the Consumer Financial Protection Bureau, or his/her delegate.

j. "Law Firm" means a law firm engaged by Respondent's Attorney Network business unit to collect student loan Debt on behalf of the National Collegiate Student Loan Trusts.

k. "Regional Director" means the Regional Director for the Northeast Region for the Office of Supervision for the Consumer Financial Protection Bureau, or his/her delegate.

l. "Related Consumer Action" means a private action by or on behalf of one or more consumers or an enforcement action by another governmental agency brought against Respondent based on substantially the same facts as described in Section V of this Consent Order.

m. "Relevant Period" includes the period from November 1, 2014 to April 25, 2016.

n. "Respondent" means Transworld Systems, Inc., and its successors and assigns.

**EX A**

o. "Service Providers" means any service provider, as defined in section 1002(26) of the CFPA, 12 U.S.C. § 5481, that provides or provided services with respect to the servicing of the student loans owned by a NCSLT.

## V.

## Bureau Findings and Conclusions

The Bureau finds the following:

4.  The National Collegiate Student Loan Trusts ("NCSLTs" or "the Trusts") comprise fifteen (15) Delaware statutory trusts created between 2001 and 2007. The basic purpose of each Trust is to acquire a pool of student loans, enter into the so-called trust-related agreements, and provide for the administration of the Trusts and the servicing of student loans.

5.  The Trusts do not have any employees and all actions taken by the Trusts in connection with loan servicing and collecting Debt are carried out by third parties.

6.  Debt-collection activities on behalf of the Trusts are carried out by the successor special servicer's sub-servicer pursuant to servicing agreements with the successor special servicer.

7.  Sub-servicers that executed and notarized the deceptive affidavits did so as Service Providers and agents of the Trusts.

8.  Law Firms that filed lawsuits on behalf of the Trusts did so as Service Providers and agents of the Trusts.

5

**EX A**

Case 3:20-cv-00680-DGS Document 144-1 Filed 06/16/23 Page 46 of 118
Case 2:18-cv-01132-TSZ Document 61-1 Filed 07/24/23 Page 45 of 117

2017-CFPB-0018    Document 1    Filed 09/18/2017    Page 6 of 32

9.     Respondent Transworld Systems, Inc. (TSI) is incorporated under the laws
       of the State of California and maintains a principal place of business in Ft.
       Washington, Pennsylvania.

10.    TSI maintains an office in Peachtree Corners, Georgia, where its employees
       execute and notarize affidavits for Collections Lawsuits brought on behalf of
       the Trusts.

11.    A national network of Law Firms engaged by Respondent file and prosecute
       Collections Lawsuits on behalf of the Trusts in courts across the country.

12.    TSI has operated as the successor sub-servicer to the successor special
       servicer of the Trusts since November 1, 2014.

13.    TSI is a "covered person" under 12 U.S.C. § 5481(6) because it is engaged in
       the collection of debt and is a Service Provider. 12 U.S.C. § 5481(15)(A)(x),
       (26).

14.    TSI is an agent and Service Provider of the Trusts.

### FALSE AND MISLEADING AFFIDAVITS AND TESTIMONY

15.    In connection with collecting or attempting to collect Debt from Consumers,
       between November 1, 2014 and April 25, 2016, Law Firms hired by
       Respondent on behalf of the Trusts initiated 37,689 Collections Lawsuits in
       courts across the country on behalf of the Trusts.

16.    In support of the Collections Lawsuits, Law Firms submitted Affidavits
       executed by Respondent and documents in support of the Trusts' claims
       that Consumers owed Debts to a Trust.

17.    Respondent executed and notarized Affidavits–often with attached
       exhibits–that were used by Law Firms in many of the Collections Lawsuits

6


**EX A**

Case 3:20-cv-00680-DGE Document 144-1 Filed 06/10/23 Page 47 of 118
Case 2:18-cv-01132-GSZ Document 61 Filed 07/04/20 Page 46 of 117

2017-CFPB-0018    Document 1    Filed 09/18/2017    Page 7 of 32

brought on behalf of the Trusts between November 1, 2014 and April 25, 2016.

18.    In these Affidavits, the Affiants swore that they had personal knowledge of the education loan records evidencing the Debt. In fact, in numerous instances, Affiants lacked personal knowledge of the education loan records evidencing the Debt when they executed the Affidavits.

19.    The Affiants also asserted that they were authorized and competent to testify about the Consumers' Debts through review of and "personal knowledge" of the business records, including electronic data in their possession. In fact, in certain instances, Affiants lacked personal knowledge of the business records, including the electronic data, showing that Consumers owed Debts to the Trusts. Affiants were instructed to review certain data on a computer screen as part of an effort to verify some information in the Affidavits about the Debts. Affiants, however, did not always know the source of the data on that screen, how the data was obtained or maintained, whether it was accurate, or whether that data meant that the Debt was in fact owed to the Trusts.

20.    Each Affiant also swore that he/she had "personal knowledge of the record management practices and procedures of Plaintiff [the Trust] and the practices and procedures Plaintiff requires of its loan servicers and other agents." In fact, certain Affiants lacked personal knowledge of the record management practices and procedures of the Trusts and the practices and procedures the Trusts required of its loan servicers and other agents.

7

**EX A**

Case 3:20-cv-00680-DGE  Document 44-1 Filed 06/16/23  Page 48 of 118
Case 2:18-cv-01132-TSZ  Document 61 Filed 07/04/20  Page 48 of 118

2017-CFPB-0018    Document 1    Filed 09/18/2017    Page 8 of 32

21.    In many Affidavits, the Affiants also stated that "I have reviewed the chain of title records as business records" regarding the relevant account. In some cases, Affiants did not possess the chain of title records but reviewed "chain of title" records that were found online on a government portal maintained by the Securities and Exchange Commission. In numerous instances, Affiants did not review the chain of title records prior to executing the Affidavits.

22.    In certain Affidavits, the Affiants asserted that they had personal knowledge that the loans were transferred, sold, and assigned to the plaintiff Trusts on dates certain. In fact, in numerous instances, Affiants lacked personal knowledge of the chain of assignment records necessary to prove that the relevant Trust owned the subject loans.

23.    In some instances, certain Affiants complained to supervisors that they did not have personal knowledge of the representations made in the Affidavits. These affiants continued to execute Affidavits, however, for fear of losing their jobs.

24.    Affiants also provided live testimony in court, purportedly based on personal knowledge, similar to the statements made in the Affidavits as described in Paragraphs 18-22.

### FILING LAWSUITS WITHOUT THE INTENT OR ABILITY TO PROVE THE CLAIMS, IF CONTESTED

25.    From November 1, 2014 to April 25, 2016, on behalf of the Trusts, Law Firms filed numerous Collections Lawsuits against Consumers even though

**EX A**

Case 3:20-cv-00680-DGE Document 144-1 Filed 06/16/23 Page 49 of 118
Case 2:18-cv-01132-TSZ Document 61-1 Filed 07/07/20 Page 48 of 117

2017-CFPB-0018    Document 1    Filed 09/18/2017    Page 9 of 32

the complete documentation needed to prove that the Trusts owned the loans did not exist.

26. In these lawsuits, documentation of a complete chain of assignment evidencing that the subject loan was transferred to and owned by the Trust was lacking.

27. In addition, Law Firms hired by Respondent on behalf of the Trusts filed numerous Collections Lawsuits where the loans in question were disbursed to the Consumers after the loans allegedly were transferred to the Trusts according to the chain of assignment documents.

28. On numerous occasions, Law Firms hired by Respondent filed Collections Lawsuits even though the promissory note to prove that a Debt was owed did not exist.

29. For each Collections Lawsuit described in Paragraphs 25-28, Law Firms hired by Respondent could not prove that a Debt was owed to the Trusts, if contested.

**Violations of the Consumer Financial Protection Act**

30. Covered persons are prohibited from engaging "in any unfair, deceptive, or abusive act or practice" in violation of the CFPA. 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).

31. An act or practice is deceptive under the CFPA if it involves a material representation or omission that misleads, or is likely to mislead, a consumer acting reasonably under the circumstances.

32. An act or practice is unfair if "(A) the act or practice causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by

**EX A**

consumers; and (B) such substantial injury is not outweighed by
countervailing benefits to consumers or competition." 12 U.S.C.
§ 5531(c)(1).

## FALSE AND MISLEADING COLLECTION AFFIDAVITS AND TESTIMONY

33.    In numerous instances, in connection with collecting or attempting to
collect Debt from Consumers, Respondent executed Affidavits that were
used by Law Firms with many of the Collections Lawsuits filed by Law
Firms on behalf of the Trusts in courts across the country, and in live
testimony, Respondent represented, directly or indirectly, expressly or by
implication, that:

    a.  Affiants had personal knowledge of the account records and the Debt;

    b.  Affiants had personal knowledge of the chain of assignment records
evidencing Trust ownership of the subject loan; and

    c.  Affiants had personal knowledge of the record management practices
and procedures of the Trusts and all prior servicers.

34.    In fact, as described in Paragraphs 18 to 24, in numerous instances, these
representations were either false or the Affiant did not have a basis for
making the representation.

35.    The representations are material because they are likely to affect a
Consumer's choice or conduct regarding how to respond to a Collections
Lawsuit and are likely to mislead a Consumer acting reasonably under the
circumstances.



36.    Thus, representations by Respondent, as described in Paragraphs 18-24,

constitute deceptive acts or practices in violation of sections 1031(a) and

1036(a)(1)(B) of the CFPA, 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).

## FILING LAWSUITS WITHOUT THE INTENT OR ABILITY TO PROVE THE CLAIMS, IF CONTESTED

37.    In numerous instances, in connection with collecting or attempting to

collect Debt from Consumers, Respondent, acting through the Law Firms

hired by Respondent on behalf of the Trusts, represented, directly or

indirectly, expressly or by implication, that it could be proven in the

Collections Lawsuits that the Trusts owned the loans in question and that

the Consumers in question owed Debts to the Trusts, if contested.

38.    In fact, in numerous instances, Respondent lacked the complete chain of

assignment documentation needed to prove Trust ownership of the subject

loans and the promissory note needed to prove the existence of certain

loans.

39.    The representations are material because they are likely to affect a

Consumer's choice or conduct regarding how to respond to a lawsuit and

are likely to mislead a Consumer acting reasonably under the

circumstances.

40.    Thus, Respondent's representations, as described in Paragraphs 25-29,

constitute deceptive acts or practices in violation of sections 1031(a) and

1036(a)(1)(B) of the CFPA, 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).

41.    In addition, Respondent's acts and practices, caused or were likely to cause

substantial injuries to consumers.

11

**EX A**

42.  The injuries to consumers included, but were not limited to, all payments made, including garnishments of wages and bank accounts, to settle Debts not enforceable.

43.  The injuries to consumers were not reasonably avoidable by consumers and were not outweighed by any countervailing benefits to consumers or to competition.

44.  Thus, Respondent's conduct, as described in Paragraph 25-29, constitutes unfair acts or practices in violation of sections 1031(c) and 1036(a)(1)(B) of the CFPA, 12 U.S.C. §§ 5531(c)(1), 5536(a)(1)(B).

## ORDER
## VI
## Conduct Provisions

**IT IS ORDERED**, under sections 1053 and 1055 of the CFPA, that:

45.  Respondent and its officers, Service Providers, agents, servants, employees, and attorneys who have actual notice of this Consent Order, whether acting directly or indirectly, may not violate sections 1031 and 1036 of the CFPA, 12 U.S.C. §§ 5531, 5536, and must take the following affirmative actions:

   a.  Respondent shall take all actions necessary to comply with the terms of the Consent Order.

   b.  Respondent must require that any Law Firm it retains in connection with the collection of student loans owned by the Trusts agree to abide by the terms and conditions of the Consent Order.

   c.  Within ninety (90) days of the Effective Date, Respondent must identify all Collections Lawsuits that were filed between November 1,



Case 3:20-cv-00680-DGE Document 144-1 Filed 06/10/23 Page 53 of 118
Case 2:18-cv-01132-TSZ Document 61 Filed 07/07/20 Page 53 of 118

2017-CFPB-0018   Document 1   Filed 09/18/2017   Page 13 of 32

2014 and the Effective Date and that are missing the documentation described in subsection (f)(i)and (ii) of this Paragraph.

d. Within ninety (90) days of the Effective Date, Respondent must identify all Collections Lawsuits that were filed seeking Debt outside the statute of limitations and provide this information to the successor special servicer or any other Service Provider of the Trusts.

e. Within one-hundred twenty (120) days of the Effective Date, Respondent must provide to the successor special servicer and to the Bureau for each Consumer named in the suits identified in Paragraph 45c and 45d: the Consumer's name, all available contact information for the Consumer (including information in the possession of the attorneys who filed the suit), and the total amount of all payments made by the Consumer on or after the date on which the suit was filed.

f. Respondent and its officers, agents, Service Providers, servants, employees, and attorneys who have actual notice of this Consent Order, whether acting directly or indirectly, may not initiate a Collections Lawsuit to collect Debt unless Respondent possesses:

i. the documentation necessary to prove that a Trust owns the loan, including but not limited to, documentation reflecting the complete chain of assignment from the Debt's originator to the specific Trust claiming ownership; and

ii. a document signed by the Consumer, such as a promissory note, evidencing the agreement to pay the loan forming the basis of the Debt.

13



Case 3:20-cv-00680-DGE Document 144-1 Filed 06/16/23 Page 54 of 118
Case 2:18-cv-01132-TSZ Document 64-1 Filed 07/06/20 Page 56 of 117

2017-CFPB-0018    Document 1    Filed 09/18/2017    Page 14 of 32

g.  Respondent and its officers, agents, Service Providers, servants, employees, and attorneys who have actual notice of this Consent Order, whether acting directly or indirectly, may not cause Law Firms hired by Respondent on behalf of the Trusts to initiate a Collections Lawsuit to collect on a loan for which the applicable statute of limitations has expired.

h.  Respondent shall establish written policies requiring Law Firms to confirm that the applicable statute of limitations has not expired at the time of the filing of the Collections Lawsuit;

i.  Respondent shall require Law Firms to provide a quarterly report to Respondent that includes, for each Collections Lawsuit, any data relevant to determining the applicable statute of limitations, such as date of lawsuit, date of default, and date of last payment, as well as identifies any lawsuits in which a consumer alleges in his pleadings that the lawsuit was filed outside the statute of limitations.

j.  Respondent shall not collect any Debt through a Collections Lawsuit that Respondent knows or learns was filed outside the statute of limitations, and if any such cases are pending, Respondent shall seek the immediate withdrawal or dismissal of the lawsuit.

k.  Respondent and its officers, agents, Service Providers, servants, employees, and attorneys who have actual notice of this Consent Order, whether acting directly or indirectly, may not cause Law Firms hired by Respondent on behalf of the Trusts to collect any Debt through

EX A

Case 3:20-cv-00603-DGE Document 44-1 Filed 06/16/23 Page 55 of 118
Case 2:18-cv-01132-TSZ Document 64-1 Filed 07/04/20 Pages 5 of 11

2017-CFPB-0018     Document 1     Filed 09/18/2017     Page 15 of 32

Collections Lawsuits that Respondent or its agents have any reason to believe may be unenforceable.

l.  Respondent, its officers, agents, Service Providers, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Consent Order, whether acting directly or indirectly, are permanently restrained and prohibited from, in connection with the collection of a Debt, executing any Affidavit containing any misrepresentations, including false statements that:

i.  the Affiant is familiar with or has personal knowledge of the Consumer's education loan records or the maintenance of those records;

ii.  the Affiant has personal knowledge of the Consumer's debt;

iii.  the Affiant has personal knowledge of the loan's chain of assignment or ownership;

iv.  the Affiant has personal knowledge of the documents relating to the loan's chain of assignment or ownership;

v.  the Affidavit has been properly notarized if the Affidavit was not executed in the presence of a notary or if the notarization was otherwise not compliant with applicable notary laws; or

vi.  certain documents or records concerning the Debt forming the basis of the Collections Lawsuit have been reviewed by the Affiant.

46.  Respondent, its officers, agents, Service Providers, servants, employees, and attorneys, and all other persons in active concert or participation with any

**EX A**

Case 3:20-cv-00680-DGE Document 144-1 Filed 06/16/23 Page 56 of 118
Case 2:18-cv-01132-TSZ Document 64-1 Filed 07/07/20 Page 56 of 118

2017-CFPB-0018     Document 1     Filed 09/18/2017     Page 16 of 32

of them, who receive actual notice of this Consent Order, whether acting directly or indirectly, are permanently restrained and prohibited from, in connection with the collection of a Debt, providing any testimony that contains any misrepresentations, including false statements that the witness:

    a.  is familiar with or has personal knowledge of the Consumer's education loan records or the maintenance of those records;

    b.  has personal knowledge of the Consumer's debt;

    c.  has personal knowledge of the loan's chain of assignment or ownership; or

    d.  has personal knowledge of the documents relating to the loan's chain of assignment or ownership.

47.   If Respondent determines that it engages in any conduct prohibited by this Order, including but not limited to Paragraphs 45-46 of this Order, Respondent promptly will take the necessary steps to ensure that it ceases any and all practices that violate this Order.

48.   Within ten (10) days of making the determination described in Paragraph 47 Respondent must submit to the Regional Director a report detailing (a) the practices that violate the Order, (b) the specific agents engaged in the practices in question, and (c) a plan to ensure that the practices cease and to remediate any harm resulting from the practices.

49.   With regard to pending Collections Lawsuits filed by a Law Firm in which Respondent executed an Affidavit that was filed in support of the pending Collection Lawsuit and that contains any misrepresentations—including but

16

**EX A**

Case 3:20-cv-00680-DGE Document 144-1 Filed 06/16/23 Page 57 of 118
Case 2:18-cv-01132-TSZ Document 61 Filed 07/04/20 Page 56 of 117

2017-CFPB-0018    Document 1    Filed 09/18/2017    Page 17 of 32

not limited to false statements that the Affiant: (1) is familiar with or has personal knowledge of the Consumer's education loan records or the maintenance of those records, (2) has personal knowledge of the consumer's indebtedness, (3) has personal knowledge of the loan's chain of assignment or ownership, (4) has personal knowledge about the maintenance of documents relating to the loan's chain of assignment or ownership, or (5) has attached as an exhibit a true and correct copy of a document—Respondent shall take the steps necessary, including getting permission from the successor special servicer, to direct Law Firms acting on behalf of the Trusts to withdraw such Affidavit unless the Trusts dismiss the suit in which the Affidavit was filed. Respondent shall take the steps necessary, including getting permission from the successor special servicer, to direct Law Firms acting on behalf of the Trusts to notify the court of the following in writing and must also simultaneously provide the court with a copy of the Consent Order entered into between the Bureau and the Respondent: "Plaintiff withdraws the affidavit of [insert name of Affiant] pursuant to Consent Order entered into by the Consumer Financial Protection Bureau and Transworld Systems, Inc."

50.    With regard to Collections Lawsuits that were filed in which Respondent executed an Affidavit that was filed with a court or in arbitration, and a judgment was entered, that contained any misrepresentations—including but not limited to false statements that the Affiant: (1) is familiar with or has personal knowledge of the Consumer's education loan records or the maintenance of those records, (2) has personal knowledge of the

**EX A**

Consumer's indebtedness, (3) has personal knowledge of the loan's chain of assignment or ownership, (4) has personal knowledge about the maintenance of documents relating to the loan's chain of assignment or ownership, or (5) has attached as an exhibit a true and correct copy of a document—Respondent must instruct the Law Firms to cease post-judgment enforcement activities and Respondent will take the steps necessary, including getting permission from the successor special servicer, to instruct the Law Firms acting on behalf of the Trusts to seek to remove, withdraw, or terminate any active wage garnishment, bank levies, and similar means of enforcing those judgments or settlements as well as cease accepting settlement payments related to any such Collections Lawsuits.

51.    Respondents must cooperate in all respects with any directive from the successor special servicer acting on behalf of the Trusts to:

    a.  Make certain disclosures in connection with the collection of Debt owned by the Trusts;

    b.  Withdraw any Affidavit or Collection Lawsuit; or

    c.  Provide loan information or documents to the successor special servicer, including but not limited to, information and documents related to:

        i.   Whether certain loans owned by the Trusts are no longer legally enforceable because the applicable statute of limitations has expired;

        ii.  Whether Collections Lawsuits have been filed on any loans where sufficient documentation, including signed promissory notes and

**EX A**

documentation reflecting the complete chain of assignment from the Debt's originator to the Collection Lawsuit's named plaintiff, is not in the possession, custody or control of the Collection Lawsuit's named plaintiff to prove the existence of the Debt owed to the named plaintiff, or where the applicable statute of limitations has expired; and

iii.   Whether judgments were obtained in Collections Lawsuits described in Paragraph 51(c)(ii) and the identity of Consumers from whom the Trusts obtained payments in response to those Collections Lawsuits, and the specific amounts collected from these Consumers.

## VII

## Compliance Plan

**IT IS FURTHER ORDERED** that:

52.    Within ninety (90) days of the Effective Date, Respondent must submit to the Regional Director for review and determination of non-objection a compliance plan designed to ensure that the Attorney Network business unit of Respondent complies with all applicable Federal consumer financial laws with respect to Collections Lawsuits and the terms of this Consent Order (Compliance Plan). The Compliance Plan must include, at a minimum:

a.   Detailed steps for addressing each action required by this Consent Order;

EX A

Case 2:20-cv-00680-DGE Document 144-1 Filed 06/16/23 Page 60 of 118
Case 2:18-cv-01132-SZ Document 61 Filed 07/04/20 Page 59 of 117

2017-CFPB-0018    Document 1    Filed 09/18/2017    Page 20 of 32

   b.  Comprehensive, written policies and procedures designed to prevent violations of Federal consumer financial laws and associated risks of harm to Consumers with respect to Collections Lawsuits;

   c.  An effective employee training program required for all employees with any involvement in Collections Lawsuits, including but not limited to Affiants, whose duties include reviewing, executing, preparing, processing, verifying, , or notarizing of Affidavits that includes regular, specific, comprehensive training in Federal consumer financial laws commensurate with individual job functions and duties;

   d.  Implementation of reasonable and appropriate written policies and procedures to ensure the proper notarization processes for Affidavits, including that notaries place the Affiants under oath and witness their signatures;

   e.  Implementation of reasonable and appropriate written policies and procedures to ensure that Affiants verify the accuracy of each statement made in an Affidavit before executing the Affidavit;

   f.  Comprehensive, written policies and procedures designed to ensure that any Law Firms engaged by Respondent to collect Debt do not violate any Federal consumer financial laws, which must include at a minimum:

      i.  the Law Firm's duty to maintain adequate internal controls to ensure compliance with Federal consumer financial laws;

     ii.  the Law Firm's duty to provide adequate training on compliance with all applicable Federal consumer financial laws and

20



Respondent's policies and procedures related to Collections Lawsuits;

iii. Respondent's authority to conduct periodic onsite reviews of the Law Firm's controls, performance, and information systems related to Collections Lawsuits; and

iv. periodic review by Respondent of the Law Firm's controls, performance, and information systems related to Collections Lawsuits; and

g. Specific timeframes and deadlines for implementation of the steps described above.

53. The Regional Director will have the discretion to make a determination of non-objection to the Compliance Plan or direct Respondent to revise it. If the Regional Director directs Respondent to revise the Compliance Plan, Respondent must make the revisions and resubmit the Compliance Plan to the Regional Director within thirty (30) days.

54. After receiving notification that the Regional Director has made a determination of non-objection to the Compliance Plan or any amendments thereto, Respondent must implement and adhere to the steps, recommendations, deadlines, and timeframes outlined in the Compliance Plan.

## VIII

## Role of the Board

**IT IS FURTHER ORDERED** that:

**EX A**

Case 3:20-cv-00680-DGE Document 144-1 Filed 06/16/23 Page 62 of 118
Case 2:18-cv-01132-TSZ Document 61-1 Filed 07/06/20 Page 61 of 117

2017-CFPB-0018    Document 1    Filed 09/18/2017    Page 22 of 32

55.    Respondent's Board must review all submissions (including plans, reports, programs, policies, and procedures) required by this Consent Order prior to submission to the Bureau.

56.    Although this Consent Order requires Respondent to submit certain documents for the review or non-objection by the Regional Director, the Board will have the ultimate responsibility for proper and sound management of Respondent and for ensuring that Respondent complies with Federal consumer financial law and this Consent Order.

57.    In each instance that this Consent Order requires the Board to ensure adherence to or perform certain obligations of Respondent, the Board must:

   a.    Authorize whatever actions are necessary for Respondent to fully comply with the Consent Order;

   b.    Require timely reporting by management to the Board on the status of compliance obligations; and

   c.    Require timely and appropriate corrective action to remedy any material non-compliance with any failures to comply with Board directives related to this Section.

## IX

## Order to Pay Civil Money Penalties

**IT IS FURTHER ORDERED** that:

58.    Under section 1055(c) of the CFPA, 12 U.S.C. § 5565(c), by reason of the violations of law described in Section V of this Consent Order, and taking

**EX A**

Case 3:20-cv-00698-DGE Document 144-1 Filed 06/16/23 Page 63 of 118
Case 2:18-cv-00132-FSZ Document 64 Filed 07/06/20 Page 62 of 117

2017-CFPB-0018    Document 1    Filed 09/18/2017    Page 23 of 32

into account the factors in 12 U.S.C. § 5565(c)(3), Respondent must pay a civil money penalty of $2.5 million to the Bureau.

59. Within ten (10) days of the Effective Date, Respondent must pay $1.5 million of the civil money penalty by wire transfer to the Bureau or to the Bureau's agent in compliance with the Bureau's wiring instructions. The remainder of the civil money penalty shall be paid in one installment within sixty (60) days of the Effective Date.

60. The civil money penalty paid under this Consent Order will be deposited in the Civil Penalty Fund of the Bureau as required by section 1017(d) of the CFPA, 12 U.S.C. § 5497(d).

61. Respondent must treat the civil money penalty paid under this Consent Order as a penalty paid to the government for all purposes. Regardless of how the Bureau ultimately uses those funds, Respondent may not:

   a. Claim, assert, or apply for a tax deduction, tax credit, or any other tax benefit for any civil money penalty paid under this Consent Order; or

   b. Seek or accept, directly or indirectly, reimbursement or indemnification from any source, including but not limited to payment made under any insurance policy, with regard to any civil money penalty paid under this Consent Order.

62. To preserve the deterrent effect of the civil money penalty in any Related Consumer Action, Respondent may not argue that Respondent is entitled to, nor may Respondent benefit by, any offset or reduction of any compensatory monetary remedies imposed in the Related Consumer Action because of the civil money penalty paid in this action or because of any

EX A

Case 3:20-cv-00680-DGE Document 144-1 Filed 06/16/23 Page 64 of 118
Case 2:18-cv-01132-FSZ Document 61 Filed 07/04/20 Page 63 of 117

2017-CFPB-0018    Document 1    Filed 09/18/2017    Page 24 of 32

payment that the Bureau makes from the Civil Penalty Fund (Penalty Offset). If the court in any Related Consumer Action grants such a Penalty Offset, Respondent must, within thirty (30) days after entry of a final order granting the Penalty Offset, notify the Bureau, and pay the amount of the Penalty Offset to the U.S. Treasury. Such a payment will not be considered an additional civil money penalty and will not change the amount of the civil money penalty imposed in this action.

## X

## Additional Monetary Provisions

**IT IS FURTHER ORDERED** that:

63.  In the event of any default on Respondent's obligations to make payment under this Consent Order, interest, computed under 28 U.S.C. § 1961, as amended, will accrue on any outstanding amounts not paid from the date of default to the date of payment, and will immediately become due and payable.

64.  Respondent must relinquish all dominion, control, and title to the funds paid to the fullest extent permitted by law and no part of the funds may be returned to Respondent.

65.  Under 31 U.S.C. § 7701, Respondent, unless it already has done so, must furnish to the Bureau its taxpayer identifying numbers, which may be used for purposes of collecting and reporting on any delinquent amount arising out of this Consent Order.

**EX A**

Case 3:20-cv-00680-DGE Document 144-1 Filed 06/16/23 Page 65 of 118
Case 2:18-cv-01132-TSZ Document 61 Filed 07/04/20 Page 64 of 117

2017-CFPB-0018     Document 1     Filed 09/18/2017     Page 25 of 32

66.  Within thirty (30) days of the entry of a final judgment, consent order, or
     settlement in a Related Consumer Action, Respondent must notify the
     Regional Director of the final judgment, consent order, or settlement in
     writing. That notification must indicate the amount of redress, if any, that
     Respondent paid or is required to pay to Consumers and describe the
     Consumers or classes of Consumers to whom that redress has been or will
     be paid.

## XI

## Reporting Requirements

**IT IS FURTHER ORDERED** that:

67.  Respondent must notify the Bureau of any development that may affect
     compliance obligations arising under this Consent Order, including but not
     limited to a dissolution, assignment, sale, merger, or other action that
     would result in the emergence of a successor company; the creation or
     dissolution of a subsidiary, parent, or affiliate that engages in any acts or
     practices subject to this Consent Order; the filing of any bankruptcy or
     insolvency proceeding by or against Respondent; or a change in
     Respondent's name or address. Respondent must provide this notice, if
     practicable, at least thirty (30) days before the development, but in any case
     no later than fourteen (14) days after the development.

68.  Within ninety (90) days of the Effective Date, and again one year after the
     Effective Date, Respondent must submit to the Regional Director an

**EX A**

Case 3:20-cv-00680-DGE Document 144-1 Filed 06/10/23 Page 66 of 118
Case 2:18-cv-01132-TSZ Document 61 Filed 07/04/20 Page 65 of 117

2017-CFPB-0018    Document 1    Filed 09/18/2017    Page 26 of 32

accurate written compliance progress report (Compliance Report) that has
been approved by the Board, which, at a minimum:

   a. Describes in detail the manner and form in which Respondent has
      complied with this Consent Order; and

   b. Attaches a copy of each Order Acknowledgment obtained under
      Section XII unless previously submitted to the Bureau.

## XII

## Order Distribution and Acknowledgment

**IT IS FURTHER ORDERED** that,

69. Within thirty (30) days of the Effective Date, Respondent must deliver a
copy of this Consent Order to each of its board members as well as to any
managers, employees, Service Providers, or other agents and
representatives who have responsibilities related to the subject matter of the
Consent Order.

70. For five (5) years from the Effective Date, Respondent must deliver a copy of
this Consent Order to any business entity resulting from any change in
structure referred to in Section XI, any future board members or executive
officers, as well as to any managers, employees, Service Providers, or other
agents and representatives who will have responsibilities related to the
subject matter of the Consent Order before they assume their
responsibilities.

71. Respondent must secure a signed and dated statement acknowledging
receipt of a copy of this Consent Order, ensuring that any electronic


EX A

Case 2:20-cv-00680-DGE Document 44-1 Filed 08/10/23 Page 67 of 118
Case 2:18-cv-01132-FSZ Document 61 Filed 07/04/20 Page 96 of 117

2017-CFPB-0018     Document 1     Filed 09/18/2017     Page 27 of 32

signatures comply with the requirements of the E-Sign Act, 15 U.S.C.

§§ 7001-7031, within thirty (30) days of delivery, from all persons receiving

a copy of this Consent Order under this Section.

## XIII

### Recordkeeping

**IT IS FURTHER ORDERED** that

72.  Respondent must create, or if already created, must retain for at least five

(5) years from the Effective Date, the following business records:

  a.  All documents and records necessary to demonstrate full compliance

  with each provision of this Consent Order, including all submissions to

  the Bureau.

73.  Respondent must retain the documents identified in Paragraph 72 for the

duration of the Consent Order.

74.  Respondent must make the documents identified in Paragraph 72 available

to the Bureau upon the Bureau's request.

## XIV

### Notices

**IT IS FURTHER ORDERED** that:

75.  Unless otherwise directed in writing by the Bureau, Respondent must

provide all submissions, requests, communications, or other documents

relating to this Consent Order in writing, with the subject line, "*In re*

*Transworld Systems, Inc.*, File No. Year-CFPB- 0018," and send them

either:

  a.  By overnight courier (not the U.S. Postal Service), as follows:



Regional Director, Bureau Northeast Region
Consumer Financial Protection Bureau
140 East 45th Street, 4th Floor
New York, NY 10017]

or

b.  By first-class mail to the below address and contemporaneously by

email to Enforcement_Compliance@cfpb.gov:

Regional Director, Bureau Northeast Region
Consumer Financial Protection Bureau
140 East 45th Street, 4th Floor
New York, NY 10017

## XV

## Cooperation with the Bureau

**IT IS FURTHER ORDERED** that:

76.     Respondent must cooperate fully with the Bureau in this matter and in any

investigation related to or associated with the conduct described in Section

V. Respondent must provide truthful and complete information, evidence,

and testimony and Respondent must cause its officers, employees,

representatives, or agents to appear for interviews, discovery, hearings,

trials, and any other proceedings that the Bureau may reasonably request

upon ten (10) days written notice, or other reasonable notice, at such places

and times as the Bureau may designate, without the service of compulsory

process.

## XVI

## Compliance Monitoring

28

**EX A**

Case 3:20-cv-00680-DGES Document 144-1 Filed 06/16/23 Page 69 of 118
Case 2:18-cv-01132-FSZ Document 64-1 Filed 07/04/20 Page 69 of 117

2017-CFPB-0018    Document 1    Filed 09/18/2017    Page 29 of 32

**IT IS FURTHER ORDERED** that, to monitor Respondent's compliance with this Consent Order:

77.  Within fourteen (14) days of receipt of a written request from the Bureau, Respondent must submit additional Compliance Reports or other requested information, which must be made under penalty of perjury; provide sworn testimony; or produce documents.

78.  Respondent must permit Bureau representatives to interview any employee or other person affiliated with Respondent who has agreed to such an interview. The person interviewed may have counsel present.

79.  Nothing in this Consent Order will limit the Bureau's lawful use of civil investigative demands under 12 C.F.R. § 1080.6 or other compulsory process.

## XVII
## Modifications to Non-Material Requirements

**IT IS FURTHER ORDERED** that:

80.  Respondent may seek a modification to non-material requirements of this Consent Order (*e.g.*, reasonable extensions of time and changes to reporting requirements) by submitting a written request to the Regional Director.

81.  The Regional Director may, in his/her discretion, modify any non-material requirements of this Consent Order (*e.g.*, reasonable extensions of time and changes to reporting requirements) if he/she determines good cause justifies the modification. Any such modification by the Regional Director must be in writing.

29



Case 3:20-cv-00680-DGE Document 44-1 Filed 06/10/23 Page 70 of 118
Case 2:18-cv-01132-TSZ Document 61 Filed 07/04/22 Page 69 of 117

2017-CFPB-0018    Document 1    Filed 09/18/2017    Page 30 of 32

# XVIII

## Administrative Provisions

82.  The provisions of this Consent Order do not bar, estop, or otherwise prevent the Bureau, or any other governmental agency, from taking any other action against Respondent, except as described in Paragraph 83.

83.  The Bureau releases and discharges Respondent from all potential liability for law violations that the Bureau has or might have asserted based on the practices described in Section V of this Consent Order, to the extent such practices occurred before the Effective Date and the Bureau knows about them as of the Effective Date. The Bureau may use the practices described in this Consent Order in future enforcement actions against Respondent and its affiliates, including, without limitation, to establish a pattern or practice of violations or the continuation of a pattern or practice of violations or to calculate the amount of any penalty. This release does not preclude or affect any right of the Bureau to determine and ensure compliance with the Consent Order, or to seek penalties for any violations of the Consent Order.

84.  This Consent Order is intended to be, and will be construed as, a final Consent Order issued under section 1053 of the CFPA, 12 U.S.C. § 5563, and expressly does not form, and may not be construed to form, a contract binding the Bureau or the United States.

85.  This Consent Order will terminate five (5) years from the Effective Date or five (5) years from the most recent date that the Bureau initiates an action alleging any violation of the Consent Order by Respondent. If such action is dismissed or the relevant adjudicative body rules that Respondent did not

EX A

violate any provision of the Consent Order, and the dismissal or ruling is either not appealed or upheld on appeal, then the Consent Order will terminate as though the action had never been filed. The Consent Order will remain effective and enforceable until such time, except to the extent that any provisions of this Consent Order have been amended, suspended, waived, or terminated in writing by the Bureau or its designated agent.

86.    Calculation of time limitations will run from the Effective Date and be based on calendar days, unless otherwise noted.

87.    Should Respondent seek to transfer or assign all or part of its operations that are subject to this Consent Order, Respondent must, as a condition of sale, obtain the written agreement of the transferee or assignee to comply with all applicable provisions of this Consent Order.

88.    The provisions of this Consent Order will be enforceable by the Bureau. For any violation of this Consent Order, the Bureau may impose the maximum amount of civil money penalties allowed under section 1055(c) of the CFPA, 12 U.S.C. § 5565(c). In connection with any attempt by the Bureau to enforce this Consent Order in federal district court, the Bureau may serve Respondent wherever Respondent may be found and Respondent may not contest that court's personal jurisdiction over Respondent.

89.    This Consent Order and the accompanying Stipulation contain the complete agreement between the parties. The parties have made no promises, representations, or warranties other than what is contained in this Consent Order and the accompanying Stipulation. This Consent Order and the

**EX A**

Case 3:20-cv-00680-DGE Document 144-1 Filed 06/16/23 Page 72 of 118
Case 2:18-cv-01132-TSZ Document 61-1 Filed 07/07/20 Page 71 of 117

2017-CFPB-0018     Document 1     Filed 09/18/2017     Page 32 of 32

accompanying Stipulation supersede any prior oral or written communications, discussions, or understandings.

90.   Nothing in this Consent Order or the accompanying Stipulation may be construed as allowing the Respondent, its Board, officers, or employees to violate any law, rule, or regulation.

**IT IS SO ORDERED**, this _15th_ day of September, 2017.

_Richard Cordray_
Richard Cordray
Director
Consumer Financial Protection Bureau

**EX A**

# EX. B

Case 3:20-cv-00680-DGE Document 144-1 Filed 08/10/23 Page 74 of 118
Case 2:18-cv-01132-TSZ Document 61-1 Filed 07/04/20 Page 73 of 117

2017-CFPB-0018    Document 2    Filed 09/18/2017    Page 1 of 4

UNITED STATES OF AMERICA
## CONSUMER FINANCIAL PROTECTION BUREAU

**2017-CFPB-0018**

|  |  |
|---|---|
| In the matter of:<br><br>**TRANSWORLD SYSTEMS, INC.** | **STIPULATION AND CONSENT TO THE ISSUANCE OF A CONSENT ORDER** |

The Consumer Financial Protection Bureau (Bureau) intends to initiate an administrative proceeding against Transworld Systems, Inc. (Respondent), under 12 U.S.C. §§ 5563 and 5565, for its unfair and deceptive practices with regard to Collections Lawsuits in violation of the CFPA's prohibition on unfair and deceptive acts or practices, 12 U.S.C. §§ 5531, 5536.

Respondent, in the interest of compliance and resolution of the matter, and without admitting or denying any wrongdoing, consents to the issuance of a Consent Order substantially in the form of the one to which this Stipulation and Consent to the Issuance of a Consent Order is attached (Consent Order), which is incorporated by reference.

In consideration of the above premises, Respondent agrees to the following:

### Jurisdiction

1. The Bureau has jurisdiction over this matter under sections 1053 and 1055 of the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. §§ 5563, 5565.

**EX B**

## Consent

2.  Respondent agrees to the issuance of the Consent Order, without admitting or
    denying any of the findings of fact or conclusions of law, except that Respondent
    admits the facts necessary to establish the Bureau's jurisdiction over Respondent
    and the subject matter of this action.

3.  Respondent agrees that the Consent Order will be deemed an "order issued with
    the consent of the person concerned" under 12 U.S.C. § 5563(b)(4), and agrees
    that the Consent Order will become a final order, effective upon issuance, and
    will be fully enforceable by the Bureau under 12 U.S.C. §§ 5563(d)(1) and 5565.

4.  Respondent voluntarily enters into this Stipulation and Consent to the Issuance
    of a Consent Order.

5.  The Consent Order resolves only Respondent's potential liability for law
    violations that the Bureau asserted or might have asserted based on the practices
    described in Section V of the Consent Order, to the extent such practices occurred
    before the Effective Date and the Bureau knows about them as of the Effective
    Date. Respondent acknowledges that no promise or representation has been
    made by the Bureau or any employee, agent, or representative of the Bureau,
    about any liability outside of this action that may have arisen or may arise from
    the facts underlying this action or immunity from any such liability.

6.  Respondent agrees that the facts described in Section V of the Consent Order will
    be taken as true and be given collateral estoppel effect, without further proof, in
    any proceeding before the Bureau to enforce the Consent Order, or in any
    subsequent civil litigation by the Bureau to enforce the Consent Order or its
    rights to any payment or monetary judgment under the Consent Order.

EX B

7. The terms and provisions of this Stipulation and the Consent Order will be binding upon, and inure to the benefit of, the parties hereto and their successors in interest.

8. Respondent agrees that the Bureau may present the Consent Order to the Bureau Director for signature and entry without further notice.

## Waivers

9. Respondent, by consenting to this Stipulation, waives:

   a. Any right to service of the Consent Order, and agrees that issuance of the Consent Order will constitute notice to the Respondent of its terms and conditions;

   b. Any objection to the jurisdiction of the Bureau, including, without limitation, under section 1053 of the CFPA, 12 U.S.C. § 5563;

   c. The rights to all hearings under the statutory provisions under which the proceeding is to be or has been instituted; the filing of proposed findings of fact and conclusions of law; proceedings before, and a recommended decision by, a hearing officer; all post-hearing procedures; and any other procedural right available under section 1053 of the CFPA, 12 U.S.C. § 5563, or 12 C.F.R. pt. 1081;

   d. The right to seek any administrative or judicial review of the Consent Order;

   e. Any claim for fees, costs, or expenses against the Bureau, or any of its agents or employees, and any other governmental entity, related in any way to this enforcement matter or the Consent Order, whether arising under common law or under the terms of any statute, including, but not

3

EX B

limited to the Equal Access to Justice Act and the Small Business

Regulatory Enforcement Fairness Act of 1996; for these purposes,

Respondent agrees that Respondent is not the prevailing party in this

action because the parties have reached a good-faith settlement;

f.  Any other right to challenge or contest the validity of the Consent Order;

g.  Such provisions of the Bureau's rules or other requirements of law as may

be construed to prevent any Bureau employee from participating in the

preparation of, or advising the Director as to, any order, opinion, finding

of fact, or conclusion of law to be entered in connection with this

Stipulation or the Consent Order; and

h.  Any right to claim bias or prejudgment by the Director based on the

consideration of or discussions concerning settlement of all or any part of

the proceeding.

TRANSWORLD SYSTEMS, INC.  BY:

_____          _____
Joseph Laughlin                                          Date
Chief Executive Officer

*SEPTEMBER 14, 2017*

4

EX B

# EX. C

Case 2:20-cv-00680-DGE   Document 144-1   Filed 06/10/23   Page 79 of 118
Case 2:18-cv-01132-SEZ   Document 64-1   Filed 06/04/20   Page 78 of 117

Case 1:17-cv-01323-GMS   Document 3-1   Filed 09/18/17   Page 1 of 40 PageID #: 23

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Consumer Financial Protection Bureau,<br><br>Plaintiff,<br><br>v.<br><br>THE NATIONAL COLLEGIATE MASTER STUDENT LOAN TRUST; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2003-1; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2004-1; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2004-2; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2005-1; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2005-2; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2005-3; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-1; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-2; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-3; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-4; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-1; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-2; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-3; and NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-4, Delaware Statutory Trusts,<br><br>Defendants. | Case No. |

## [PROPOSED] CONSENT JUDGMENT

1

EX C

Case 2:20-cv-00680-DGE Document 144-1 Filed 06/19/23 Page 80 of 118
Case 2:18-cv-01132-GEZ Document 64 Filed 06/04/20 Page 79 of 117
Case 1:17-cv-01323-GMS Document 3-1 Filed 09/18/17 Page 2 of 40 PageID #: 24

Plaintiff, the Consumer Financial Protection Bureau ("Bureau"), commenced this civil action against fifteen (15) Delaware statutory trusts referred to as the National Collegiate Student Loan Trusts ("NCSLTs" or "the Trusts"), which are the National Collegiate Master Student Loan Trust, NCSLT 2003-1, NCSLT 2004-1, NCSLT 2004-2, NCSLT 2005-1, NCSLT 2005-2, NCSLT 2005-3, NCSLT 2006-1, NCSLT 2006-2, NCSLT 2006-3, NCSLT 2006-4, NCSLT 2007-1, NCSLT 2007-2, NCSLT 2007-3, and NCSLT 2007-4 on September 14, 2017, to obtain injunctive relief, damages and other monetary relief, and civil money penalties.

The Complaint alleges violations of sections 1031(a) and 1036(a)(1) of the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. §§ 5531(a), 5536(a)(1).

Plaintiff and Defendants request that the Court enter this Consent Judgment. The parties have agreed to resolve this case without further litigation. The Defendants waive service, answering the Complaint, and consent to the entry of this Consent Judgment against them by this Court, the terms of which are set forth herein.

## FINDINGS

1.  This Court has jurisdiction over the parties and the subject matter of this action.

2.  Plaintiff and Defendants agree to entry of this Order to settle and resolve all matters in this dispute arising from the conduct alleged in the Complaint to the date this Order is entered.

3.  Defendants neither admit nor deny any allegations in the Complaint, except as specifically stated in this Order. For the purposes of this Order,

2


EX C

Defendants admit the facts necessary to establish the Court's jurisdiction over them and the subject matter of this action.

4.   Since at least November 1, 2012, in order to collect on defaulted private student loans, Defendants' Servicers filed Collections Lawsuits on behalf of Defendants in state courts across the country. In support of these lawsuits, Subservicers on behalf of Defendants executed and filed affidavits that falsely claimed personal knowledge of the account records and the consumer's debt, and in many cases, personal knowledge of the chain of assignments establishing ownership of the loans. In addition, Defendants' Servicers on behalf of Defendants filed more than 2,000 debt collections lawsuits without the documentation necessary to prove Trust ownership of the loans or on debt that was time-barred. Finally, notaries for Defendants' Servicers notarized over 25,000 affidavits even though they did not witness the affiants' signatures.

5.   Defendants waive any rights to seek judicial review or otherwise challenge or contest the validity of this Order. Defendants also waive any claim it may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action to the date of this Order. Each party will bear its own costs and expenses, including without limitation attorneys' fees.

6.   Entry of this Order is in the public interest.

## DEFINITIONS

7.   The following definitions apply to this Order:

EX C

Case 2:20-cv-00680-DGEZ Document 44-1 Filed 06/10/23 Page 82 of 118
Case 2:18-cv-01132-FSZ Document 64-1 Filed 07/07/20 Page 18 of 118

Case 1:17-cv-01323-GMS   Document 3-1   Filed 09/18/17   Page 4 of 40 PageID #: 26

a.   "Administration Agreements" means the agreements by and among

each of the Trusts and the Administrator dated November 1, 2001

(Master Trust); December 11, 2003 (NCSLT 2003-1); September 10,

2004 (NCSLT 2004-1); October 28, 2004 (NCSLT 2004-2);

February 23, 2005 (NCSLT 2005-1); June 9, 2005 (NCSLT 2005-

2); October 12, 2005 (NCSLT 2005-3); March 9, 2006 (NCSLT

2006-1); June 9, 2006 (NCSLT 2006-2); June 8, 2006 (NCSLT

2006-3); December 7, 2006 (NCSLT 2006-4); March 8, 2007

(NCSLT 2007-1); June 14, 2007 (NCSLT 2007-2); September 20,

2007 (NCSLT 2007-3); and September 20, 2007 (NCSLT 2007-4).

b.   "Administrator" means the Administrator, as defined in the Trust

Indenture, providing certain duties of the Trusts pursuant to the

Administration Agreements.

c.   "Affected Consumers" includes Consumers who are or were subject

to a Collections Lawsuit filed by Defendants' agents on behalf of

Defendants on or after November 1, 2012 to collect a Debt where (a)

the documentation necessary to prove the existence of the Debt

does not exist or cannot be located by Defendants; (b) the

documentation necessary to prove Trust ownership of the Debt

does not exist or cannot be located by Defendants; or (c) the lawsuit

was time-barred.

d.   "Affiant" means any signatory to an Affidavit, other than one

signing solely as a notary or witness to the act of signing, signing in

his or her capacity as an employee or agent of Defendants,

4

EX C

Case 3:20-cv-00680-DGE Document 44-1 Filed 06/16/23 Page 83 of 118
Case 2:18-cv-01132-TSZ Document 61 Filed 07/06/20 Page 82 of 117
Case 1:17-cv-01323-GMS   Document 3-1   Filed 09/18/17   Page 5 of 40 PageID #: 27

including employees or agents of Defendants' Servicers or Subservicers.

e. "Affidavit" means any sworn statement filed with a court in connection with litigation to collect on a Debt.

f. "Board" means the registered owner of a majority of the beneficial interest in each of the Trusts.

g. "Clearly and Prominently" means

 i. as to written information: written in a type size and location sufficient for an ordinary consumer to read and comprehend it and disclosed in a manner that would be easily recognizable and understandable in language and syntax to an ordinary consumer; if the information is contained in a multi-page print document, the disclosure appears on the first page.

 ii. as to information presented orally: spoken and disclosed in a volume, cadence, and syntax sufficient for an ordinary consumer to hear and comprehend.

h. "Collections Lawsuits" means attempts by Defendants' Servicers on behalf of Defendants (or a third party acting on their behalf for an account owned or alleged to be owned by Defendants) through judicial processes in the United States of America, to collect or establish a Consumer's liability for a Debt.

i. "Consumer" means any natural person obligated or allegedly obligated to pay any Debt.

EX C

Case 3:20-cv-00680-DGE Document 141-1 Filed 06/10/23 Page 84 of 118
Case 2:18-cv-01132-TSZ Document 61 Filed 07/06/20 Page 83 of 117
Case 1:17-cv-01323-GMS   Document 3-1   Filed 09/18/17   Page 6 of 40 PageID #: 28

j.     "Debt" means any obligation or alleged obligation of a Consumer to pay money arising out of a transaction in which the money, property, insurance, or services that are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

k.     "Effective Date" means the date on which the Order is entered on the docket by the Court.

l.     "Enforcement Director" means the Assistant Director of the Office of Enforcement for the Consumer Financial Protection Bureau, or his or her delegate.

m.     "Primary Servicer" means the Servicer servicing student loans for Defendants under the Amended and Restated Private Student Loan Servicing Agreement dated September 28, 2006.

n.     "Related Consumer Action" means a private action by or on behalf of one or more Consumers or an enforcement action by another governmental agency brought against Defendants based on substantially the same facts as described in the Complaint.

o.     "Relevant Period" includes the period from November 1, 2012 to the Effective Date.

p.     "Defendants" means any or all of the fifteen (15) Delaware statutory trusts referred to as the National Collegiate Student Loan Trusts ("NCSLTs" or "the Trusts," which are the National Collegiate Master Student Loan Trust, NCSLT 2003-1, NCSLT 2004-1, NCSLT

EX C

2004-2, NCSLT 2005-1, NCSLT 2005-2, NCSLT 2005-3, NCSLT 2006-1, NCSLT 2006-2, NCSLT 2006-3, NCSLT 2006-4, NCSLT 2007-1, NCSLT 2007-2, NCSLT 2007-3, and NCSLT 2007-4) and their successors and assigns.

q.      "Servicer" (or "Trusts' Servicer") means any Servicer, Primary Servicer, Subservicer, Special Servicer, Administrator, and any other individual or entity acting on behalf of Defendants with respect to the servicing of the student loans owned by Defendants, whether retained directly by Defendants or retained by an individual or entity acting on behalf of Defendants.

r.      "Servicing Agreement" means any Servicing Agreement that meets the definition of Servicing Agreement in each Trust's Indenture.

s.      "Special Servicer" means the Servicer providing services to the Trusts with respect to defaulted and delinquent student loans under the Special Servicing Agreements dated March 1, 2009 and May 1, 2009 (the "Special Servicing Agreements").

t.      "Subservicer" means any service provider that was retained by, and contracted with, directly or indirectly, the Special Servicer, as an agent of the Special Servicer, to provide services, including default prevention, and collection services, including but not limited to litigation, with respect to the servicing of the student loans owned by Defendants.

u.      "The Trust Agreements" are the Trust Agreements creating each of the Trusts.

7

Case 2:20-cv-00680-DGE Document 144-1 Filed 06/10/23 Page 86 of 118
Case 2:18-cv-01132-TSZ Document 64-1 Filed 07/06/20 Page 85 of 117

Case 1:17-cv-01323-GMS   Document 3-1   Filed 09/18/17   Page 8 of 40 PageID #: 30

## **ORDER**

**IT IS ORDERED** that:

### **I.   Conduct Requirements**

8.   Defendants must provide all Defendants' Servicers that are engaged in the servicing or collection of Debts with actual notice of this Order within thirty (30) days of the Effective Date.

9.   Defendants and their officers, agents, servants, employees, and attorneys who have actual notice of this Order, including but not limited to all of Defendants' Servicers, whether acting directly or indirectly, may not violate sections 1031 and 1036 of the CFPA, 12 U.S.C. §§ 5531, 5536, and must take the following affirmative actions:

  a.   Defendants shall take all actions necessary to comply with the terms of the Order, including but not limited to ensuring that all of Defendants' Servicers acting as Defendants' agents comply with the terms of the Order.

  b.   Defendants must require that any of Defendants' Servicers or other agents retained by Defendants in connection with servicing or collection of student loans (1) agree to abide by the terms and conditions of the Order and (2) require any agents that Defendants' Servicers hire in connection with servicing or collection of student loans to abide by the terms and conditions of the Order.

  c.   Defendants and their officers, agents, servants, employees, and attorneys who have actual notice of this Order, including but not limited to all of Defendants' Servicers, whether acting directly or

8

EX C

Case 2:20-cv-00680-DGE Document 144-1 Filed 06/16/23 Page 87 of 118
Case 2:18-cv-01132-TSZ Document 61 Filed 07/06/20 Page 86 of 117
Case 1:17-cv-01323-GMS Document 3-1 Filed 09/18/17 Page 9 of 40 PageID #: 31

indirectly, may not initiate a Collections Lawsuit to collect Debt

unless they possess:

    i.    the documentation necessary to prove that a Trust owns the

        loan, including but not limited to, documentation reflecting

        the complete chain of assignment from the Debt's originator

        to the specific Trust claiming ownership; and

    ii.    a document signed by the Consumer, such as a promissory

        note, evidencing the agreement to pay the loan forming the

        basis of the Debt.

d.    Defendants and their officers, agents, servants, employees, and

attorneys who have actual notice of this Order, including but not

limited to all of Defendants' Servicers, whether acting directly or

indirectly, may not initiate a Collections Lawsuit to collect on a loan

for which the applicable statute of limitations has expired.

e.    Defendants and their officers, agents, servants, employees, and

attorneys who have actual notice of this Order, including but not

limited to all of Defendants' Servicers, whether acting directly or

indirectly, may not collect any Debt through Collections Lawsuits

that Defendants or their agents have any reason to believe may be

unenforceable.

f.    Defendants, their officers, agents, servants, employees, and

attorneys, and all other persons in active concert or participation

with any of them, who receive actual notice of this Order, including

but not limited to all of Defendants' Servicers, whether acting

EX C

directly or indirectly, are permanently restrained and prohibited, in connection with the collection of a Debt, from submitting any Affidavit:

i.      containing an inaccurate statement;

ii.     in which the Affiant represents, expressly or by implication, that the Affiant is familiar with or has personal knowledge of the Consumer's education loan records or the maintenance of those records when that is not the case;

iii.    in which the Affiant represents, expressly or by implication, that the Affiant has personal knowledge of the Consumer's Debt when that is not the case;

iv.     in which the Affiant represents, expressly or by implication, that the Affiant has personal knowledge of the loan's chain of assignment or ownership when that is not the case;

v.      in which the Affiant represents, expressly or by implication, that the Affiant has personal knowledge of the documents relating to the loan's chain of assignment or ownership when that is not the case;

vi.     representing, expressly or by implication, that the Affidavit has been properly notarized if the Affidavit was not executed in the presence of a notary or if the notarization was otherwise not compliant with applicable notary laws; or

vii.    in which the Affiant represents, expressly or by implication, that any documents or records concerning the Debt that

10

EX C

Case 2:20-cv-00680-DGEZ Document 144-1 Filed 06/16/23 Page 89 of 118
Case 2:18-cv-01132-FSZ Document 61 Filed 07/04/20 Page 88 of 117

Case 1:17-cv-01323-GMS   Document 3-1   Filed 09/18/17   Page 11 of 40 PageID #: 33

forms the basis of the Collections Lawsuit have been
reviewed by the Affiant when that is not the case.

10.     Defendants are permanently restrained and prohibited from reselling Debt
that is time-barred or for which Defendants lack the necessary
documentation required by Paragraph 9(c) without obtaining the written
agreement of the purchaser to comply with this Order.

11.     Defendants, their officers, agents, servants, employees, and attorneys, and
all other persons in active concert or participation with any of them, who
receive actual notice of this Order, including but not limited to all of
Defendants' Servicers, whether acting directly or indirectly, are
permanently restrained and prohibited from, in connection with the
collection of a Debt, providing any testimony in a Collections Lawsuit that
contains any misrepresentations, including false statements that the
witness:

a.     is familiar with or has personal knowledge of the Consumer's
education loan records or the maintenance of those records;

b.     has personal knowledge of the Consumer's Debt;

c.     has personal knowledge of the loan's chain of assignment or
ownership; or

d.     has personal knowledge of the documents relating to the loan's
chain of assignment or ownership.

12.     If Defendants determine that any of their agents, including but not limited
to all of Defendants' Servicers, are on behalf of Defendants engaging in any
conduct prohibited by this Order, including but not limited to Paragraphs

11

EX C

Case 3:20-cv-00680-DCEZ Document 144-1 Filed 06/10/23 Page 90 of 118
Case 2:18-cv-01132-PSZ Document 64-1 Filed 07/04/20 Page 89 of 114

Case 1:17-cv-01323-GMS   Document 3-1   Filed 09/18/17   Page 12 of 40 PageID #: 34

9 and 11 of this Order, Defendants promptly will take the necessary steps to ensure that their agents cease any and all practices that violate this Order.

13. Within thirty (30) days of making any determination described in Paragraph 12, Defendants must submit to the Enforcement Director a report detailing (1) the practices that violate the Order, (2) the specific agents engaged in the practices in question, and (3) a plan to ensure that the practices cease and to remediate any harm resulting from the practices.

14. With regard to pending Collections Lawsuits in which Defendants, through actions taken by Defendants' Servicers acting on behalf of Defendants, have filed an Affidavit that contains any misrepresentations—including but not limited to false statements that the Affiant (1) is familiar with or has personal knowledge of the Consumer's education loan records or the maintenance of those records, (2) has personal knowledge of the Consumer's indebtedness, (3) has personal knowledge of the loan's chain of assignment or ownership, (4) has personal knowledge about the maintenance of documents relating to the loan's chain of assignment or ownership, or (5) has attached as an exhibit a true and correct copy of a document—Defendants must either withdraw the pending Collections Lawsuit or ensure that the Affidavit is withdrawn. Defendants must instruct their attorneys, Defendants' Servicers, and their agents to either withdraw the pending Collections Lawsuit or notify the court of the following in writing while simultaneously providing the court with a copy

12

EX C

Case 3:20-cv-00680-DGS Document 144-1 Filed 06/16/23 Page 91 of 118
Case 2:18-cv-01132-TSZ Document 61 Filed 07/04/20 Page 90 of 117

Case 1:17-cv-01323-GMS   Document 3-1   Filed 09/18/17   Page 13 of 40 PageID #: 35

of the Order entered into between the Bureau and Defendants: "Plaintiff withdraws the affidavit of [insert name of affiant] pursuant to an Order entered into by the Consumer Financial Protection Bureau and the National Collegiate Student Loan Trusts."

15. With regard to concluded Collections Lawsuits in which Defendants, through actions of Defendants' Servicers acting on behalf of Defendants, filed with a court or in arbitration an Affidavit that contained any misrepresentations—including but not limited to false statements that the Affiant (1) is familiar with or has personal knowledge of the Consumer's education loan records or the maintenance of those records, (2) has personal knowledge of the Consumer's indebtedness, (3) has personal knowledge of the loan's chain of assignment or ownership, (4) has personal knowledge about the maintenance of documents relating to the loan's chain of assignment or ownership, or (5) has attached as an exhibit a true and correct copy of a document—Defendants must instruct their attorneys, the Defendants' Servicers, and their agents to cease post-judgment enforcement activities and will seek, and will instruct their agents to seek, to remove, withdraw, or terminate any active wage garnishment, bank levies, and similar means of enforcing those judgments or settlements as well as cease accepting settlement payments related to any such concluded Collections Lawsuits.

16. With regard to servicing of Debt owned by Defendants, Defendants shall within ten (10) days of the Effective Date (1) direct the Primary Servicer to cease transferring any Debt to the Special Servicer and any Subservicer and

13

EX C

instead retain possession of the Debt pending approval and implementation of the Compliance Plan provided for in Section III; (2) direct the Special Servicer and any Subservicer to suspend further collection efforts on all Debt owned by Defendants pending approval and implementation of the Compliance Plan provided for in Section III; (3) direct the Special Servicer and any Special Servicer agent to discontinue making outbound call attempts, sending collection letters, providing negative reports to any of consumer reporting agencies the credit bureaus, or other efforts as may be instructed by Defendants and are necessary to effectuate compliance with this Order; (4) direct the Primary Servicer to instruct the Special Servicer and all Subservicers to return to the Primary Servicer all student loans in their portfolio owned by Defendants that are completed and the subject of each monthly Compliance Audit Report described in Paragraph 20; and (5) direct Defendants' Servicers  to take any other appropriate actions necessary to effectuate compliance with this Order as instructed by the Defendants.

17.    Defendants shall direct (1) the Primary Servicer and Special Servicer to remit all payments from Consumers to an escrow account as designated by Defendants pursuant to Paragraph 18; (2) the Subservicer to remit funds to the Special Servicer and the Special Servicer to remit those payments to the escrow account as designated by Defendants pursuant to Paragraph 18; and (3) the Primary Servicer and Special Servicer to provide an itemized report to the Defendants identifying the payments remitted at the loan level in a format approved by the Defendants.

18.     Nothing in this Order shall prohibit Defendants or their Servicers from accepting payments from Consumers made in the regular course on Debt that is not subject to a Collections Lawsuit. All such payments shall be held in escrow until the requirements of Paragraphs 9(c)(1) and (2) are satisfied and Defendants have determined that sufficient loan documentation exists to either retain the payment or refund the amount paid as to be provided for in the Compliance Plan of Section III. Defendants may use funds from the escrow to carry out Trust operations, including payments to noteholders sufficient to avoid events of default under the Indenture Trust, auditors, consultants, accountants, legal counsel, and other necessary professionals.

## II. Compliance Audit

19.     Within thirty (30) days of the Effective Date, Defendants must secure and retain one or more qualified, independent consultants or auditors with specialized experience in the servicing of student loans, and acceptable to the Enforcement Director, to conduct an independent audit of all of the servicing and collecting conducted by Defendants' Servicers on student loans owned by Defendants from inception of each of the Trusts to the present, using procedures and standards generally acceptable to the student loan–servicing industry. The purposes of the Compliance Audit must be to determine, at a minimum:

   a.     For each and every student loan, whether Defendants, or their agents (including Defendants' Servicers), have or ever had in their possession sufficient loan documentation, including signed

15

EX C

promissory notes and documentation reflecting the complete chain of assignment since the loan's origination, to support the claim that a Debt is currently owed to a Trust, including but not limited to, assignments from the Debt's originator to the Trust claiming ownership and any subsequent assignments by the Trust to a student loan guarantor (such as The Education Resources Institute or its successors);

b.     Whether certain loans owned by Defendants are no longer legally enforceable because the applicable statute of limitations has expired;

c.     Whether Collections Lawsuits have been filed on any loans for which sufficient documentation, including signed promissory notes and documentation reflecting the complete chain of assignment from the Debt's originator to the Collections Lawsuit's named plaintiff, is not in the possession of the Collections Lawsuit's named plaintiff, or a Defendants' Servicer acting on behalf of the named plaintiff, to prove the existence of the Debt owed to the Trust in question, or where the applicable statute of limitations has expired;

d.     Whether judgments were obtained in Collections Lawsuits described in Paragraph 19(c), the identity of Consumers from whom the Defendants obtained payments in response to those Collections Lawsuits, and the specific amounts collected from these Consumers;

EX C

Case 3:20-cv-00680-DGS Document 144-1 Filed 06/10/23 Page 95 of 118
Case 2:18-cv-01132-FSZ Document 61 Filed 07/06/20 Page 9 of 117
Case 1:17-cv-01323-GMS   Document 3-1   Filed 09/18/17   Page 17 of 40 PageID #: 39

e.   Whether any student loans were disbursed to the Consumers after the loans allegedly were transferred to the Defendants;

f.   Whether any of Defendants' agents, including but not limited to any of Defendants' Servicers, have failed to comply with any Federal consumer financial law or any of the Servicers' Servicing Guidelines; and

g.   Whether any of Defendants' agents, including but not limited to any of Defendants' Servicers, are or have engaged in any practices on behalf of Defendants after the Effective Date that violate this Order.

20.   Within one hundred and eighty (180) days of the Effective Date and each thirty (30) days thereafter until finished, the independent consultant(s) must provide a written report to Defendants detailing the findings of the audit (the "Compliance Audit Reports"). The Compliance Audit Report with respect to additional Affected Consumers shall be completed within one hundred and eighty (180) days of the Effective Date, and the remainder of the Compliance Audit Reports within three hundred and sixty (360) days of the Effective Date. The Compliance Audit Report shall include the auditors' findings, conclusions, and a description of its methodology.

21.   Defendants must provide the Compliance Audit Reports to the Enforcement Director within fourteen (14) days of receipt by Defendants.

22.   Within thirty (30) days of receiving the final Compliance Audit Report identified in Paragraph 20, Defendants must submit to the Enforcement

17

EX C

Case 3:20-cv-00680-DGE Document 144-1 Filed 06/16/23 Page 96 of 118
Case 2:18-cv-01132-FEZ Document 61-1 Filed 06/04/20 Page 96 of 118

Case 1:17-cv-01323-GMS   Document 3-1   Filed 09/18/17   Page 18 of 40 PageID #: 40

Director for review and non-objection an amendment to the Compliance

Plan ("Amended Compliance Plan") described in Section III to:

a.   ensure the withdrawal and dismissal without prejudice of any

pending Collections Lawsuits identified in Paragraph 19(c);

b.   ensure that Defendants and their agents, including but not limited

to any of Defendants' Servicers, will not take any steps to initiate

collections or furnish negative reports to consumer reporting

agencies, on loans identified in Paragraph 19(a), or accept payments

on any defaulted Debts, unless and until Defendants first verify the

existence of the documentation referenced in that subparagraph in

order to prove the existence of the Debt and the identity of the

current owner;

c.   ensure that Defendants and their agents, including but not limited

to any of Defendants' Servicers, will not take any steps to collect

Debts by any means on any loans identified in Paragraph 19(b)

without Clearly and Prominently disclosing to the Consumer as

follows:

i.   For those time-barred debts that generally cannot be

included in a consumer report under the provisions of the

Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681c(a), but

can be collected through other means pursuant to applicable

state law, Defendants will instruct their agents to include the

following statement: "The law limits how long you can be

sued on a debt and how long a debt can appear on your

18

EX C

Case 2:20-cv-00680-DGEZ Document 144-1 Filed 06/16/23 Page 97 of 118
Case 2:18-cv-01132-FSZ Document 61 Filed 07/04/20 Page 96 of 117

Case 1:17-cv-01323-GMS    Document 3-1    Filed 09/18/17    Page 19 of 40 PageID #: 41

credit report. Due to the age of this debt, we will not sue you
for it or report payment or non-payment of it to a credit
bureau."

ii.     For those time-barred debts that can be collected through
other means pursuant to applicable state law, and may be
included in a consumer report under the provisions of FCRA,
15 U.S.C. § 1681c(a), Defendants will instruct their agents to
include the following statement: "The law limits how long
you can be sued on a debt. Because of the age of your debt,
we will not sue you for it."

23.    Defendants and their agents are prohibited from making any
representation or statement, or from taking any other action that
interferes with, detracts from, contradicts, or otherwise undermines the
disclosures required in Paragraph 22.

24.    Defendants will be deemed to have complied with the disclosure
requirements of Paragraph 22 if Defendants or their agents makes a
disclosure to Consumers in a specific jurisdiction that (1) is required by the
laws or regulations of that jurisdiction, (2) complies with those laws or
regulations, and (3) is substantially similar to the disclosure required by
Paragraph 22.

25.    The Enforcement Director will have the discretion to make a
determination of non-objection to the Amended Compliance Plan or to
direct the Defendants to revise it. If the Enforcement Director directs the
Defendants to revise the Amended Compliance Plan, Defendants must

19

EX C

make the requested revisions and resubmit the Amended Compliance Plan to the Enforcement Director within thirty (30) days.

26. After receiving notification that the Enforcement Director has made a determination of non-objection to the Amended Compliance Plan, Defendants must implement and adhere to the steps, recommendations, deadlines, and timeframes outlined in the Amended Compliance Plan.

27. Within thirty (30) days of receiving notification that the Enforcement Director has made a determination of non-objection to the Amended Compliance Plan, Defendants will provide the Amended Compliance Plan and the Compliance Audit Reports to Transworld Systems, Inc. ("TSI"), or, if applicable, to the Defendants' successor Special Servicer or Subservicer.

### III. Compliance Plan

28. Within one hundred and twenty (120) days of the Effective Date, Defendants must submit to the Enforcement Director for review and determination of non-objection a comprehensive compliance plan designed to ensure that Defendants and Defendants' Servicers acting on their behalf comply with all applicable Federal consumer financial laws and the terms of this Order ("Compliance Plan"). The Compliance Plan must include, at a minimum:

   a. Detailed steps for addressing each action required by this Order including operations meetings with the Primary Servicer;

   b. Specific timeframes and deadlines for implementation of the steps described above; and

EX C

Case 2:20-cv-00680-DGE Document 144-1 Filed 06/16/23 Page 99 of 118
Case 2:18-cv-01132-TSZ Document 64-1 Filed 07/06/20 Page 98 of 117

Case 1:17-cv-01323-GMS   Document 3-1   Filed 09/18/17   Page 21 of 40 PageID #: 43

c.   Comprehensive, written policies and procedures designed to ensure that any agents acting on behalf of the Defendants do not engage in practices in violation of this Order. These policies and procedures must include:

i.   Detailed steps for addressing each action required of the Defendants or their agents, including but not limited to the Defendants' Servicers, by this Order;

ii.   Comprehensive, written policies and procedures designed to prevent violations of Federal consumer financial laws and associated risks of harm to Consumers including regular operations meetings with and audits of each Servicer and establishment of procedures to respond to exception requests;

iii.   An effective employee training program required for all of the agents' employees, including but not limited to Affiants, whose duties include reviewing, drafting, preparing, processing, verification, execution or notarization of Affidavits that includes regular, specific, comprehensive training in Federal consumer financial laws commensurate with individual job functions and duties;

iv.   Implementation of reasonable and appropriate written policies and procedures to ensure the proper notarization processes for Affidavits, including that notaries place the Affiants under oath and witness their signatures;

21

EX C

v.   Implementation of reasonable and appropriate written policies and procedures to ensure that Affiants verify the accuracy of each statement made in an Affidavit before executing the Affidavit; and

vi.   Comprehensive, written policies and procedures designed to ensure that any law firms engaged by any agent to collect Debt does not violate any Federal consumer financial laws, which must include, at a minimum:

   (1)   the law firm's duty to maintain adequate internal controls to ensure compliance with Federal consumer financial laws;

   (2)   the law firm's duty to provide adequate training on compliance with all applicable Federal consumer financial laws and the agent's policies and procedures related to Collections Lawsuits;

   (3)   the agent's authority to conduct periodic onsite reviews of the law firm's controls, performance, and information systems related to Collections Lawsuits; and

   (4)   periodic review by the agent of the law firm's controls, performance, and information systems related to Collections Lawsuits.

29.   The Enforcement Director will have the discretion to make a determination of non-objection to the Compliance Plan or direct

EX C

Defendants to revise it. If the Enforcement Director directs Defendants to revise the Compliance Plan, Defendants must make the revisions and resubmit the Compliance Plan to the Enforcement Director within thirty (30) days.

30. After receiving notification that the Enforcement Director has made a determination of non-objection to the Compliance Plan or any amendments thereto, Defendants must implement and adhere to the steps, recommendations, deadlines, and timeframes outlined in the Compliance Plan.

## IV. Role of the Board

31. The Board must review all submissions (including plans, reports, programs, policies, and procedures) required by this Order prior to submission to the Bureau.

32. Although this Order requires Defendants to submit certain documents for the review or non-objection by the Enforcement Director, the Board of Defendants will have the ultimate responsibility for proper and sound management of Defendants and for ensuring that Defendants comply with Federal consumer financial law and this Order.

33. In each instance that this Order requires the Board to ensure adherence to or perform certain obligations of Defendants, the Board must:

   a. Authorize whatever actions are necessary for Defendants to fully comply with the Order;

   b. Require timely reporting by Defendants' Servicers to the Board on the status of compliance obligations; and

23

EX C

Case 2:20-cv-00680-DGE  Document 44-1  Filed 08/18/23  Page 102 of 118
Case 2:18-cv-02152-PSZ  Document 61-1  Filed 07/07/20  Page 101 of 117

Case 1:17-cv-01323-GMS  Document 3-1  Filed 09/18/17  Page 24 of 40 PageID #: 46

    *c.*    Require timely and appropriate corrective action to remedy any material non-compliance with any failures to comply with Board directives related to this Section.

## V. Order to Pay Redress

34.    Within ten (10) days of the Effective Date, the Defendants must reserve or deposit into a segregated deposit account $3,500,000, for the purpose of providing redress to Affected Consumers as required by this Section.

35.    Within one-hundred and twenty (120) days of the Effective Date, the Defendants must submit to the Enforcement Director for review and non-objection a comprehensive written plan for providing redress to the previously identified Affected Consumers consistent with this Order ("Redress Plan"). The Enforcement Director will have the discretion to make a determination of non-objection to the Redress Plan or direct Defendants to revise it. If the Enforcement Director directs Defendants to revise the Redress Plan, Defendants must make the revisions and resubmit the Redress Plan to the Enforcement Director within thirty (30) days. After receiving notification that the Enforcement Director has made a determination of non-objection to the Redress Plan, Defendants must implement and adhere to the steps, recommendations, deadlines, and timeframes outlined in the Redress Plan.

36.    The Redress Plan must apply to all Affected Consumers and:

    a.    Specify how Defendants will identify all Affected Consumers;

EX C

Case 2:20-cv-00680-DGE Document 144-1 Filed 08/18/23 Page 103 of 118
Case 2:18-cv-01132-TSZ Document 61-1 Filed 06/04/20 Page 102 of 117

Case 1:17-cv-01323-GMS Document 3-1 Filed 09/18/17 Page 25 of 40 PageID #: 47

    b.    Provide processes for providing redress covering all Affected Consumers including providing redress for:

        i.    Affected Consumers where the documentation necessary to prove the existence of the Debt did not exist or cannot be located by Defendants;

        ii.    Affected Consumers where the documentation necessary to prove Trust ownership of the Debt did not exist or cannot be located by Defendants; and

        iii.    Affected Consumers who were subject to a Collections Lawsuit outside the applicable statute of limitations.

    c.    Include a description of the following:

        i.    Methods used to compile a list of potential Affected Consumers;

        ii.    Methods used to calculate the amount of redress to be paid to each Affected Consumer;

        iii.    Procedures for issuance and tracking of redress to Affected Consumers; and

        iv.    Procedures for monitoring compliance with the Redress Plan.

37.    The Redress Plan, at a minimum, must provide full restitution of all amounts collected since the initiation of the Collections Lawsuit filed against them from:

    a.    The approximately 2,700 Affected Consumers identified prior to the Effective Date, who paid approximately $3,500,000; and

EX C

Case 2:20-cv-00680-DGES Document 144-1 Filed 08/19/23 Page 104 of 118
Case 2:18-cv-01132-TSZ Document 61-1 Filed 07/06/20 Page 103 of 117

Case 1:17-cv-01323-GMS   Document 3-1   Filed 09/18/17   Page 26 of 40 PageID #: 48

b. The Affected Consumers identified by the Compliance Audit in Section II.

38. The Redress Plan must describe the process for providing redress for Affected Consumers and must include the following requirements:

a. A timetable for providing restitution to Affected Consumers identified in Paragraph 37(a) and (b) that provides restitution to each group of Affected Consumers as soon as practicable;

b. Defendants must mail a bank check to each Affected Consumer along with a Redress Notification Letter (as defined below);

c. Defendants must send the bank check by United States Postal Service first-class mail, address correction service requested, to the Affected Consumer's last known address as maintained by Defendants' records;

d. Defendants must make reasonable attempts to obtain a current address for any Affected Consumer whose Redress Notification Letter or redress check is returned for any reason, using the National Change of Address System, and must promptly re-mail all returned letters and redress checks to current addresses, if any; and

e. Processes for handling any unclaimed funds.

39. With respect to redress paid to Affected Consumers, the Redress Plan must include:

a. The form of the letter ("Redress Notification Letter") to be sent notifying Affected Consumers of the redress, which must include language explaining the manner in which the amount of redress

EX C

was calculated and a statement that the provision of the refund

payment is in accordance with the terms of this Order; and

b.   The form of the envelope that will contain the Redress Notification

Letter.

40.   Defendants must not include in any envelope containing a "Redress

Notification Letter" any materials other than the approved letters and

redress checks, unless Defendants have obtained written confirmation

from the Enforcement Director that the Bureau does not object to the

inclusion of such additional materials.

41.   Within ninety (90) days of completion of the Redress Plan, Defendants

must submit a report ("Redress Plan Report") to the Enforcement

Director, which must include a review and assessment from an

independent auditor agreed upon by Defendants and the Enforcement

Director, on Defendants' compliance with the terms of the Redress Plan,

including:

a.   The methodology used to determine the population of Affected

Consumers;

b.   The redress amount for each Affected Consumer;

c.   The total number of Affected Consumers;

d.   The procedures used to issue and track redress payments;

e.   The amount, status, and planned disposition of all unclaimed

redress payments; and

EX C

Case 2:20-cv-00600-DGE  Document 144-1  Filed 08/18/23  Page 106 of 118
Case 2:18-cv-02132-FSZ  Document 61-1  Filed 07/07/20  Page 105 of 117

Case 1:17-cv-01323-GMS  Document 3-1  Filed 09/18/17  Page 28 of 40 PageID #: 50

f.   A description of the work of independent consultants that
Defendants have used, if any, to assist and review their execution of
the Redress Plan.

42.   Defendants must submit an Amended Redress Plan within thirty (30) days
of the completion of the Compliance Audit with respect to additional
Affected Consumers required by Section II that incorporates the results of
that Audit. The amended Redress Plan must contemplate providing full
restitution to all additional Affected Consumers identified in the
Compliance Audit within 120 days of submission of the Amended Redress
Plan.

43.   Defendants must provide all of the relief to Consumers required by the
Order, regardless of whether the total of such relief exceeds the amount
reserved or deposited into a segregated account in this Section.

44.   After completing the Redress Plan, if the amount of redress provided to
Affected Consumers is less than $3,500,000, within thirty (30) days of the
completion of the Redress Plan, Defendants must pay to the Bureau, by
wire transfer to the Bureau or to the Bureau's agent, and according to the
Bureau's wiring instructions, the difference between the amount of redress
provided to Affected Consumers and $3,500,000.

45.   The Bureau may use these remaining funds to pay additional redress to
Affected Consumers. If the Bureau determines, in its sole discretion, that
additional redress is wholly or partially impracticable or otherwise
inappropriate, or if funds remain after the additional redress is completed,
the Bureau will deposit any remaining funds in the U.S. Treasury as

EX C

disgorgement. Defendants will have no right to challenge any actions that the Bureau or its representatives may take under this Section.

46.     Defendants may not condition the payment of any redress to any Affected Consumer under this Order on that Affected Consumer's waiving any right.

47.     With regard to the Debt that has yet to be collected from Affected Consumers for whom Defendants and their agents do not possess or cannot locate the documentation necessary to prove the existence of the Debt or Defendants' ownership of the Debt, Defendants must within one hundred and twenty (120) days of the Effective Date—and for Affected Consumers identified in the Compliance Audit Reports, within thirty (30) days of the completion of the Compliance Audit Reports—instruct that their agents within 90 days:

a.      Withdraw, dismiss, or terminate all pending Collections Lawsuits filed against Affected Consumers;

b.      Release or move to vacate all judgments obtained during the Relevant Time Period in connection with these Collections Lawsuits;

c.      Cease post-judgment enforcement activities and seek to remove, withdraw, or terminate its active wage garnishment, bank levies, and similar means of enforcing those judgments or settlements as well as cease accepting settlement payments related to any Collections Lawsuits;

EX C

Case 2:20-cv-00660-DGE Document 144-1 Filed 08/18/23 Page 108 of 118
Case 2:18-cv-02132-FSZ Document 61 Filed 07/06/20 Page 107 of 118

Case 1:17-cv-01323-GMS   Document 3-1   Filed 09/18/17   Page 30 of 40 PageID #: 52

d.   Refrain from (i) representing to a Consumer or any other person that Defendants are or were owed a Debt, (ii) taking any steps to collect or to seek to collect the Debt in question, (iii) furnishing reports on the Debt in question, except as otherwise required by this Order; and

e.   Request that the consumer reporting agencies correct any affected collection account or tradeline, which may include amending, deleting, or suppressing the incorrect account or tradeline.

48.   With regard to time-barred Debt that has yet to be collected from Affected Consumers, Defendants and their agents will not take any steps to collect Debts by any means without Clearly and Prominently disclosing to the consumer:

a.   For those time-barred debts that generally cannot be included in a consumer report under the provisions of the FCRA, 15 U.S.C. § 1681c(a), but can be collected through other means pursuant to applicable state law, Defendants will instruct their agents to include the following statement: "The law limits how long you can be sued on a debt and how long a debt can appear on your credit report. Due to the age of this debt, we will not sue you for it or report payment or non-payment of it to a credit bureau."

b.   For those time-barred debts that can be collected through other means pursuant to applicable state law, and may be included in a consumer report under the provisions of the FCRA, 15 U.S.C. § 1681c(a), Defendants will instruct their agents to include the

30

EX C

Case 2:20-cv-00680-DGE Document 144-1 Filed 08/10/23 Page 109 of 118
Case 2:18-cv-02132-TSZ Document 61-1 Filed 07/07/20 Page 108 of 117

Case 1:17-cv-01323-GMS   Document 3-1   Filed 09/18/17   Page 31 of 40 PageID #: 53

following statement: "The law limits how long you can be sued on a debt. Because of the age of your debt, we will not sue you for it."

49.   Defendants and their agents are prohibited from making any representation or statement, or from taking any other action that interferes with, detracts from, contradicts, or otherwise undermines the disclosures required in Paragraph 48.

50.   Defendants will be deemed to have complied with the disclosure requirements of Paragraph 48 if Defendants or their agents make a disclosure to Consumers in a specific jurisdiction that (1) is required by the laws or regulations of that jurisdiction, (2) complies with those laws or regulations, and (3) is substantially similar to the disclosure required by Paragraph 48.

## VI.   Order to Pay Disgorgement

51.   Defendants shall pay $7,800,000 as disgorgement for the proceeds they received from the unlawful practices related to the filing of Collections Lawsuits during the Relevant Period.

52.   Within ten (10) days of the Effective Date, Defendants shall pay the above amount in the form of a wire transfer to the Bureau or such agent as the Bureau may direct, and in accordance with wiring instructions to be provided by counsel for the CFPB. The Bureau will then transfer the payment to the United States Treasury as disgorgement.

53.   In the event of any default on Defendants' obligations to make payment under this Order, interest, computed under 28 U.S.C. § 1961, as amended,

EX C

Case 2:20-cv-00680-DGES Document 144-1 Filed 08/18/23 Page 110 of 118
Case 2:18-cv-02132-FSZ Document 64-1 Filed 07/07/20 Page 109 of 117

Case 1:17-cv-01323-GMS   Document 3-1   Filed 09/18/17   Page 32 of 40 PageID #: 54

will accrue on any outstanding amounts not paid from the date of default to the date of payment, and will immediately become due and payable.

## VII.   Order to Pay Civil Money Penalty

54.   Under section 1055(c) of the CFPA, 12 U.S.C. § 5565(c), by reason of the violations of law described in the Complaint, and taking into account the factors in 12 U.S.C. § 5565(c)(3), the Defendants must pay a civil money penalty of $7,800,000 to the Bureau.

55.   Within ten (10) days of the Effective Date, Defendants must pay the civil money penalty by wire transfer to the Bureau or to the Bureau's agent in compliance with the Bureau's wiring instructions.

56.   The civil money penalty paid under this Order will be deposited in the Civil Penalty Fund of the Bureau as required by section 1017(d) of the CFPA, 12 U.S.C. § 5497(d).

57.   Defendants must treat the civil money penalty paid under this Order as a penalty paid to the government for all purposes. Regardless of how the Bureau ultimately uses those funds, Defendants may not:

a.   Claim, assert, or apply for a tax deduction, tax credit, or any other tax benefit for any civil money penalty paid under this Order; or

b.   Seek or accept, directly or indirectly, reimbursement or indemnification from any source, including but not limited to payment made under any insurance policy, with regard to any civil money penalty paid under this Order.

58.   To preserve the deterrent effect of the civil money penalty in any Related Consumer Action, Defendants may not argue that Defendants are entitled

32

EX C

Case 2:20-cv-00660-DGE Document 144-1 Filed 08/18/23 Page 111 of 118
Case 2:18-cv-02152-PSZ Document 61-1 Filed 07/07/20 Page 110 of 118
Case 1:17-cv-01323-GMS Document 3-1 Filed 09/18/17 Page 33 of 40 PageID #: 55

to, nor may Defendants benefit by, any offset or reduction of any compensatory monetary remedies imposed in the Related Consumer Action because of the civil money penalty paid in this action or because of any payment that the Bureau makes from the Civil Penalty Fund ("Penalty Offset"). If the court in any Related Consumer Action grants such a Penalty Offset, Defendants must, within thirty (30) days after entry of a final order granting the Penalty Offset, notify the Enforcement Director, and pay the amount of the Penalty Offset to the U.S. Treasury. Such a payment will not be considered an additional civil money penalty and will not change the amount of the civil money penalty imposed in this action.

## VIII. Additional Monetary Provisions

59. In the event of any default on Defendants' obligations to make payment under this Order, interest, computed under 28 U.S.C. § 1961, as amended, will accrue on any outstanding amounts not paid from the date of default to the date of payment and will immediately become due and payable.

60. Defendants must relinquish all dominion, control, and title to the funds paid to the fullest extent permitted by law and no part of the funds may be returned to Defendants.

61. Under 31 U.S.C. § 7701, Defendants, unless they already have done so, must furnish to the Bureau their taxpayer identifying numbers, which may be used for purposes of collecting and reporting on any delinquent amount arising out of this Order.

62. Within thirty (30) days of the entry of a final judgment, consent order, or settlement in a Related Consumer Action, Defendants must notify the

33

EX C

Case 2:20-cv-00680-DGE Document 144-1 Filed 08/18/23 Page 112 of 118
Case 2:18-cv-01132-TSZ Document 61-1 Filed 07/06/20 Page 111 of 118

Case 1:17-cv-01323-GMS   Document 3-1   Filed 09/18/17   Page 34 of 40 PageID #: 56

Enforcement Director of the final judgment, consent order, or settlement in writing. That notification must indicate the amount of redress, if any, that Defendants paid or is required to pay to Consumers and describe the Consumers or classes of Consumers to whom that redress has been or will be paid.

## IX.   Reporting Requirements

63.   Defendants must notify the Enforcement Director of any development that may affect compliance obligations arising under this Order, including but not limited to a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor company; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order; the filing of any bankruptcy or insolvency proceeding by or against Defendants; or a change in Defendants' name or address. Defendants must provide this notice, if practicable, at least thirty (30) days before the development but in any case no later than fourteen (14) days after the development.

64.   Within one hundred and twenty (120) days of the Effective Date, and again one year after the Effective Date, Defendants must submit to the Enforcement Director an accurate written compliance progress report ("Compliance Report") that has been approved by the Board, which, at a minimum:

a.   Describes in detail the manner and form in which Defendants have complied with this Order; and

EX C

Case 2:20-cv-00668-DGE  Document 44-1  Filed 08/18/23  Page 113 of 118
Case 2:18-cv-01132-TSZ  Document 61-1  Filed 07/07/20  Page 113 of 117
Case 1:17-cv-01323-GMS  Document 3-1  Filed 09/18/17  Page 35 of 40 PageID #: 57

      b.     Attaches a copy of each Order Acknowledgment obtained under Section X, unless previously submitted to the Enforcement Director.

## X. Order Distribution and Acknowledgment

65.    Within thirty (30) days of the Effective Date, Defendants must deliver a copy of this Order to each of their board members or owners as well as to any managers, employees, Servicers, or other agents and representatives who have responsibilities related to the subject matter of the Order.

66.    For five (5) years from the Effective Date, Defendants must deliver a copy of this Order to any business entity resulting from any change in structure referred to in Section IX, any future board members, executive officers, or owners, as well as to any managers, employees, Servicers, or other agents and representatives who will have responsibilities related to the subject matter of the Order before they assume their responsibilities.

67.    Defendants must secure a signed and dated statement acknowledging receipt of a copy of this Order, ensuring that any electronic signatures comply with the requirements of the E-Sign Act, 15 U.S.C. §§ 7001–31, within thirty (30) days of delivery, from all persons receiving a copy of this Order under this Section.

## XI.   Recordkeeping

68.    Defendants must create, or if already created, must retain for at least five (5) years from the Effective Date, the following business records:

      a.     All documents and records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Bureau.

EX C

Case 2:20-cv-00680-DGE Document 144-1 Filed 08/18/23 Page 114 of 118
Case 2:18-cv-01132-TSZ Document 61-1 Filed 07/07/20 Page 113 of 117
Case 1:17-cv-01323-GMS Document 3-1 Filed 09/18/17 Page 36 of 40 PageID #: 58

      b.    All documents and records pertaining to the Redress Plan, described in Section V.

69.    Defendants must retain the documents identified in Paragraph 68 for the duration of the Order.

70.    Defendants must make the documents identified in Paragraph 68 available to the Bureau upon the Bureau's request.

## XII.  Notices

71.    Unless otherwise directed in writing by the Enforcement Director, Defendants must provide all submissions, requests, communications, or other documents relating to this Order in writing, with the subject line, "*In re* [name of Respondent], File No. Year-CFPB-  ," and send them either:

      a.    By overnight courier (not the U.S. Postal Service), as follows:

        Assistant Director for Enforcement
        Consumer Financial Protection Bureau
        ATTENTION: Office of Enforcement
        1625 Eye Street, N.W.
        Washington D.C. 20006; or

      b.    By first-class mail to the below address and contemporaneously by email to Enforcement_Compliance@cfpb.gov:

        Assistant Director for Enforcement
        Consumer Financial Protection Bureau
        ATTENTION: Office of Enforcement
        1700 G Street, N.W.
        Washington D.C. 20552

## XIII.  Cooperation with the Bureau

72.    Defendants must cooperate fully with the Bureau in this matter and in any investigation related to or associated with the conduct described in the Complaint. Defendants must provide truthful and complete information,

36

EX C

Case 2:20-cv-00680-DGE Document 14-1 Filed 08/19/23 Page 115 of 118
Case 2:18-cv-01132-TSZ Document 61-1 Filed 07/06/20 Page 114 of 117
Case 1:17-cv-01323-GMS Document 3-1 Filed 09/18/17 Page 37 of 40 PageID #: 59

evidence, and testimony, and Defendants must cause their officers, employees, representatives, or agents to appear for interviews, discovery, hearings, trials, and any other proceedings that the Bureau may reasonably request upon five (5) days' written notice, or other reasonable notice, at such places and times as the Bureau may designate, without the service of compulsory process.

## XIV. Compliance Monitoring

73. Within fourteen (14) days of receipt of a written request from the Bureau, Defendants must submit additional Compliance Reports or other requested information, which must be made under penalty of perjury; provide sworn testimony; or produce documents.

74. Defendants must permit Bureau representatives to interview any employee or other person affiliated with Defendants who has agreed to such an interview. The person interviewed may have counsel present.

75. Nothing in this Order will limit the Bureau's lawful use of civil investigative demands under 12 C.F.R. § 1080.6 or other compulsory process.

## XV. Retention of Jurisdiction

76. The Court will retain jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

77. Notwithstanding the provisions of Paragraph 76, any time limits for performance fixed by this Order may be extended by mutual written agreement of the parties and without further Court approval. Additionally, details related to administration of §§ IX through XIV of this Order may be

EX C

Case 2:20-cv-00600-DGE  Document 44-1  Filed 08/19/23  Page 116 of 118
Case 2:18-cv-02132-PSZ  Document 61  Filed 07/07/20  Page 115 of 117
Case 1:17-cv-01323-GMS  Document 3-1  Filed 09/18/17  Page 38 of 40 PageID #: 60

modified by written agreement of the parties and without further Court

approval. Any other modifications to this Order may be made only upon

approval of the Court, upon motion by any party.

## XVI.  Administrative Provisions

78.  The Bureau releases and discharges Defendants from all potential liability

for law violations that the Bureau has or might have asserted based on the

practices described in the Complaint, to the extent such practices occurred

before the Effective Date and the Bureau knows about them as of the

Effective Date. The Bureau may use the practices described in this Order

in future enforcement actions against Defendants and their affiliates,

including, without limitation, to establish a pattern or practice of

violations or the continuation of a pattern or practice of violations or to

calculate the amount of any penalty. This release does not preclude or

affect any right of the Bureau to determine and ensure compliance with

the Order or to seek penalties for any violations of the Order.

79.  Should Defendants seek to transfer or assign all or part of its operations

that are subject to this Order, Defendants must, as a condition of sale,

obtain the written agreement of the transferee or assignee to comply with

all applicable provisions of this Order.

**IT IS SO ORDERED.**

Dated: _____

_____

UNITED STATES DISTRICT JUDGE



Case 2:20-cv-00680-DGE   Document 144-1   Filed 08/18/23   Page 117 of 118
Case 2:18-cv-01132-TSZ   Document 61-1   Filed 07/07/20   Page 16 of 117

Case 1:17-cv-01323-GMS   Document 3-1   Filed 09/18/17   Page 39 of 40 PageID #: 61

Consented and agreed to:

FOR THE CONSUMER FINANCIAL PROTECTION BUREAU:

ANTHONY ALEXIS
*Enforcement Director*

Deborah Morris
*Deputy Enforcement Director*

/s/ Carolyn Hahn
Carolyn Hahn
(E-mail: Carolyn.Hahn@cfpb.gov)
(Phone: 202-435-7250
Edward Keefe
(E-mail: Edward.Keefe@cfpb.gov)
(Phone: 202-435-9198)
1700 G Street NW
Washington, DC 20552
Fax: (202) 435-7722

Attorneys for Plaintiff
Consumer Financial Protection Bureau



EX C

Case 2:20-cv-00680-DGE Document 144-1 Filed 08/10/23 Page 118 of 118
Case 2:18-cv-01132-TSZ Document 61-1 Filed 07/06/20 Page 118 of 117
Case 1:17-cv-01323-GMS   Document 3-1   Filed 09/18/17   Page 40 of 40 PageID #: 62

FOR THE NATIONAL COLLEGIATE STUDENT LOAN TRUSTS

Defendants National Collegiate Student Loan Trusts
Waive service and answer of the Complaint and
Consent to entry of this Consent Judgment.

/s/ Daniel M. Silver
Daniel M. Silver (#4758)
MCCARTER & ENGLISH, LLP
Renaissance Centre
405 North King Street, 8th Floor
Wilmington, DE 19801
(302) 984-6300
dsilver@mccarter.com

/s/ James A. Kosch
JAMES A. KOSCH
(E-mail: jkosch@mccarter.com)
(Telephone: 973-639-2028)
MCCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry St.
Newark, NJ 07102
Fax (973) 297-3964

EX C